UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

NRP HOLDINGS LLC and NRP PROPERTIES LLC

                Plaintiffs,

v.                                  Civil No.: 11-CV-00472(WMS)

CITY OF BUFFALO, BYRON W. BROWN,
STEVEN M. CASEY, DEMONE A. SMITH,
RICHARD A. STENHOUSE, BUFFALO
JEREMIAH PARTNERSHIP FOR COMMUNITY
DEVELOPMENT, INC., CITY OF BUFFALO URBAN RENEWAL AGENCY
JOHN DOE 1 – 10, and
JOHN DOE COMPANIES 1 – 5.

                Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT CITY OF BUFFALO
URBAN RENEWAL AGENCY'S MOTION TO DISMISS**

**WEBSTER SZANYI LLP**
Attorneys for Plaintiffs
 Thomas S. Lane
 Nelson Perel
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
tlane@websterszanyi.com
nperel@websterszanyi.com

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ....................................................................................................... 2

    I.    BURA'S MOTION TO DISMISS NRP'S
        PROMISORY ESTOPPEL CLAIM LACKS MERIT
        AND SHOULD BE REJECTED ................................................................ 2

        A. BURA Falsely Claims That This Court "Found"
           That The Wanamaker Letter Contained No Promises .............................. 3

        B. As A Matter of New York Law, Promises In A
           Writing Later Deemed Unenforceable May Support
           A Claim For Promissory Estoppel ............................................................. 7

        C. The Promises In The Wanamaker Letter Were
           Made Both Prior To And After This Writing Thus
           Providing Separate And Independent Evidence
           Of Promises Supporting The Promissory Estoppel Claim ......................... 9

        D. BURA's Argument That A Promissory Estoppel
           Claim Must Allege "Duties Independent Of The
           Agreement" Is Irrelevant In This Case .................................................... 12

        E. Counts I, III And V ................................................................................. 14

CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**CASES** .................................................................................................................. **PAGE**

*Actrade Financial Technologies, Ltd.*
   2012 WL 3966328 (S.D.N.Y. 2012) ....................................................................... 4

*Arcadian Phosphates, Inc. v Arcadian Corp.,*
   884 F.2d 69 (2nd Cir. 1989) ................................................................................... 4

*Barbagallo v. Marcum LLP,*
   2012 WL 1664238 (E.D.N.Y. 2012) ..................................................................... 13

*Budget Marketing, Inc. v. Centronics Corp.,*
   927 F.2d 421 (8th Cir. 1991) ................................................................................... 4

*Emigrant Bank, et al. v. UBS Real Estate Securities, Inc.*
   49 A.D.3d 382 (1st Dept. 2008) ............................................................................. 4

*Esquire Radio Electronics, Inc. v. Montgomery Ward & Co.,*
   804 F.2d 787 (2nd Cir. 1986) ............................................................................ 4, 10

*Frank v. Coldwell Banker Schlott, Inc.*
   1995 WL 479441 (S.D.N.Y. 1995) .................................................................... 4, 10

*Global Crossing Bandwidth, Inc. v. PNG Telecommunications, Inc.,*
   2007 WL 174094 (W.D.N.Y. 2007) ..................................................................... 4, 7

*Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc.,*
   79 A.D.3d 1605 (4th Dept. 2010) ......................................................................... 13

*Last Time Beverage Corp. v. F & V Distribution Co.,*
   98 A.D.3d 947) (2nd Dept 2012) .......................................................................... 4, 8

*Randall's Is. Acquatic Leisure, LLC v. City of New York,*
   92 A.D.3d 463 (1st Dept. 2012) ............................................................................ 13

*Re-Source America, Inc. v. Corning Inc.*
   2008 WL 850231 (W.D.N.Y. 2008) .................................................................... 4, 10

*Stanback v. JP Morgan Chase Bank,*
   2012 WL 847426 (E.D.N.Y. 2012) ..................................................................... 4, 10

| **STATUTES** | **PAGE** |
|---|---|
| Fed. R. Civ. P. 8(a)(2) | 9 |
| Fed. R. Civ. P. 12(b)(6) | 1, 3, 14 |

# PRELIMINARY STATEMENT

NRP Holdings LLC and NRP Properties LLC (collectively "NRP") file this brief in opposition to the City of Buffalo Urban Renewal Agency's ("BURA") motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Dckt. 58).[1]

BURA's motion offers two arguments for dismissal of the Second Cause of Action for promissory estoppel. First, without citing to any legal authority, BURA asserts that the promises in the Wanamaker Letter (Second Amended Complaint at Ex. "A") (Dckt 45) may not form the basis for NRP's promissory estoppel claim. This argument is meritless for three separate reasons. First, BURA incorrectly claims that this Court found that the Wanamaker Letter contained no promises. To the contrary, the Court quoted from the Wanamaker Letter and found it contained commitments and obligations. Second, New York law recognizes that promises in a writing deemed unenforceable as a binding written contract between the parties may be used to support a claim for promissory estoppel. Third, as shown in the accompanying declaration from Aaron M. Pechota ("Pechota Declaration"), the promises in the Wanamaker Letter were made both prior to and after this writing thus providing separate and independent evidence of promises supporting the promissory estoppel claim.

BURA's second argument similarly fails as it relies on three cases where a court found that the parties did have a binding written contract. Nothing in these cases is contrary to this Court's legal ruling that a promissory estoppel claim may be applicable in the absence of binding written contract.

---

[1] NRP's opposition hereby incorporates by reference all prior pleadings and proceedings in this action including the terms defined in those pleadings and its papers filed in opposition to the other defendants' prior motions to dismiss.

1

# ARGUMENT

## I. BURA'S MOTION TO DISMISS NRP'S PROMISSORY ESTOPPEL CLAIM LACKS MERIT AND SHOULD BE REJECTED

BURA does not challenge this Court's ruling concerning the elements of a promissory estoppel claim, *i.e.* (a) a clear and unambiguous promise, (b) reasonable and foreseeable reliance by the party to whom the promise is made, and (c) an injury sustained in reliance on that promise.[2]

Likewise, BURA recognizes that the promises supporting NRP's claim include, among others:

1. The City will extend to the development its usual Low-Income Housing PILOT Agreement.

2. The City will provide $1,600,000 of its HOME funds to assist in the construction of the East Side Housing Opportunities II project.

3. The City will provide 51 buildable vacant lots in the Cold Springs and Masten Districts to facilitate accomplishment of this project at a price no greater than $2,000 per buildable lot, and not to exceed a total price of $100,000.

(Dckt 44 at ¶ 125 and Ex. "A" thereto).[3]

BURA does not argue against or challenge the sufficiency of NRP's allegations concerning the second or third elements of its promissory estoppel claim. Thus, for purposes of the present motion, BURA concedes that NRP has sufficiently alleged

---

[2] *NRP Holdings, LLC and NRP Properties LLC v. City of Buffalo, et al.*, 2012 WL 2873899 at *8 (W.D.N.Y. 2012) (hereafter, "*NRP* at ___").

[3] The Wanamaker Letter makes clear that BURA "earmarked $1.6 million of the City's HOME Funds" In its decision (Dckt. 43) the Court ruled that a factual inquiry is required to determine whether Wanamaker was acting in his capacity for the City, BURA, or both. The Court also found that BURA was a "central entity" in the planning and development of the subject project. BURA does not take issue with either of these rulings. Thus, it is more than logical that BURA, as a "central entity," made promises to the Development Team in conjunction with the project.

reasonable and foreseeable reliance on these promises and an injury sustained in reliance on them.[4]

### A. BURA Falsely Claims That This Court "Found" That The Wanamaker Letter Contained No Promises

BURA claims that:

> the 'promises' relied on by the Plaintiffs to support their claim are identical to the statements made in the Wanamaker Letter. This Court has already determined that the Wanamaker Letter does not create a contract between the Plaintiffs and anyone. As the Court correctly found, there are no 'promises' by BURA in the Wanamaker Letter, much less the 'clear and unambiguous promises which are required under New York law to support a promissory estoppel claim.

(BURA's Memo. at 4). BURA's assertion that the Court found no promises in the Wanamaker Letter is patently false and entirely illogical. To the contrary, this Court specifically noted that the Wanamaker Letter contained commitments and obligations (i.e., promises). Because BURA's first argument is based on this incorrect premise, it should be rejected out of hand.

This Court's decision that NRP failed to allege a valid contract claim based on a written document but did allege a valid claim for promissory estoppel is within the

---

[4] NRP's opposition on this Rule 12(b)(6) motion is therefore limited to BURA's claim that NRP has not sufficiently alleged the first element of a promissory estoppel claim and the two arguments advanced in support of that claim. We assume that this Court will not consider any additional grounds or authorities beyond the three cases that BURA cited in support of its second argument. *NRP* at *10.

mainstream of New York law. There are numerous decisions sustaining claims for promissory estoppel in the absence of an enforceable written document.[5]

This Court dismissed NRP's breach of contract claim on the ground that the Wanamaker Letter was not intended to create an obligation to negotiate in good faith; rather, it was intended solely to support the application for State tax credits. This Court also found that the Wanamaker Letter lacked mutual assent. *NRP* at *6-8.

Neither ruling remotely supports the illogical leap made by BURA that this Court found no promises in the Wanamaker Letter. To the contrary, throughout its decision, this Court described the promises in the Wanamaker Letter as "commitments,"[6] "promises," and "obligations"[7] all expressed in clear and unambiguous language of steps that the City of Buffalo "has" undertaken or "will" undertake. *NRP* at *6-7.

For example, the Court stated: "[t]he letter also expresses the City of Buffalo's commitment to the project. Indeed, Wanamaker, himself, even defines it as a

---

[5] *See, e.g., Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2nd Cir. 1989) (affirming summary judgment dismissing breach of contract claim but reversing on promissory estoppel claim); *Budget Marketing, Inc. v. Centronics Corp.*, 927 F.2d 421 (8th Cir. 1991) (relying on *Arcadian* and, as a matter of Iowa law, affirming summary judgment dismissing breach of contract claim but reversing on promissory estoppel claim; *Esquire Radio Electronics, Inc. v. Montgomery Ward & Co.*, 804 F.2d 787 (2nd Cir. 1986) (affirming jury award based on promissory estoppel); *In re Actrade Financial Technologies, Ltd.*, 2012 WL 3966328 (S.D.N.Y. 2012) (denying summary judgment and permitting counterclaims for breach of contract and promissory estoppel); *Stanback v. JP Morgan Chase Bank,* 2012 WL 847426 (E.D.N.Y. 2012) (denying motion to dismiss promissory estoppel claim); *Re-Source America, Inc. v. Corning Inc.*, 2008 WL 850231 (W.D.N.Y. 2008) (granting plaintiff's motion to file an amended complaint asserting a claim for promissory estoppel); *Global Crossing Bandwidth, Inc. v. PNG Telecommunications, Inc.*, 2007 WL 174094 (W.D.N.Y. 2007) (granting motion to dismiss breach of contract claim but denying motion to dismiss promissory estoppel claim); *Frank v. Coldwell Banker Schlott, Inc.*, 1995 WL 479441 (S.D.N.Y. 1995) (granting motion to dismiss breach of contract claim and denying motion to dismiss promissory estoppel claim); *Last Time Beverage Corp.*, 98 A.D.3d 947 (2nd Dept 2012) (affirming judgment based on promissory estoppel); *Emigrant Bank, et al. v. UBS Real Estate Securities, Inc.*, 49 A.D.3d 382 (1st Dept. 2008) (reversing dismissal of breach of contract and promissory estoppel claims).

[6] Merriam-Webster defines commitment as "an agreement or pledge to do something in the future." It defines agreement as "an arrangement as to a course of action" or "a contract duly executed and legally binding." It defines pledge as "a binding promise or agreement to do or forebear."

[7] Merriam-Webster defines obligation as "something (as a formal contract, a promise, or the demands of conscience or custom) that obligates one to a course of action" or "a commitment (as by a government) to pay a particular sum of money."

4

'commitment letter.' The letter further outlines the steps that the City has undertaken, and will undertake, to move the project forward: It indicates that $1,600,000 of the City's funds were earmarked for the project; it promises that the City will set aside a number of lots; and it details the price per lot." *NRP* at 6.

As stated by this Court, and as confirmed by the definitions for commitment and obligations, the Wanamaker Letter contained evidence of three clear and unambiguous promises. The Wanamaker Letter contained no unequivocal reservation of assent concerning any of these promises. Indeed, BURA does not challenge the reasonableness of the Development Team's reliance on them or its resulting injury. On this ground alone, this Court should reject BURA's motion to dismiss the promissory estoppel claim in this case.

While not presented in the Argument section of its brief, BURA's attorney's declaration emphasizes a statement in the Court's decision concerning the Wanamaker Letter noting that it refers to the City of Buffalo's commitment to the Project, not to NRP. (BURA's memo at 2). This Court made the statement in support of its finding that the Wanamaker Letter was not intended to create an obligation to negotiate in good faith. It was not included in the Court's discussion concerning NRP's promissory estoppel claim. Thus, the Court's statement does not support the inference that the commitments, promises and obligations in the Wanamaker Letter were not made to the Development Team. Of course, the Wanamaker Letter is addressed to Belmont Shelter Corporation ("Belmont"), a member of the Development Team. As alleged in the Second Amended Complaint, Belmont provided an assignment to NRP to permit NRP to pursue all claims that either has against the Defendants. (Dckt 44 at ¶ 115).

5

Moreover, as explained in the Pechota Declaration, when the Wanamaker Letter was executed, BURA, the City of Buffalo and Mr. Wanamaker knew that the Development Team consisted of NRP and Belmont. BURA, the City of Buffalo and Mr. Wanamaker also knew that that the promises and commitments substantiated in the Wanamaker Letter were made in support NRP's and Belmont's need for such promises and commitments. (Pechota Dec. at ¶ 6).[8] As discussed below, the promises were also conveyed in other mediums both before and after the Wanamaker Letter.

Notably, a document titled "*Buffalo Poverty Reduction Blueprint – A Roadmap for Reducing Poverty in the City of Buffalo*" prepared for Mayor Brown and dated April 29, 2009, provided that the City of Buffalo and several agencies, including BURA, "are engaged in a variety of programs and activities targeted toward improving the physical condition, the neighborhoods and environment, in which those living in poverty struggle." Lauding the past accomplishments of the City of Buffalo and its various agencies, including BURA, and under the heading "HOME Funds," the defendants' document notes "[i]n an effort to 'prime the pump' for residential development, HOME funds were leveraged to assist . . . NRP Group's 50 units for the East Side Housing's Phase II in Midtown." The statements in this document directly contradict BURA's claim that there were no promises made by BURA and further demonstrate the City of Buffalo's and BURA's understanding that the promises and commitments made in the Wanamaker Letter and through other mediums were in fact made to NRP. In other

---

[8] In other words, one of the purposes of the Wanamaker Letter was to provide the Development Team with confirmation of the promises that the City of Buffalo and BURA made to it so that the Development Team could provide the letter to the New York DHCR with its application for State tax credits. Thus, the Development Team was able to advise NY DHCR of the specific promises made by the City of Buffalo / BURA to NRP and Belmont so that an award of tax credits could be made to the Development Team in furtherance of the project.

6

words, this document quite clearly confirms one of the vital promises made to NRP and the Development Team – the promise to provide HOME funds. (Relevant Excerpts of this document are attached at Ex. "A" to the accompanying Lane Declaration).

### B. As A Matter of New York Law, Promises In A Writing Later Deemed Unenforceable May Support A Claim For Promissory Estoppel

BURA argues that a writing later deemed unenforceable as a binding written contract may not be used as evidence of the promises to support a claim for promissory estoppel. BURA offers no legal authority to support this purported rule of law. None exits.

As Judge Telesca recognized in *Global Crossing Bandwidth, Inc. v. PNG Telecommunications, Inc.*,[9] "[t]he doctrine of promissory estoppel is a 'narrow doctrine' which generally applies only where there is no written contract, or where the parties' written contract is unenforceable for some reason."[10] In *Global Crossing*, the court granted the motion to dismiss the breach of contract claim and permitted the promissory estoppel claim to proceed. The quoted statement recognizes that there may be many reasons why a writing is insufficient to create a binding contract. But certainly, this does not mean that the writing may not be used as evidence of the promises for a promissory estoppel claim.

Here, on its motion to dismiss, the City of Buffalo admitted that the Wanamaker Letter was intended to "serve as evidence of the City's support of the Project." (Dckt 34-1 at ¶ 26). Thus, at a minimum, the City of Buffalo and/or BURA understood that the Wanamaker Letter contained promises that were intended for submission to New York State by the Development Team and provided substantiation for their truth and

---

[9] 2007 WL 174094 (W.D.N.Y. 2007).
[10] *Global Crossing*, at *3.

7

reliability.[11] BURA does not claim that its substantiation of the promises made to the Development Team was false or that it was unaware of how the Letter would be used. Thus, the promises in the Wanamaker Letter are plainly sufficient evidence of clear and unambiguous promises that may be used to support the promissory estoppel claim.

Just last month, the New York State Appellate Division held that the promises in an unenforceable agreement may be used to support a promissory estoppel claim. In *Last Time Beverage Corp. v. F & V Distribution Co.,*[12] the court affirmed the trial court's ruling on liability in favor of two different franchisees against their distributor. While the first franchisee had a signed distribution agreement, the second franchisee did not. Still, the court agreed that the second franchisee was entitled to a judgment of liability based on promissory estoppel and other theories. The Appellate Division found that the second franchisee "performed substantial obligations based on the defendants' promises, which were also articulated in the express terms and conditions set forth in the distribution agreements and the assignment agreement that governed [the other plaintiff franchisees]."[13]

In virtually all of the cases involving alternative claims for breach of a written contract and promissory estoppel, the promises supporting both were included in the written document. As shown by several of the cases in footnote "4" above, even when a court dismissed the breach of contract claim, it also permitted the promissory estoppel claim to proceed. In these cases, the promises supporting the promissory estoppel claim were often found in the written document.

---

[11] Merriam-Webster provides that one definition of support is "to provide with substantiation."
[12] 98 A.D.3d 947, 2012 WL 3972448 at * 5 (2nd Dept 2012).
[13] *Id.*

In summary, the Wanamaker Letter did not lose value because this Court disagreed with NRP's claim that it was a binding written contract. To the contrary, as this Court found, the Wanamaker Letter was created to support/substantiate promises made by the City of Buffalo/BURA in order to obtain State tax credits. The Wanamaker Letter is sufficient by itself to permit NRP to plead a promissory estoppel claim.

### C. The Promises In The Wanamaker Letter Were Made Both Prior To And After This Writing Thus Providing Separate And Independent Evidence Of Promises Supporting The Promissory Estoppel Claim

At the pleadings stage, NRP is not required to present all evidence concerning the alleged promises supporting the promissory estoppel claim in order for the claim to proceed.[14] This Court should be satisfied that the actions of the parties as detailed in the Second Amended Complaint both before and after the Wanamaker Letter provide sufficient factual support to easily believe that such promises were made. Indeed, this Court stated: "[i]t appears from the complaint that this letter prompted NRP to begin taking the project's requisite preliminary steps . . . The City, itself, took preliminary steps: It selected the location sites for the planned homes. . . . And the Buffalo Planning Board approved NRP's site plan, design and elevations for the project." *NRP* at *2. Of course, as alleged throughout the Second Amended Complaint and in the Pechota Declaration, BURA also took steps to implement the promises.

Nonetheless, to further respond to BURA's argument that the Wanamaker Letter may not be used as the source of the promises, NRP's opposition includes the Pechota Declaration confirming that the promises in the Wanamaker Letter were also made and re-affirmed at other times.

---

[14] Fed. R. Civ. P. 8(a)(2).

As a matter of New York State law, there can be no dispute that oral promises and commitments may be used to support a promissory estoppel claim.[15]

As alleged in the Second Amended Complaint, the relationship between NRP and Belmont and the City of Buffalo/BURA started in November 2007. (Dckt 45 at ¶ 21). Between November 2007 and February 25, 2008, there were multiple in-person meetings and telephone conversations between members of the Development Team and the City of Buffalo/BURA concerning the Project. It was during those meetings and conversations that the City of Buffalo/BURA promised and committed to provide the Project with its PILOT agreement, a share of its HOME funds and buildable vacant lots. (Pechota Decl. at ¶¶ 3-4).

By the time of the Wanamaker Letter, the promises and commitments from the City of Buffalo and BURA were already in place. The Wanamaker Letter substantiated the promises and commitments for several reasons including the needs of the Development Team to submit its application for tax credits from New York State. (Pechota Decl. at ¶ 5).

When the Wanamaker Letter was executed, BURA, the City of Buffalo and Mr. Wanamaker knew that the Development Team consisted of NRP and Belmont. BURA, the City of Buffalo and Mr. Wanamaker also knew that the promises and commitments substantiated in the Wanamaker Letter were made in support of NRP's and Belmont's

---

[15] *See, e.g., Esquire Radio & Electronics, Inc. v. Montgomery Ward & Co.*, 804 F.2d 787, 793 (2nd Cir. 1986) (promissory estoppel claim based on defendant's oral promises and commitments to buy spare parts); *Stanback v. JP Morgan Chase Bank, N.A.*, 2012 WL 847426 at **5-6 (E.D.N.Y. 2012) (promissory estoppel claim based on oral statements made by defendant's human resources representative); *Re-Source America, Inc. v. Corning Inc.*, 2008 WL 850231 at *9 (W.D.N.Y. 2008) (promissory estoppel claim based on oral promises to conduct a good faith engineering review and the resumption of a normal business relationship upon satisfaction of a pre-paid balance); *Frank v. Coldwell Banker Schlott, Inc.* 1995 WL 479441 at * 5 (S.D.N.Y. 1995) (promissory estoppel claim based on statements made at meetings consisting of defendant's directions, actions, acquiescence and approval of plaintiff's efforts).

need for such promises and commitments to proceed with the Project. At a minimum, the Wanamaker Letter is a direct statement of promises and commitments made to Belmont as a representative of the Development Team. Belmont has provided an assignment to NRP to permit NRP to pursue all claims that either has against the Defendants. (Pechota Decl. at ¶ 6).

Mr. Pechota also describes a meeting with Mayor Brown in June 2008 while the application for State tax credits was pending. At this meeting, the parties discussed all aspects of the Project including the City of Buffalo's/BURA's promises. From this discussion, it was evident that Mayor Brown was well aware of the scope of the Project and the promises and commitments that were made to the Development Team. In fact, following this meeting, Mr. Pechota was informed that Mayor Brown confirmed his support of the Project and the City of Buffalo's/BURA's promises and commitments to the Development Team in communications to both the New York State Governor's office and the Commissioner of the New York State DHCR. Subsequently, all relevant City of Buffalo agencies and departments, including BURA, took steps to implement the commitments and fulfill the promises. (Pechota Decl. at ¶ 7).

The promises and commitments made by the City of Buffalo/BURA, as substantiated in the Wanamaker Letter, were vital components to finance a project of this type. Simply put, NRP would not have proceeded with the Project unless the City of Buffalo and/or BURA promised and committed to extend the PILOT agreement, provide the lots and provide a share of its Federal HOME funds. Mr. Pechota could not recall a single instance where a NRP project proceeded without first having in place such promises and commitments. Until this project, he could not recall a project that failed to

proceed to completion once the State committed to provide the tax credits in reliance on the promises and commitments made by the local municipality. (Pechota Decl. ¶ 8). Thus, even if the Wanamaker Letter is found to provide no evidence of the promises made by the City of Buffalo/BURA, the Pechota Declaration establishes that such promises were made and re-affirmed before and after the Wanamaker Letter. These promises have been clearly alleged in the complaint and, thus, a cause of action has been stated.

\* \* \*

In summary, there are three separate and independent reasons to reject BURA's claim that there is no evidence of promises to support the promissory estoppel claim. First, the Wanamaker Letter contains clear and unambiguous commitments and obligations. Second, there is no authority presented by BURA supporting the notion that the promises in the Wanamaker Letter may not be used as evidence of the promises. Third, the Pechota Declaration establishes that the promises were made and re-affirmed before and after the Wanamaker Letter. For each of these reasons, BURA's first argument should be rejected.

### D. BURA's Argument That A Promissory Estoppel Claim Must Allege "Duties Independent Of The Agreement" Is Irrelevant In This Case

BURA's second argument cites three cases for the proposition that a promissory estoppel claim must allege duties independent of the agreement. Then, <u>without any legal authority</u>, BURA claims that "the 'promises can't be the same as those in a non-existent contract." (BURA's Memorandum at 4).

BURA's argument is once again based on an incorrect and illogical leap. In each of the three cases cited in its brief, the court found that a written contract governed the

12

parties' relationship. In that circumstance, a promissory estoppel claim may not stand alongside the breach of contract claim. To survive independently of the breach of contract claim, the promissory estoppel claim must be based on promises that are additional to those embodied in the parties' written contract (or, as discussed above, embodied in a writing deemed not be to an enforceable contract).

For example, in *Randall's Is. Acquatic Leisure, LLC. v. City of New York*, 92 A.D.3d 463 (1st Dept. 2012), plaintiff had a written contract with the City of New York to build a recreation center. Plaintiff breached the contract by not complying with its obligation to obtain financing. In that circumstance, the court held that plaintiff could not substitute a promissory estoppel claim for its failed breach of contract claim. Likewise, in *Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc.*, 79 A.D.3d 1605 (4th Dept. 2010), the court found that a valid written lease governed the parties' relationship. Thus, the court rejected an affirmative defense based on promissory estoppel that failed to rely on promises made independently of the binding written agreement.[16]

In this case, this Court found that NRP failed to state a valid breach of contract claim based on a binding written contract governing the parties' obligations. In that circumstance, no legal rule required NRP to rely on promises independent of the ones made in the Wanamaker Letter. As shown by the cases cited in footnote "4" and discussed in Section I.B., *supra,* this Court's ruling that the breach of contract claim should be dismissed and the promissory estoppel claim should proceed based on the

---

[16] BURA's citation to *Barbagallo v. Marcum LLP*, 2012 WL 1664238 (E.D.N.Y. 2012) does not include a jump cite. Based on our review, it does not appear to concern a promissory estoppel claim. Rather, it appears to concern the enforceability of a binding written contract.

types of promises made in the Wanamaker Letter is well within the mainstream of jurisprudence applying New York State law.

BURA's second argument lacks merit and should be rejected.

### E. Counts I, III And V

In its prior decision, this Court granted the defendants' Rule 12(b)(6) motion to dismiss Counts I, III and V for failure to state a claim. While reserving all of its rights to challenge and/or address the merits of this Court's decision concerning the dismissal of these claims should an appeal ever be taken, NRP agrees that the application of this Court's decision to BURA would lead to the same result as to BURA.

### CONCLUSION

For the foregoing reasons, NRP respectfully requests this Court to file an Order denying BURA's motion to dismiss the action as to it.

Dated: November 1, 2012

                                      **WEBSTER SZANYI LLP**
                                      Attorneys for Plaintiffs

                                      By:   *s/ Thomas S. Lane*
                                             Thomas S. Lane
                                             Nelson Perel
                                      1400 Liberty Building
                                      Buffalo, New York 14202
                                      (716) 842-2800
                                      tlane@websterszanyi.com
                                      nperel@websterszanyi.com

TO:   **HARRIS BEACH PLLC**
       Richard T. Sullivan, Esq.
       Terrance P. Flynn, Esq.
        Attorneys for Defendant
        Buffalo Urban Renewal Agency
       726 Exchange Street, Suite 1000
       Buffalo, New York 14210
       rsullivan@harrisbeach.com
       tflynn@harrisbeach.com

CC: Terrence M. Connors
Connors & Vilardo LLP
Attorneys for Defendant City of Buffalo
Mayor Byron M. Brown and Deputy Mayor Steven M. Casey
1000 Liberty Building
Buffalo, NY 14202
tmc@connorsvilardo.com

Timothy Ball
Attorney for Defendant Demone A. Smith
1102 City Hall
65 Niagara Square
Buffalo, NY 14202
tball@ch.ci.buffalo.ny.us