UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NRP HOLDINGS LLC and
NRP PROPERTIES LLC,

          Plaintiffs,

v.

**DECISION AND ORDER**
11-CV-472S

BUFFALO URBAN RENEWAL AGENCY, *et al.*,

          Defendants.

## I.  INTRODUCTION

As this Court noted in a July 2012 Decision, this lawsuit arose as a result of a stalled housing project on the City of Buffalo's East Side. From 2007 to 2009, Plaintiffs NRP Holdings LLC and NRP Properties LLC (collectively "NRP"),[1] two intertwined housing development corporations, were working with the City of Buffalo on a project to build and manage 50 subsidized homes in the Masten and Cold Springs neighborhoods in the City of Buffalo. After each side had taken significant steps towards the project's completion, the City of Buffalo, a defendant in this case, backed out of the deal because, as NRP alleges, NRP rebuffed Mayor Byron Brown's attempts to involve his political ally Richard Stenhouse, and Stenhouse's company, Jeremiah Partnership for Community Development, Inc. ("Jeremiah Partnership"), in the project.

In July of 2012, this Court dismissed several of NRP's claims but found that its

---

[1] NRP is the alleged assignee of Belmont Shelter Corporation ("Belmont"), a separate entity that was also involved in the project. NRP "stands in the shoes" of Belmont for the purposes of this motion. Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 101 (2d Cir. 2007).

claims under the doctrine of promissory estoppel and under the Racketeer Influenced and Corrupt Organizations Act (commonly known as "RICO") survived the City's motion to dismiss. This Court also granted NRP leave to file an amended complaint, adding the City of Buffalo Urban Renewal Agency ("BURA") as a defendant. According to NRP, BURA is a public benefit corporation that acts as an agent of Buffalo in carrying out its urban renewal services.

NRP then filed the second amended complaint, and BURA now moves to dismiss NRP's promissory-estoppel claim against it. In addition, BURA seeks dismissal of Counts I, III, and V, which are the same claims that this Court previously dismissed as against the City of Buffalo defendants in July 2012.

For the following reasons, BURA's motion is granted in part and denied in part.

## II.  BACKGROUND

**A.   Facts**[2]

This Court has already comprehensively detailed the facts that form the basis of NRP's complaint. See NRP Holdings LLC v. City of Buffalo, No. 11-CV-472S, 2012 WL 2873899, at *2–*3 (W.D.N.Y. July 12, 2012).  And this Court will incorporate that recitation here.  At this time, it suffices to note that the events leading to this litigation began in November of 2007 when the City expressed its desire to work with NRP in constructing affordable single-family homes within the City limits. (Second Am. Compl., ¶ 21; Docket No. 44.) NRP contends that promises to this end were made in a February 25, 2008 letter

---

[2] Facts alleged in NRP's second amended complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

composed by Timothy Wanamaker, the Executive Director of Buffalo's Office of Strategic Planning. (Id., ¶ 23.) In that letter, Wanamaker wrote to NRP:

> This letter is to confirm that the Buffalo Urban Renewal Agency has earmarked $1,600,000 of the City's HOME funds for the [] project that consists of construction of fifty (50) units of single-family homes in the Masten Park and Cold Springs neighborhoods of the City of Buffalo.

(Wanamaker Letter, attached as "Ex. A" to Am. Compl.; Docket No. 22-1.) After describing the details of the plan – including the "lease-to-own" component, the City's promise to offer its "usual Low-Income Housing Pilot Agreement," and the City's commitment to provide 51 vacant lots at a price of $2,000 per lot – Wanamaker noted, "This commitment letter is only valid if the developer is successful in securing a 2008 Low-Income Housing Tax Credit allocation to complete the project." (Id.) He concluded, "Of course, BURA is required to meet all applicable Federal, State, and local rules and regulations before issuance of HOME funds to eligible recipients." (Id.)

Although NRP later acquired the tax credit (Second Am. Compl. ¶¶ 28–29), the project was never completed. In short, NRP alleges that Defendants impermissibly stalled the project because NRP refused to include – and pay – the Mayor's political ally, Richard Stenhouse, and his company, the Jeremiah Partnership.

**B.    Procedural History**

NRP filed a complaint in this Court on June 6, 2011. (Docket No. 1.) After the parties' unsuccessful attempt to resolve the dispute through mediation (Docket No. 19), NRP filed an amended complaint on December 23, 2011. (Docket No. 22.) Thereafter, on January 13, 2012, NRP voluntarily dismissed Jeremiah Partnership and Richard Stenhouse as defendants. The same day, the remaining defendants moved to dismiss the amended

complaint. (Docket Nos. 26, 27.) On July 12, 2012, this Court granted in part and denied in part the City's motion to dismiss; it also granted NRP leave to file a second amended complaint. (Docket No. 43.) NRP filed that complaint on July 18, 2012. The City thereafter answered, and BURA, newly added, filed the present motion to dismiss on October 15, 2012. Briefing thereon concluded on November 13, 2012, at which time this Court took the motion under consideration.

### III.  DISCUSSION

**A.  Motion to Dismiss Standard – Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

**B. BURA's Motion**

    **1. Promissory Estoppel**

Under New York law, a claim for promissory estoppel requires a clear and unambiguous promise, reasonable and foreseeable reliance on that promise, and an injury

sustained in reliance on that promise.[3] Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000); Ripple's of Clearview, Inc. v. Le Havre Assocs., 452 N.Y.S.2d 447, 449, 88 A.D.2d 120 (1982).

NRP contends that BURA is liable under this doctrine because it refused to follow through on the promises found in the Wanamaker letter. In a sparse motion, BURA raises two arguments, which it contends compel dismissal. It argues that (1) this Court previously found, in its July 2012 Decision and Order, that the "promises" in the letter are "not promises at all" and that (2) New York law requires NRP to allege that BURA violated "duties independent of the [Wanamaker] agreement." (BURA Br., at 3, 4; Docket No. 58-2.") BURA does not, at least at this point, raise any argument with respect to the final two elements of a promissory-estoppel claim as outlined above.

On this limited basis, this Court must deny the motion.

First, this court never found that there were no promises in the Wanamaker letter. Instead, it found that the letter did not create a binding contract between NRP and the defendants. Although this Court did find that the letter demonstrated only the defendants' commitment to the project, and not to NRP, this Court is not prepared to rule – especially without argument – that this, *ipso facto*, means that NRP cannot state a promissory-estoppel claim. There are, in fact, several promises made in the Wanamaker letter. As this Court wrote in its July 2012 Decision, "The letter commits the City to 'extend to the development its usual Low-Income Housing PILOT agreement,' to 'provide $1,600,000 of its HOME funds to assist in the construction' and to 'provide 51 buildable vacant lots.'"

---

[3]There is no dispute that New York law applies.

Whether those promises are sufficiently clear and unambiguous, whether they were subject to further negotiation or execution, whether NRP actually relied on the them, whether NRP was justified in relying on them, and whether NRP sustained an injury by virtue of that reliance, are all relevant questions. But BURA does raise them, and this Court will therefore not rule on them.

Second, a party asserting promissory-estoppel claim must allege "duties independent of the agreement" only when an enforceable agreement exists. Cases cited by BURA demonstrate this. In each, as NRP correctly notes, the court found that the dispute was governed by contract; thus, to state a promissory-estoppel claim, the plaintiff was required to allege a duty that arose independent of that agreement. See Randall's Island Aquatic Leisure, LLC v. City of New York, 92 A.D.3d 463, 464, 938 N.Y.S.2d 62 (1st Dep't 2012); Iskalo Elec. Tower LLC v. Stantec Consulting Servs., Inc., 79 A.D.3d 1605, 1608, 916 N.Y.S.2d 373 (2010). This is sensible; "[w]hen an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract." Bader v. Wells Fargo Home Mortgage Inc., 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (quoting NCC Sunday Inserts, Inc. v. World Color Press, Inc., 759 F. Supp. 1004, 1011 (S.D.N.Y. 1991). But that is not the case here. This Court has found that there was not an enforceable agreement between NRP and the defendants. As such, there is no "duties-independent-of-the-agreement" requirement. Indeed, there is no agreement.

Rather, this is precisely the situation in which a promissory-estoppel claim could apply. "Because it is a quasi-contractual claim . . . promissory estoppel generally applies only in the absence of a valid and enforceable contract." Kwon v. Yun, 606 F. Supp. 2d 344,

368 (S.D.N.Y. 2009); see also Paxi, LLC v. Shiseido Americas Corp., 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) ("[Promissory estoppel] is a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason.").

BURA's motion to dismiss this cause of action, on these grounds, is therefore denied.

### 2.  Claims I, III, & V

NRP concedes that the Court's July 2012 Decision, which dismissed these claims as against the City of Buffalo, applies with equal force to BURA. Accordingly, BURA's motion to dismiss these claims is granted.

### IV.  CONCLUSION

BURA has not demonstrated that the Wanamaker letter was devoid of promises, and NRP was not required to allege duties "independent of the agreement." Its motion to dismiss NRP's promissory-estoppel claim is therefore denied. Its motion to dismiss Counts I, III, and V of the second amended complaint, however, is granted. Those claims were more thoroughly addressed – and then dismissed as against the City of Buffalo defendants – in this Court's July 2012 Decision. That decision applies equally to BURA.

## V.  ORDERS

IT HEREBY IS ORDERED, that BURA's Motion to Dismiss (Docket No. 58) is GRANTED in part and DENIED in part.

SO ORDERED.

Dated:	September 14, 2013
	Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
