UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**NRP HOLDINGS LLC and
NRP PROPERTIES LLC,**

            Plaintiffs,

   v.

**CITY OF BUFFALO, BYRON W. BROWN, STEVEN
M. CASEY, DEMONE A. SMITH, RICHARD A.
STENHOUSE, BUFFALO JEREMIAH PARTNERSHIP
FOR COMMUNITY DEVELOPMENT, INC., CITY OF
BUFFALO URBAN RENEWAL AGENCY, JOHN DOES 1-
10, and JOHN DOE COMPANIES 1-5,**

            Defendants.

Civ. No 11-CV-472(WMS)

# DECLARATION OF THOMAS S. LANE

       Thomas S. Lane, makes this Declaration under penalties of perjury, pursuant to 28 U.S.C. § 1746:

    1.    I am an attorney admitted to practice law in New York State and before this Court and a partner in the law firm Webster Szanyi LLP, attorneys for Plaintiffs NRP Holdings LLC and NRP Properties LLC ("NRP"). As such, I have personal knowledge of the prior pleadings and proceedings in this action and the matters stated below.

## Introduction

    2.    I file this declaration in support of Plaintiffs' motion pursuant to Fed. R. Civ. P. 37 to compel Defendants' compliance with Plaintiffs' discovery demands.

    3.    Plaintiffs' motion should be granted because the Defendants have failed to comply with numerous discovery obligations. Plaintiffs' have made multiple good faith efforts to resolve or narrow the outstanding discovery disputes. Defendants have failed

1

to provide any explanation for their failure to comply with their discovery obligations. Defendants have not even indicated when their responses will be complete.

4.    The parties agreed to exchange all outstanding discovery responses, including privilege logs, no later than March 18, 2014.  (Exh. A, Lane e-mail dated April 29, 2014.)  On March 18, 2014, Plaintiffs provided all outstanding discovery responses to all Defendants.

5.    To date we have received no explanation as to why the Defendants' responses remain outstanding.   We have received no indication as to when the Defendants intend to fulfill their discovery obligations.

## Background

### I.    Procedural History

6.    NRP initiated this action via a complaint filed with this Court on June 6, 2011.  (Dkt. 1.)   On January 13, 2012, NRP voluntarily dismissed the Jeremiah Partnership and Richard Stenhouse as defendants.  (Dkt. 25.)  Also on January 13, 2012, the remaining Defendants moved to dismiss the Amended Complaint.  (Dkts. 26, 27.)  On July 12, 2012, the Court granted in part and denied in part the City's motion to dismiss.  (Dkt. 43.)   The Court also granted NRP leave to file a Second Amended Complaint.  (*Id.*)  NRP filed its Second Amended Complaint on July 18, 2012, adding BURA as a defendant.  (Dkt. 44.)  Service was completed on BURA on September 7, 2012.  (Dkt. 50.)  On October 15, 2012 BURA moved to dismiss the Second Amended Complaint.  (Dkt. 58.)  On September 17, 2013, the Court granted in part and denied in part BURA's motion to dismiss.  (Dkt. 68.)   On November 20, 2013 BURA filed its Answer to Plaintiffs' Second Amended Complaint.  (Dkt. 73.)   BURA's answer came more than two months following the Court's September 17, 2013 order denying in part BURA's motion to dismiss, was nearly two months overdue, and was filed only after repeated requests for an answer and only after Plaintiffs were compelled to move for a default.  (Dkt. 70.)

7.    On October 10, 2012, Magistrate Judge Foschio directed the parties to serve interrogatories and document requests no later than November 9, 2012.  (Exh. B,

Transcript of Proceedings Held October 10, 2012, p. 49.)   BURA failed to serve discovery requests by November 9, 2012.   At a November 19, 2012 scheduling conference, Magistrate Judge Foschio admonished BURA for failing to do so. Magistrate Judge Foschio noted that "arguably [BURA] failed to comply with a direct order of the Court and sanctions require that they be precluded." (Exh. C, Transcript of Proceedings Held November 19, 2012, p. 6.)   The Court ordered BURA to serve its interrogatories and discovery demands by December 7, 2012, so that plaintiffs could assess these requests and comply with the Court's order to exchange correspondence with any objections by December 19, 2012. (*Id.* at p. 48.)   Only after the Court's order and further directive did BURA finally serve its first set of interrogatories and request for production on December 7, 2012.

## II.   The Parties' Efforts to Resolve Discovery Disputes and Agreement to Complete Responses by March 18, 2014

8.     Between November 9, 2012 and March 18, 2014 Plaintiffs served several requests for production and interrogatories upon Defendants.   Between February 1, 2013 and March 31, 2014 Defendants served written responses to Plaintiffs' discovery demands.   To the extent relevant to this motion, these demands and responses are set forth in greater detail below.

9.     Defendants' discovery responses were deficient and grossly incomplete. In an effort to resolve or narrow discovery issues before involving the Court, the parties held a number of meet and confer conferences, including several half day long meetings.   The parties attended in person meet and confer conferences on January 14, 2013, February 28, 2013, April 4, 2013, September 26, 2013, October 3, 2013, October 10, 2013 and October 28, 2013.   Since that time, the parties have exchanged countless letters and follow up telephone conversations addressing and narrowing outstanding issues pertaining to discovery.   During a conference call on February 24, 2014, all parties agreed to provide outstanding discovery responses, document productions, supplemental discovery responses, and privilege logs on or before March 18, 2014. (Exh. A, Lane e-mail dated April 29, 2014.)

10.     Defendants failed to provide the agreed-upon materials by March 18, 2014.  On April 29, 2014 I wrote to counsel for the Defendants, noting that there was no indication when their discovery responses would be complete.  (Exh. A, Lane e-mail dated April 29, 2014.)  I indicated that we would like to complete written discovery by May 20, 2014 at the latest - three weeks from the date of my e-mail.  (Id.)  I advised all defendants that after May 20 we would need to consider involving the Court with any outstanding discovery issues.  (Id.)

11.     Despite countless requests, Defendants have failed to comply with many of their discovery obligations.  Defendants have agreed to produce many of the materials which are the subject of this motion, including e-mails, hardcopy records, and privilege logs.  With respect to even these agreed-upon items, however, Defendants' responses are months overdue, with no end in sight.

### Defendants' Failure to Comply with their Discovery Obligations

### City Defendants

12.     Plaintiffs and the City of Buffalo, Byron Brown, and Steven Casey (collectively the "City Defendants") agreed to provide all outstanding discovery responses, including privilege logs, no later than March 18, 2014.  (Exh. A, Lane e-mail dated April 29, 2014.)

13.     On March 21, 2014, the City Defendants submitted some but not all of their outstanding discovery responses.  The City of Buffalo provided a Supplemental Response to Plaintiff's Revised First Set of Interrogatories.  (Exh. C.)  Mr. Brown provided Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories (Exh. E), and Plaintiffs' Third Request for Production and Inspection of Documents and Things.  (Exh. F.)  Mr. Casey provided Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories.  (Exh. G.)

14.     On April 11, 2014, The City of Buffalo produced documents in partial response to Plaintiffs' Revised First Request for Production of Documents and Things. (Exh. H, White letter dated April 11, 2014.)  On April 24, 2014, the City of Buffalo produced documents in partial response to Plaintiff's Revised First Request for

Production of Documents and Things.  (Exh. I, White letter dated April 24, 2014.)  This was the last discovery response received from the City Defendants.

15.    In Mr. White's April 24, 2014 letter enclosing the City Defendant's production, Mr. White indicated that "We are also in the process of producing additional documents, which we anticipate will be produced next week." (*Id.*)  We have received no further productions from the City Defendants since that time nor any indication as to when the City will complete its document production.

## I.    City Defendants' Failure to Produce Privilege Logs

16.    During a conference call held among the parties on February 24, 2014, all parties agreed they would produce privilege logs on or before March 18, 2014.  (Exh. A, Lane e-mail dated April 29, 2014.)  On March 18, 2014, Plaintiffs produced their privilege logs pursuant to this agreement.

17.    We noted the City Defendants' failure to provide privilege logs by letter dated April 10, 2014.  (Exh. J, Hamlin letter dated April 10, 2014, pg. 2.)  We requested that the City Defendants provide their privilege log promptly.  (*Id.*)  The City Defendants did not respond to this letter.

18.    The City Defendants have failed to produce their privilege logs or provide any explanation for their delay.  Accordingly, the City Defendants have waived any objection to privilege with regard to any withheld documents, as discussed in greater detail in the accompanying Memorandum of Law.  Plaintiffs request that the Court issue an order requiring the City Defendants to, within ten days, produce all documents responsive to Plaintiffs' requests but withheld for any reason, including privilege.

## II.    City Defendants' Failure to Produce Documents

### A.    The City Defendants' Failure to Abide by its Agreement to Produce Documents

#### 1.    The City Defendants' Failure to Produce Electronically Stored Records

19.    By letter dated March 14, 2014, Mr. White, counsel for the City Defendants, indicated that the City Defendants were unable to produce all outstanding

documents by March 18, 2014.  (Exh. K.)  Mr. White attributed this to the "sheer volume of restored emails that our outside vendor was able to pull from the City's archived servers."  (*Id.*)  Mr. White indicated that "We do believe that production will be complete by April 11, 2014."  (*Id.*)

20.     By letter dated March 19, 2014, we noted that on February 24, 2014 the parties <u>agreed</u> to final document productions no later than March 18, 2014.  (Exh. L, Hamlin letter dated March 19, 2014).  We stated "It is difficult to understand how the City Defendants were not then aware of the volume of e-mails involved and that it would take nearly twice as long as promised to produce these documents."  (*Id.*)  Nevertheless, we agreed to a production of all remaining emails and documents by April 11, 2014, as requested by the City Defendants.  (*Id.*)

21.     The City Defendants' production of these documents remains outstanding, with no explanation for the delay nor any indication as to when the City Defendants' production will be complete.

## 2.     The City Defendants' Failure to Produce Hard Copy Documents

22.     During a meeting on September 26, 2013, the Plaintiffs agreed that the City Defendants may limit their search for hard copy documents responsive to certain Requests for Production.  (Exh. M, Lane letter dated October 1, 2013.)  Plaintiffs agreed that this limitation applied to Plaintiffs' First Requests for Production, Requests 14, 15, and 16, (Exh. N) and Plaintiffs' Second Request for Production, Requests 2 and 3 (Exh. O).  Plaintiffs agreed that for these Requests the City Defendants could limit their hard copy document response to the following departments and the employees working within those departments:

- Mayor's office;
- Deputy Mayor's office;
- Office of Strategic Planning;
- Planning Board;
- Administration, Finance, Policy and Urban Affairs Department;
- Assessment and Taxation;
- Citizen Services;
- Law Department;

- Permit and Inspection Services; and
- Real Estate Department.

23.     By letter dated April 10, 2014, we advised the City Defendants that we had not received any hard copy documents responsive to these requests.  (Exh. J, Hamlin letter dated April 10, 2014.)  We asked that the City Defendants advise as to the status of these searches and to provide responsive documents promptly.  (*Id.*)  We received no response to this request.

24.     To date we have received no hard copy documents identified as responsive to these requests or obtained from these departments.   Among the documents which the City Defendants have failed to produce are signed June 2008 letters from the Mayor to Governor Patterson and the Department of Housing and Community Renewal Commissioner, Deborah Van Amerongen.  The City of Buffalo and Mr. Brown admitted in their interrogatory responses that "When first given an overview of the Project, Mayor Brown . . . sent letters in support of the Project to the Governor's Office and the DHCR."  (Exh. DD, City of Buffalo Response to Plaintiffs' Revised First set of Interrogatories, interrogatory 32; Exh. GG, Mr. Brown Response to Plaintiffs' Revised First set of Interrogatories, interrogatory 11.)   Drafts of these letters demonstrate the Mayor's "strong support" for the project.   Mr. Brown expressly advocated that "The proposed homeownership program provided under this project will allow fifty low-income families the opportunity to enjoy the American dream."  (Exh. P, COB007610-11.)  These letters demonstrate that the Mayor's sudden opposition to the rent-to-own nature of the project was nothing more than a pretext.  Signed versions of these letters remain unproduced by the City Defendants, with absolutely no explanation.

### B.     The City Defendants' Deficient Responses to Plaintiffs' Third Request for Production

25.     On November 5, 2013, Plaintiffs served a Third Request for Production and Inspection of Documents and Things to the City Defendants ("Plaintiffs' Third Request for Production").  (Exh. Q.)  On December 13, 2013 the City Defendants served their Responses to Plaintiffs' Third Request for Production.  (Exh. R.)

### 1. The City Defendants' Failure to Produce Documents

26. In the City Defendants' Responses, they indicated they would be providing responsive documents concerning requests 1, 2, and 5. (*Id.*) To date, we have not received any documents identified as responsive to these requests.

27. On February 19, 2014 we sent a letter to counsel for the City Defendants concerning their response to Plaintiffs' Third Request for Production. (Exh. S, Hamlin letter dated February 19, 2014.) We noted that the City Defendants indicated that their production of documents in response to Plaintiffs' Third Request for Production was forthcoming, and requested a date by which these documents would be produced. (*Id.*) We received no response to this request.

### 2. The City Defendants' Responses Are Inadequate

#### a. Request 2: Technical Assistance to the Jeremiah Partnership

28. Plaintiffs' Third Request for Production, Request 2, requested that the City Defendants provide "All documents concerning Technical Assistance meetings and/or actual assistance offered or provided to the Jeremiah Partnership (*see*, *e.g.*, COB004339-004340). . ." (Exh. Q, Plaintiffs' Third Request for Production; Exh. T, COB004339-40, Technical Assistance Meeting Jeremiah Partnership, April 17, 2009 - 920 City Hall.)

29. The City Defendants objected to the term "Technical Assistance" as overly vague and ambiguous. (Exh. R).

30. The phrase "Technical Assistance" is used in a document produced by the City Defendants, authored by City personnel, reflecting a "Technical Assistance Meeting" concerning the Jeremiah Partnership attended by City personnel. (Exh. T, COB004339-40.) The document notes that a purpose of the meeting is to "[d]etermine what if any technical assistance can be offered through City Hall. . ." (*Id.*) The document notes that next steps would be suggestion of "paid technical staff that may be helpful for the Jeremiah Partnership going forward." (*Id.*)

31.     "Technical assistance" is the phrase given by the City Defendants to the assistance provided to the Jeremiah Partnership.  It is their term and, thus, cannot possibly be considered ambiguous.  The clear purpose of this meeting and any similar meetings was to assist the Jeremiah Partnership in the discharge of the Jeremiah Partnership's duties concerning contracts for the provision of low income housing, community development, and/or development projects.

32.     We wrote to counsel for the City Defendants on February 19, 2014.  (Exh. S, Hamlin letter dated February 19, 2014.)  In that letter we advised the City Defendants of our position, as set forth above.  We received no further communication from the City Defendants in response to this letter.

33.     Plaintiffs' allege that Mr. Brown conditioned his support for the project on Plaintiffs' finding a no-show position for Mr. Stenhouse and the Jeremiah Partnership. Plaintiffs have asserted RICO claims premised, in part, on the fact that Mr. Brown has found similar no-show positions for Mr. Stenhouse and the Jeremiah Partnership in other projects.  Plaintiffs' contend that these "Technical Assistance" meetings and the aid provided to Mr. Stenhouse and the Jeremiah Partnership are evidence that these positions were nothing more than no-show jobs and that the City would discharge Mr. Stenhouse's and the Jeremiah Partnership's duties.  The City Defendants are clearly familiar with the meaning of their own phrase - "Technical Assistance" - and should be required to produce documents response to this request.

### b.     Requests 3 and 4: Other Developers Receiving Technical Assistance

34.     Plaintiffs' Third Request for Production, Request 3, requested that the City Defendants provide "Documents sufficient to identify any other developer for which any similar Technical Assistance meetings were held concerning the provision of low income housing, community development, and/or development projects from 2001 to the present."  (Exh. Q.)   Request 4 requested that the City Defendants provide "Documents sufficient to identify any other developer that any City entity assisted in the discharge of that developer's duties concerning contracts for the provision of low

income housing, community development, and/or development projects from 2001 to the present."  (*Id.*)

36. The City Defendants again objected to the phrase "Technical Assistance" as overly vague and ambiguous.  (Exh. R.)  This objection is addressed above.  The City Defendants also objected to the term "assisted" as overly vague and ambiguous. (*Id.*)

36. The City Defendants further objected to these requests as overly broad and burdensome in that "Technical Assistance" or "assistance" is required to be provided to any developer on any project using federal funds.  (*Id.*)  The City Defendants' interpretation of this request is nothing more than an attempt to intentionally misconstrue their own phrase in an attempt to unreasonably expand the scope of these requests.

37. The City Defendants, in response to these requests, also referred Plaintiffs to the records BURA has made available for inspection.  (*Id.*)

38. The City Defendants have an independent obligation to respond and may not refer Plaintiffs to documents BURA has made available.  There is no indication that the records BURA made available for inspection included documents concerning Plaintiffs Third Request for Production.  BURA previously made documents available for inspection and copying in response to requests for production concerning the subject project, and certain other discrete projects.  BURA did not make available for inspection and copying documents concerning all projects where other developers received similar assistance, as required by these requests.

39. There is also no indication that BURA's records are coextensive with the City Defendants'.  BURA has, incredibly, denied that it is the City of Buffalo's agent for carrying out the City's urban renewal activities.  (*See* Dkt. 73, BURA's Answer to Plaintiffs' Second Amended Complaint, ¶ 14.)  It follows, therefore, that BURA cannot be the City Defendants' agent for production of documents responsive to these requests.

40.      It should be noted that Plaintiffs have narrowly tailored these requests to only those documents sufficient to identify any developer for which similar Technical Assistance meetings were held or any developer receiving similar assistance.  The requests do not call for all documents concerning such assistance.

41.      We wrote to counsel for the City Defendants on February 19, 2014.  (Exh. S, Hamlin letter dated February 19, 2014.)  In that letter we advised the City Defendants of our position, as set forth above.  We received no further communication from the City Defendants in response to this letter.

**c.      Request 5: Documents Concerning the Buffalo Fiscal Stability Authority's Consideration and/or Approval of the Project**

42.      Plaintiffs' Third Request for Production, Request 5, requested that the City Defendants provide "All documents concerning the Buffalo Fiscal Stability Authority's consideration and/or approval of the Project including, but not limited to, communications, emails, notes, letters, memoranda, reports, agendas, meeting minutes and meeting transcripts."  (Exh. Q.)

43.      The City Defendants responded that they will produce all responsive documents in their possession.  (Exh. R.)

44.      To date we have received no documents identified as responsive to this request.

**C.      The City Defendants' Failure to Produce Documents Provided to the Office of Inspector General, U.S. Department of Housing and Urban Development**

45.      On November 16, 2012 Plaintiffs served upon the City of Buffalo, Mr. Brown, and Mr. Casey Revised First Requests for Production and Inspection of Documents and Things ("Plaintiffs' First Request for Production").  (Exh. U, City of Buffalo; Exh. V, Mr. Brown; Exh. W, Mr. Casey.)  These Requests required the City Defendants to produce "All subpoenas, or requests for information, served on defendant during the time period 2001 to the present by any Federal, State, or local governmental office or agency requesting documents concerning the use of Federal, State, or local

funds for housing or community development projects and all documents produced by defendant in response to such subpoenas."  (Exh. U, City of Buffalo, Request 13; Exh. V, Mr. Brown, Request 4; Exh. W, Mr. Casey, Request 4.)

46.     On February 1, 2013 the City Defendants responded to Plaintiffs' Request for Production.  (Exh. X, City of Buffalo; Exh. Y, Mr. Brown; Exh. Z, Mr. Casey.)  The City Defendants each raised several objections concerning vagueness, ambiguity, burden, relevance, and privilege.  However, the City Defendants indicated that "Without waiving those objections, defendant states that [it / he] will provide responsive documents relating to formal requests for information and subpoenas concerning the use of Federal, State and Local funds for housing projects."  (Exh. X, City of Buffalo, Response to Request 13; Exh. Y, Mr. Brown, Response to Request 4; Exh. Z, Mr. Casey, Response to Request 4.)

47.     Recent local media reports documented an investigation by the Office of Inspector General, U.S. Department of Housing and Urban Development ("OIG") concerning the City of Buffalo's spending of Community Development Block Grant funds.  These reports, and information received from the OIG pursuant to a FOIA request and produced to the City Defendants, indicate that the City Defendants had produced material to the OIG in connection with the OIG's investigation.  We have not received any material from the City Defendants suggesting that documents were provided to the OIG in connection with this investigation.

48.     We sent a letter dated February 18, 2014 to the City Defendants, noting that information provided to the OIG in connection with its investigation was responsive to Plaintiffs' Requests for Production.  (Exh. AA, Hamlin letter dated February 18, 2014.)  We requested that the City Defendants produce this material no later than February 28, 2014.  (*Id.*)  We received no response or objection to our request.

> **D.      The City Defendants' Failure to Produce Documents Concerning the "Mayor's Fund to Advance Buffalo"**

49.     Request 18 of the Plaintiffs' First Request for Production to the City of Buffalo and Request 9 of Plaintiffs' First Request for Production upon Mr. Brown required them to produce "All documents and communications, including but not limited

to a list of donors, concerning the 'Mayor's Fund to Advance Buffalo.'"  (Exh. X, City of Buffalo; Exh. Y, Mr. Brown.)

50.     The City of Buffalo and Mr. Brown indicated in their responses to this Request that "Documents responsive to this request will be produced."  (Exh. X, City of Buffalo, Response to Request 18; Exh. Y, Mr. Brown, Response to Request 9.)

51.     To date the only documents we have received concerning the Mayor's Fund to Advance Buffalo are tax records for 2008 and 2009.  We noted this deficiency to the City Defendants in a letter dated February 18, 2014.  (Exh. AA, Hamlin letter dated February 18, 2014.)  In that letter we requested that the City Defendants produce all tax records and donors lists, as well as any communications concerning the Mayor's Fund to Advance Buffalo.  (*Id.*)  We received no response or objection to this request.

### E.     The City Defendants' Failure to Identify Documents Responsive to Plaintiffs' Discovery Requests

52.     The City Defendants have agreed to provide supplemental written responses to Plaintiffs' Requests for Production and Interrogatories, identifying documents responsive to each request and interrogatory by production number.  (Exh. BB, Lane letter dated October 8, 2013, pg. 1.)

53.     The City Defendants have provided no supplemental written responses to Plaintiffs' requests for production.  The City Defendants have not produced documents as they are maintained in the ordinary course of business, nor have they identified documents responsive to each request and interrogatory by production number.

### III.   City of Buffalo's Failure to Provide Complete Interrogatory Responses

### A.     Interrogatory 25: The City of Buffalo's Failure to Set forth All Facts Concerning Its Affirmative Defense that the City Defendants Sued in their Official Capacities are Entitled to Governmental Function Immunity

54.     On November 16, 2012 Plaintiffs served a Revised First Set of Interrogatories upon the City of Buffalo.  (Exh. CC.)  Interrogatory 25 called for the City of Buffalo to "Set forth the basis and all facts concerning your affirmative defense that

the City Defendants sued in their official capacities are entitled to governmental function immunity. Identify all documents, communications and witnesses supporting your response." (*Id.*)

55.     On February 1, 2013 the City of Buffalo served its response to Plaintiffs' Revised First Set of Interrogatories. (Exh. DD.)  In response to Interrogatory 25, the City of Buffalo objected "to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature." (*Id.*)

56.     As reflected in Mr. Lane's letter dated October 8, 2013, the parties met and conferred concerning Plaintiffs' objection to the City of Buffalo's response to Interrogatory 25. (Exh. BB, Lane letter dated October 8, 2013.)  The City of Buffalo agreed to consider providing a supplemental response. (*Id.*)

57.     On December 13, 2013, the City of Buffalo served its Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories. (Exh. EE.)  The City of Buffalo did not provide any supplemental response to Interrogatory 25.

58.     Plaintiffs are entitled to interrogatory responses setting forth the <u>factual</u> basis for the City of Buffalo's governmental function immunity affirmative defense, as set forth in greater detail in the accompanying Memorandum of Law.

      **B.**    **Interrogatory 33: The City of Buffalo's Failure to Identify Housing and Community Development Projects and to Identify Information Concerning these Projects**

59.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 33, called for the City of Buffalo to provide the following information:

> Identify all housing and community development projects in the City of Buffalo during the time period 2001 to the present and for each project please identify the following:
>
> a.  whether HOME funds were used, and if so, the amount;
>
> b.  whether LIHTC were used, and if so, the amount;

    c.  the amount, and type, of any Federal funding used;

    d.  the amount, and type, of any State funding used;

    e.  all developers and affiliates involved in each project;

    f.  the location of lots;

    g.  the number of lots;

    h.  whether the project involved the transfer of City owned lots;

    i.  whether the housing units were available to purchase, rent, or rent-to-own;

    j.  the categories of documents possessed for each project;

    k.  the start date and completion date; and

    l.  the departments or agencies involved in each project.

(Exh. CC.)

60.    The City of Buffalo's response to this Interrogatory, served February 1, 2013, objected to this Interrogatory in its entirety and provided no information.  (Exh. DD.)

61.    Following several meet and confer conferences, the City Defendants agreed to supplement their response to provide responsive information to a slightly revised version of this interrogatory, subject to some minor qualifications.  (Exh. BB, Lane letter dated October 8, 2013.)

62.    On December 13, 2013, the City of Buffalo served its Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories.  (Exh. EE.)  In response to Interrogatory 33, the City of Buffalo set forth a list which purported to be "all known 'housing and community development projects' completed in the City of Buffalo from 2001 through the present."  (*Id.*)

63.    The list set forth was nothing more than a list of individual properties including four pieces of information: a column apparently identifying the project; the

street address; an unidentified date associated with each property; and an unidentified sum of money associated with each property.

64.     This list is both over inclusive and not responsive.   Interrogatory 33 requires identification of projects, not property level detail.  Missing from this response is any information concerning whether HOME or LIHTC funds were used or the amount; the amount and type of any Federal or State funding; the developers or affiliates involved in each project; whether the project involved the transfer of City owned lots; whether the housing units were available to purchase, rent, or rent-to-own; categories of documents possessed for each project; the start date and completion date; and the departments or agencies involved in each project.

65.     We noted these deficiencies to counsel for the City Defendants by letter dated April 10, 2014.  (Exh. J; Hamlin letter dated April 10, 2014.)  We received no response to this request for additional information.

> **C.     Interrogatory 34: The City Defendants' Failure to Identify Stenhouse, Jeremiah Partnership, or Bethel Community Development Corporation Housing and Community Development Projects**

66.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 34, called for the City of Buffalo to "Identify all proposed, pending, or completed housing and community development projects in the City of Buffalo involving Reverend Richard A. Stenhouse, the Buffalo Jeremiah Partnership for Community Development, the Bethel Community Development Corporation, or any individual or entity affiliated with Reverend Richard A. Stenhouse, the Buffalo Jeremiah Partnership for Community Development, or the Bethel Community Development Corporation, during the time period 2001 to the present."  (Exh. CC.)

67.     The City of Buffalo's response to this Interrogatory, served February 1, 2013, objected to this Interrogatory in its entirety and provided no information.  (Exh. DD.)  The City of Buffalo objected to this interrogatory as "overly vague and ambiguous, overbroad and unduly burdensome with respect to a number of its terms."  (*Id.*)

68.     Despite several meet and confer conferences, the parties were unable to reach an agreement concerning the City of Buffalo's response to this interrogatory.  The City of Buffalo has not supplemented its response to this interrogatory.

69.     Interrogatory 34 calls for the City of Buffalo to do nothing more than identify responsive projects following reasonable inquiry.   Interrogatory 34 does not require a "review of all the City's documents on all projects," as the City of Buffalo suggests.   It should be no secret to the City of Buffalo which housing and community development projects involved Mr. Stenhouse, the Jeremiah Partnership, or the Bethel Community Development Corporation.

### D.     Interrogatory 35: The City of Buffalo's Failure to Provide Details Concerning Prior Complaints of Improper Conduct

70.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 35, called for the City of Buffalo to "Set forth the details of any prior complaints, whether formal, informal, written, or verbal, and including but not limited to any notices of claim or litigation, made against defendant, during the time period 1997 to the present, concerning pay-to-play arrangements;   pay-for-votes arrangements;   favoritism; nepotism; cronyism; dishonesty; discrimination; improper request, solicitation, or pressure on City of Buffalo employees to make political donations; misuse of public funds; abuse of power; corruption; RICO violations; bribery; improper bidding practices; repression of political opponents; Hobbs Act violations; wire fraud; mail fraud; patronage; graft; embezzlement; improper fundraising or solicitation of political contributions; improper quid pro quo; influence peddling; improper interaction with lobbyists; electoral fraud; kickbacks; unholy alliances; improperly keeping items off the Common Council Agenda; failure to proceed with a project where prior representations had been (allegedly or actually) made that the City of Buffalo, BURA, or other defendants would proceed with a project; and/or similar complaints.   Identify all documents, communications, and witnesses supporting your response."  (Exh. CC.)

71.     The City of Buffalo's response to this Interrogatory, served February 1, 2013, objected to this Interrogatory in its entirety and provided no information.  (Exh. DD.)

72.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning the City of Buffalo's response to this interrogatory.  We have had discussions regarding more narrowly tailoring the interrogatory, but the City of Buffalo has refused to agree to any accommodation.

IV.    **Mr. Brown's Failure to Provide Complete Interrogatory Responses**

A.    **Interrogatories 5 and 6: Mr. Brown's Failure to Provide the Factual Basis for his Affirmative Defenses that he is Entitled to Absolute and/or Qualified Immunity and Government Function Immunity.**

73.    On November 16, 2012 the Plaintiffs served upon Mr. Brown Plaintiffs' Revised First set of Interrogatories.  (Exh. FF.)  Interrogatory 5 required Mr. Brown to "Set forth the basis and all facts concerning your affirmative defense that you are entitled to absolute and/or qualified immunity.  Identify all documents, communications and witnesses supporting your response." (*Id.*)  Interrogatory 6 required Mr. Brown to "Set forth the basis and all facts concerning your affirmative defense that you are entitled to governmental function immunity.  Identify all documents, communications and witnesses supporting your response." (*Id.*)

74.    On February 1, 2013, Mr. Brown served his Response to Plaintiffs' Revised First Set of Interrogatories.  (Exh. GG.)  Mr. Brown's response set forth no facts concerning his affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.  On March 21, 2014, Mr. Brown served his Supplemental Response to Plaintiffs' Revised First Set of Interrogatories.  (Exh. E.) This response contains no additional information concerning these interrogatories.

75.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Brown's responses to these interrogatories.  Mr. Brown has not supplemented his responses to these interrogatories.

76.    Plaintiffs are entitled to interrogatory responses setting forth the factual basis for Mr. Brown's affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.

**B.**   **Interrogatory 7: Mr. Brown's Failure to Provide the Factual Basis for his Affirmative Defense that Plaintiffs are not Entitled to Punitive Damages**

77.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 7, called for Mr. Brown to "Set forth the basis and all facts concerning your affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.   Identify all documents, communications and witnesses supporting your response."  (Exh. FF.)

78.     Mr. Brown's response to Interrogatory 7, served February 1, 2013, objected to this Interrogatory to the extent it seeks "identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature."  (Exh. GG.)  Mr. Brown's Supplemental Response, served March 21, 2014, provided no additional information.  (Exh. E.)

79.     Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Brown's responses to this interrogatory.  Mr. Brown has not supplemented his responses to this interrogatory.

80.     Plaintiffs are entitled to interrogatory responses setting forth the factual basis for Mr. Brown's affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.

**C.**   **Interrogatory 12: Mr. Brown's Failure to Set Forth the Basis and All Facts Supporting his Campaign Claim Concerning Development in the City of Buffalo**

81.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 12, called for Mr. Brown to "Set forth the basis and all facts supporting your campaign claim that there has been three billion dollars of development in the City of Buffalo since you were elected.   Identify the developments included, the start and completion dates of each development, the name of the developer, and please state whether the Project is included as part of the "three billion dollars."   Identify all documents, communications, and witnesses supporting your response."  (Exh. FF.)

82.     Mr. Brown's response to Interrogatory 12, served February 1, 2013, objected to this Interrogatory.  (Exh. GG.)  Mr. Brown's Supplemental Response served

March 21, 2014 provided that "Defendant's campaign claim was made in reliance on records maintained by the Office of Strategic Planning.  These documents have already been provided to plaintiffs."  (Exh. E.)

83.    Mr. Brown's response fails to provide any information concerning the developments which comprise his three billion dollar claim.  Mr. Brown does not identify a single development, the dates of any development, or any developers.

84.    We objected to Mr. Brown's response by letter dated April 10, 2014.  (Exh. J, Hamlin letter dated April 10, 2014.)  We have received no objection or response to our request for additional information.  The Court should order a full and complete response to this interrogatory.

### D.    Interrogatory 16: Mr. Brown's Failure to Identify his Sources and Amount of Income

85.    Plaintiffs' Revised First Set of Interrogatories, Interrogatory 16, called for Mr. Brown to "Set forth all sources and amount of income for the last fifteen (15) years." (Exh. FF.)

86.    Mr. Brown's response to Interrogatory 16, served February 1, 2013, objected to this Interrogatory.  (Exh. GG.)  Mr. Brown's Supplemental Response, served March 21, 2014, provided no additional information.

87.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Brown's responses to this interrogatory.  Mr. Brown has not supplemented his responses to this interrogatory.

88.    The Plaintiffs have alleged that Mr. Brown conditioned his support for the project on Plaintiffs finding a role for Mr. Stenhouse in the project.  Plaintiffs are entitled to discovery concerning Mr. Brown's relationship with Mr. Stenhouse and his affiliated entities.  Plaintiffs are entitled to know the details concerning any income Mr. Brown derives from any business ventures with Mr. Stenhouse or affiliated entities as such information would be highly probative of establishing Mr. Brown's reasons for demanding a role for Mr. Stenhouse and his affiliates in the subject project.

### E.   Interrogatory 20: Mr. Brown's Failure to Provide Details Concerning Prior Complaints of Improper Conduct

89.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 20, called for Mr. Brown to "Set forth the details of any prior complaints, whether formal, informal, written, or verbal, and including but not limited to any notices of claim or litigation, made against you, during the time period 1997 to the present, concerning pay-to-play arrangements; pay-for-votes arrangements; favoritism; nepotism; cronyism; dishonesty; discrimination; improper request, solicitation, or pressure on City of Buffalo employees to make political donations; misuse of public funds; abuse of power; corruption; RICO violations; bribery; improper bidding practices; repression of political opponents; Hobbs Act violations; wire fraud; mail fraud; patronage; graft; embezzlement; improper fundraising or solicitation of political contributions; improper quid pro quo; influence peddling; improper interaction with lobbyists; electoral fraud; kickbacks; unholy alliances; improperly keeping items off the Common Council Agenda; failure to proceed with a project where prior representations had been (allegedly or actually) made that the City of Buffalo, BURA, or other defendants would proceed with a project;  and/or similar complaints.   Identify all documents, communications, and witnesses supporting your response."  (Exh. FF.)

90.   Mr. Brown's response to Interrogatory 16, served February 1, 2013, objected to this Interrogatory.  (Exh. GG.)  Mr. Brown's Supplemental Response, served March 21, 2014, provided no additional information.  (Exh. E.)

91.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Brown's responses to this interrogatory.  Mr. Brown has not supplemented his responses to this interrogatory.

92.   Consistent with the City of Buffalo's position with regard to our interrogatory to them concerning improper conduct, Mr. Brown has refused to agree to any accommodation concerning this interrogatory.  Moreover, it is difficult to understand how this interrogatory concerning complaints of improper conduct could be considered unduly burdensome.   Presumably there are not so many that it would be unduly

burdensome to identify any complaints in general terms as the starting point for further discussion to focus on complaints most relevant to this litigation.

> **F.     Mr. Brown's Failure to Provide Verified Interrogatory Responses**

93.     Mr. Brown's Supplemental Response, served March 21, 2014, was not made under oath by Mr. Brown nor signed by Mr. Brown.  (Exh. E.)  As such, it is a nullity, as set forth in greater detail in the accompanying Memorandum of Law.

94.     Counsel for Mr. Brown indicated in a letter dated March 21, 2014 that a verification sheet was to follow.  (Exh. HH, White letter dated March 21, 2014.)  We have received no such verification.

> **V.     Mr. Casey's Failure to Provide Complete Interrogatory Responses**

> **A.     Interrogatories 4 and 5: Mr. Casey's Failure to Provide the Factual Basis for his Affirmative Defenses that he is Entitled to Absolute and/or Qualified Immunity and Government Function Immunity.**

95.     On November 16, 2012 the Plaintiffs served upon Mr. Casey Plaintiffs' Revised First set of Interrogatories.  (Exh. II.)  Interrogatory 4 required Mr. Casey to "Set forth the basis and all facts concerning your affirmative defense that you are entitled to absolute and/or qualified immunity.   Identify all documents, communications and witnesses supporting your response." (*Id.*)  Interrogatory 5 required Mr. Casey to "Set forth the basis and all facts concerning your affirmative defense that you are entitled to governmental function immunity.   Identify all documents, communications and witnesses supporting your response." (*Id.*)

96.     On February 1, 2013, Mr. Casey served his Response to Plaintiffs' Revised First Set of Interrogatories.  (Exh. JJ.)  Mr. Casey's response set forth no facts concerning his affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.  On March 21, 2014, Mr. Casey served his Supplemental Response to Plaintiffs' Revised First Set of Interrogatories.  (Exh. G.) This response contains no additional information concerning these interrogatories.

97.     Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Casey's responses to these interrogatories.   Mr. Casey has not supplemented his responses to these interrogatories.

98.     Plaintiffs are entitled to interrogatory responses setting forth the <u>factual</u> basis for Mr. Casey's affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.

**B.      Interrogatory 6: Mr. Casey's Failure to Provide the Factual Basis for his Affirmative Defense that Plaintiffs are not Entitled to Punitive Damages**

99.     Plaintiffs' Revised First Set of Interrogatories, Interrogatory 6, called for Mr. Casey to "Set forth the basis and all facts concerning your affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.   Identify all documents, communications and witnesses supporting your response."  (Exh. II.)

100.    Mr. Casey's response to Interrogatory 6, served February 1, 2013, objected to this interrogatory to the extent it seeks "identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature."  (Exh. JJ.)  Mr. Casey's Supplemental Response, served March 21, 2014, provided no additional information.  (Exh. G.)

101.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Casey's responses to this interrogatory.  Mr. Casey has not supplemented his responses to this interrogatory.

102.    Plaintiffs are entitled to interrogatory responses setting forth the factual basis for Mr. Casey's affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.

**C.      Interrogatory 13: Mr. Casey's Failure to Identify his Sources and Amount of Income**

103.    Plaintiffs' Revised First Set of Interrogatories, Interrogatory 13, called for Mr. Casey to "Set forth all sources and amount of income for the last fifteen (15) years." (Exh. II.)

104.    Mr. Casey's response to Interrogatory 16, served February 1, 2013, objected to this interrogatory.  (Exh. JJ.)  Mr. Casey's Supplemental Response, served March 21, 2014, provided no additional information.  (Exh. G.)

105.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Casey's responses to this interrogatory.  Mr. Casey has not supplemented his responses to this interrogatory.

106.    The Plaintiffs have alleged that Mr. Brown conditioned his support for the project on Plaintiffs finding a role for Mr. Stenhouse in the project.  Plaintiffs are entitled to discovery concerning the individual defendants' relationship with Mr. Stenhouse and his affiliated entities.  Plaintiffs are entitled to know the details concerning any income Mr. Casey derives from any business ventures with Mr. Stenhouse or affiliated entities.

### D.    Interrogatory 16: Mr. Casey's Failure to Provide Details Concerning Prior Complaints of Improper Conduct

107.    Plaintiffs' Revised First Set of Interrogatories, Interrogatory 16, called for Mr. Casey to "Set forth the details of any prior complaints, whether formal, informal, written, or verbal, and including but not limited to any notices of claim or litigation, made against you, during the time period 1997 to the present, concerning pay-to-play arrangements; pay-for-votes arrangements; favoritism; nepotism; cronyism; dishonesty; discrimination; improper request, solicitation, or pressure on City of Buffalo employees to make political donations; misuse of public funds; abuse of power; corruption; RICO violations; bribery; improper bidding practices; repression of political opponents; Hobbs Act violations; wire fraud; mail fraud; patronage; graft; embezzlement; improper fundraising or solicitation of political contributions; improper quid pro quo; influence peddling; improper interaction with lobbyists; electoral fraud; kickbacks; unholy alliances; improperly keeping items off the Common Council Agenda; failure to proceed with a project where prior representations had been (allegedly or actually) made that the City of Buffalo, BURA, or other defendants would proceed with a project;  and/or similar complaints.   Identify all documents, communications, and witnesses supporting your response."  (Exh. II.)

108.   Mr. Casey's response to Interrogatory 16, served February 1, 2013, objected to this interrogatory.  (Exh. JJ.)  Mr. Casey's Supplemental Response, served March 21, 2014, provided no additional information.  (Exh. G.)

109.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Casey's responses to this interrogatory.  Mr. Casey has not supplemented his responses to this interrogatory.

110.   Consistent with the other defendants' position with regard to our interrogatory to them concerning improper conduct, Mr. Casey has refused to agree to any accommodation concerning this interrogatory.  As with Mr. Brown, it is difficult to understand how this interrogatory concerning complaints of improper conduct could be considered unduly burdensome.  Presumably there are not so many that it would be unduly burdensome to identify any complaints in general terms as the starting point for further discussion to focus on complaints most relevant to this litigation.

E.   **Mr. Casey's Failure to Provide Verified Interrogatory Responses**

111.   Mr. Casey's Supplemental Response served March 21, 2014 was not made under oath by Mr. Casey nor signed by Mr. Casey.  (Exh. G.)  As such, it is a nullity, as set forth in greater detail in the accompanying Memorandum of Law.

112.   Counsel for Mr. Casey indicated in a letter dated March 21, 2014 that a verification sheet was to follow.  (Exh. HH, White letter dated March 21, 2014.)  We have received no such verification.

**BURA**

113.   BURA has made numerous groundless objections to Plaintiffs' requests. BURA failed to accommodate reasonable requests to schedule examination of its files. When its files were finally examined and selections marked for copying, it took months and numerous follow up requests to obtain copies.   BURA has disclaimed a responsibility to conduct its own ESI review and production.  BURA has, at nearly every turn, taken months what it should have done in days and protracted discovery.

**I.      BURA's Failure to Produce Privilege Logs**

114.   During a conference call held among the parties on February 24, 2014 all parties agreed they would produce privilege logs on or before March 18, 2014.  (Exh. A, Lane e-mail dated April 29, 2014.)   On March 18, 2014, Plaintiffs produced their privilege logs pursuant to this agreement.

115.   We noted the BURA's failure to provide privilege logs by letter dated April 10, 2014.  (Exh. KK, Hamlin letter dated April 10, 2014.)   We requested that BURA provide its privilege log promptly.  (*Id.*)  BURA did not respond to this letter.

116.   BURA has failed to produce their privilege logs or provide any explanation for their delay.  Accordingly, BURA has waived any objection to privilege with regard to any withheld documents, as discussed in greater detail in the accompanying Memorandum of Law.  Plaintiffs request that the Court issue an order requiring BURA to, within ten days, produce all documents responsive to Plaintiffs' requests but withheld for any reason, including privilege.

**II.      BURA's Failure to Produce Documents**

**A.      BURA's Failure to Identify Documents Responsive to Plaintiffs' Discovery Requests**

117.   BURA has <u>agreed</u> to provide supplemental written responses to Plaintiffs' Requests for Production, identifying documents responsive to each request by production number.  (Exh. LL, Hamlin letter dated March 19, 2014.)

118.   BURA has provided no supplemental written responses to Plaintiffs' requests for production.  BURA has not produced documents as they are maintained in the ordinary course of business, nor have they identified documents responsive to each request by production number.

**B.      BURA's Failure to Produce ESI**

119.   BURA has asserted that it is under no obligation to produce electronically stored information ("ESI"), including its own e-mails.  *See, e.g.,* BURA's Response to Plaintiffs' Third Request for Production ("As noted in previous Responses to the

Plaintiffs' Demands, any e-mail communications relating to the Jeremiah Partnership were stored on the server maintained by the City of Buffalo.")  (Exh. QQ, p. 4.)

120.   BURA has an independent obligation to produce documents, including e-mails and other ESI, within its custody or control.  To date, BURA has never represented that it is incapable of producing its own ESI in response to Plaintiffs' requests for production.  BURA may not rely on the City of Buffalo's production to discharge its discovery obligations.  As noted above, the City Defendants have failed to completely discharge their own obligation to provide responsive ESI.

121.   We objected to BURA's refusal to conduct its own ESI production by letters dated March 29, 2013 (Exh. MM) and May 22, 2013 (Exh. NN).  We wrote again to counsel for BURA on February 19, 2014.  (Exh. OO, Hamlin letter dated February 19, 2014.)  In that letter we objected to BURA's position that it is not required to produce e-mails.  We advised BURA of its independent obligation to produce all documents in its possession, custody, or control.  We noted that there could be no dispute that BURA controls its own e-mails.  We received no response to this letter.

### C.   BURA's Deficient Responses to Plaintiffs' Third Request for Production

122.   On November 5, 2013, Plaintiffs served a Third Request for Production and Inspection of Documents and Things ("Plaintiffs' Third Request for Production"). (Exh. PP.)  On December 19, 2013 BURA served its Responses to Plaintiffs' Third Request for Production.  (Exh. QQ.)

### 1.   BURA's Responses Are Inadequate

#### a.   Request 3: Other Developers For Whom Technical Assistance Meetings Were Held

123.   Plaintiffs' Third Request for Production, Request 3, requested that BURA provide "Documents sufficient to identify any other developer for which any similar Technical Assistance meetings were held concerning the provision of low income housing, community development, and/or development projects from 2001 to the present."  (Exh. PP.)

124.   BURA objected to the term "Technical Assistance" as vague and ambiguous.   (Exh. QQ.)   The City Defendants' same objection to this request is addressed above.

125.   BURA further objected to Request 3 as overly broad and burdensome in that BURA provides "Technical Assistance" to any developer on any project using federal funds.   (*Id.*)   As with the City Defendants, BURA's interpretation of this request is nothing more than an unreasonable attempt to intentionally misconstrue the request to expand its scope.

126.   BURA has also indicated that "Any documents relating to such technical assistance would be contained in the files previously provided to the Plaintiffs for inspection." (*Id.*)

127.   It is unlikely that documents responsive to this Request would have been made available to Plaintiffs for inspection.   Plaintiffs' prior discovery requests concerning developers other than the Jeremiah Partnership were limited to discrete projects.   This request concerns any project for which responsive meetings were held.   As such, it is unlikely BURA would have made documents concerning responsive projects available for inspection.

128.   It should be noted that Plaintiffs have narrowly tailored this request to only those documents sufficient to identify any developer for which similar Technical Assistance meetings were held.   The request does not call for all documents concerning such assistance.

129.   We wrote to counsel for BURA on February 19, 2014.   (Exh. OO, Hamlin letter dated February 19, 2014.)   In that letter we advised BURA of our position, as set forth above.   We received no further communication from BURA in response to this letter.

   **b. Request 4: Other Developers Receiving Technical Assistance**

130.   Request 4 required BURA to provide "Documents sufficient to identify any other developer that any City entity assisted in the discharge of that developer's duties

concerning contracts for the provision of low income housing, community development, and/or development projects from 2001 to the present."  (Exh. PP.)

131.   In response, BURA provided a list entitled "U.S. Department of Housing and Urban Development - Status of HOME Activities - Entitlement - Buffalo, NY."  (Exh. QQ.)

132.   This list appears to be a property-level detail including development project, address, status, funding date, and funding amounts.  To the extent it reflects all BURA HOME Activities by property, this is far broader than Plaintiffs' request.  Request 4 calls for only documents sufficient to identify responsive developers receiving assistance similar to that provided to Richard Stenhouse, the Jeremiah Partnership, or the Bethel CDC.

133.   We wrote to counsel for BURA on February 19, 2014.  (Exh. OO, Hamlin letter dated February 19, 2014.)  In that letter we advised BURA of our position, as set forth above.   We received no further communication from BURA in response to this letter.

      **c.**      **Request 5: Documents Concerning the Buffalo Fiscal Stability Authority's Consideration and/or Approval of the Project**

134.   Plaintiffs' Third Request for Production, Request 5, requested that BURA provide "All documents concerning the Buffalo Fiscal Stability Authority's consideration and/or approval of the Project including, but not limited to, communications, emails, notes, letters, memoranda, reports, agendas, meeting minutes and meeting transcripts." (Exh. PP.)

135.   In response BURA indicated that it had no such documents.  (Exh. QQ.) This cannot be correct.  Plaintiffs have received documents from the Buffalo Fiscal Stability Authority ("BFSA") including correspondence between BURA and the BFSA. These documents include a letter to the BFSA dated March 13, 2009 from Carla A. Kosmerl, Director of Administration and Finance for BURA, requesting approval of funding expenditures for the East Side Housing Opportunities Phase II contract in the amount of $1,600,000.   (Exh. OO, Hamlin letter dated February 19, 2014 with

attachments.)  Attached to this letter is a BFSA Contract Approval Request Form dated March 13, 2009, and signed by Scott C. Billman and Carla A. Kosmerl.  (*Id.*)  Also attached is a March 5, 2009 document entitled BURA Board Item, from Carla A. Kosmerl to the BURA Board of Directors, concerning the Phase II Project.  (*Id.*)  In that document Ms. Kosmerl recommends that the board approve a request to allocate $1,600,000 in HOME funds to the Phase II Project.  (*Id.*)  The documents from BFSA also include a letter dated April 6, 2009, from Michael P. Kelly, Principal Analyst with the BFSA, to Ms. Carla Kosmerl, noting BFSA's approval of the $1,600,000 funding for the Phase II Project.  (*Id.*)

136.    In light of the foregoing, BURA's response that it has no documents is inexplicable and also raises serious questions about BURA's search for responsive documents to Plaintiffs' other discovery demands.  We advised BURA of our objections to this response by letter dated February 19, 2014.  (*Id.*)  We requested that BURA provide documents responsive to this request or to provide an explanation why it was unable to do so.  (*Id.*)  We received no reply to this request.

137.    Plaintiffs are entitled to all communications between BURA and the BFSA, including draft correspondence and memoranda or e-mails concerning communications with the BFSA.

### III.    BURA's Failure to Provide Complete Interrogatory Responses

#### A.    BURA's Failure to Respond to Plaintiffs' Second Set of Interrogatories

138.    On March 18, 2014 Plaintiffs served upon BURA their Second Set of Interrogatories.  (Exh. RR.)  BURA's responses were due April 22, 2014.  To date, we have received no response to these interrogatories or any request for additional time.

### **Demone Smith**

### I.    Mr. Smith's Failure to Produce Privilege Logs

139.    During a conference call held among the parties on February 24, 2014 all parties agreed they would produce privilege logs on or before March 18, 2014.  (Exh. A,

Lane e-mail dated April 29, 2014.)   On March 18, 2014, Plaintiffs produced their privilege logs pursuant to this agreement.

140.   We noted Mr. Smith's failure to provide privilege logs by letter dated April 10, 2014.  (Exh. SS, Hamlin letter dated April 10, 2014.)  We requested that Mr. Smith provide his privilege log promptly.  (*Id.*)  Counsel for Mr. Smith did not respond to this letter.

141.   Mr. Smith has failed to produce his privilege logs or provide any explanation for their delay.  Accordingly, Mr. Smith has waived any objection to privilege with regard to any withheld documents, as discussed in greater detail in the accompanying Memorandum of Law.  Plaintiffs request that the Court issue an order requiring Mr. Smith to, within ten days, produce all documents responsive to Plaintiffs' requests but withheld for any reason, including privilege.

## II.     Mr. Smith's Failure to Produce Documents

### A.     Mr. Smith's Deficient Responses to Plaintiffs' Third Request for Production

142.   On November 5, 2013, Plaintiffs served upon Mr. Smith a Third Request for Production and Inspection of Documents and Things ("Plaintiffs' Third Request for Production").  (Exh. TT.)  On March 28, 2014, Mr. Smith served his Responses to Plaintiffs' Third Request for Production.  (Exh. UU.)

### 1.     Mr. Smith's Failure to Produce Documents

143.   In Mr. Smith's response he indicated he would be providing responsive documents concerning requests 2 and 5.  (Exh. TT.)  To date, we have not received any documents identified as responsive to these requests.

144.   On April 10, 2014 we sent a letter to counsel for Mr. Smith concerning his response to Plaintiffs' Third Request for Production.  (Exh. SS, Hamlin letter dated April 10, 2014.)  We observed that General Objections paragraph eleven indicates that Mr. Smith's response that he would be producing responsive documents "is not to be construed as a statement or admission that any such documents exist or can reasonably be identified and located.  Defendant will produce responsive documents

within a reasonable time as determined by the particular request and response."  (*Id.*) We noted that these responses and this objection provide no indication whether defendant is in possession of responsive documents.  (*Id.*)  We received no response clarifying Mr. Smith's position on this issue.

### 2.    Mr. Smith's Responses Are Inadequate

### a.    Requests 2, 3, and 4: Technical Assistance to the Jeremiah Partnership and Other Developers

145.   As with Plaintiffs' Third Request for Production to the City Defendants and BURA, Requests 2, 3, and 4 sought documents concerning Technical Assistance and similar assistance provided to the Jeremiah Partnership and other developers.  (Exh. TT.)  Mr. Smith has also objected to these terms as ambiguous and vague.  (Exh. UU.) Plaintiffs' position on this issue is set forth above.

146.   Mr. Smith also indicated in response to Request 4, concerning assistance provided to other developers, that responsive information was produced by BURA. (Exh. TT.)   As noted above, there is no indication BURA made available such documents as information previously provided by BURA was limited to the subject project and other projects involving the Jeremiah Partnership and certain other discrete projects.

147.   We advised Mr. Smith of our position on these requests by letter dated April 10, 2014.  (Exh. SS, Hamlin letter dated April 10, 2014).  We received no response to our request for additional information.

### III.   Demone Smith's Failure to Provide Complete Interrogatory Responses

### A.    Interrogatories 4 and 5: Mr. Smith's Failure to Provide the Factual Basis for his Affirmative Defenses that he is Entitled to Absolute and/or Qualified Immunity and Government Function Immunity

148.   On November 16, 2012 the Plaintiffs served upon Mr. Smith Plaintiffs' Revised First set of Interrogatories.  (Exh. VV.)   Interrogatory 4 required Mr. Smith to "Set forth the basis and all facts concerning your affirmative defense that you are

entitled to absolute and/or qualified immunity.  Identify all documents, communications and witnesses supporting your response." (*Id.*)  Interrogatory 5 required Mr. Smith to "Set forth the basis and all facts concerning your affirmative defense that you are entitled to governmental function immunity.  Identify all documents, communications and witnesses supporting your response." (*Id.*)

149.   On February 1, 2013 Mr. Smith served his Response to Plaintiffs' Revised First Set of Interrogatories.  (Exh. WW.)  Mr. Smith's response set forth no facts concerning his affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.

150.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to these interrogatories.  Mr. Smith has not supplemented his responses to these interrogatories.

151.   Plaintiffs are entitled to interrogatory responses setting forth the factual basis for Mr. Smith's affirmative defenses that he is entitled to absolute and/or qualified immunity or government function immunity.

### B.   Interrogatory 6: Mr. Smith's Failure to Provide the Factual Basis for his Affirmative Defense that Plaintiffs are not Entitled to Punitive Damages

152.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 6, called for Mr. Smith to "Set forth the basis and all facts concerning your affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.  Identify all documents, communications and witnesses supporting your response."  (Exh. VV.)

153.   Mr. Smith's response to Interrogatory 6 objected to this Interrogatory to the extent it seeks "identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature." (Exh. WW.)

154.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to this interrogatory.  Mr. Smith has not supplemented his responses to this interrogatory.

155.   Plaintiffs are entitled to interrogatory responses setting forth the factual basis for Mr. Smith's affirmative defenses that Plaintiffs are not entitled to an award of punitive damages.

### C.   Interrogatory 7: Mr. Smith's Failure to Provide Adequate Information Concerning the "Rent to Own" Nature of the Project

156.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 7, provided as follows: "Do you understand that the Project was a "rent to own" project covering a thirty (30) year period of time?  When, and from whom, did you first learn the Project was a "rent to own" project covering a thirty (30) year period of time?"  (Exh. VV.)

157.   Mr. Smith's response to Interrogatory 7 was essentially a non-answer.  Mr. Smith indicated he did not know when or how he learned the project was rent to own, that he performed his own research, and did not discover details about the project until towards the end of the expiration of the project's first or second tax credit deadline. (Exh. WW.)

158.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to this interrogatory.  Mr. Smith has not supplemented his responses to this interrogatory.

159.   Plaintiffs are entitled to interrogatory responses setting forth Mr. Smith's understanding concerning the rent-to-own nature of the project.

### D.   Interrogatory 11: Mr. Smith's Failure to Identify Campaign Contributors

160.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 11, provided as follows: "Identify each individual or entity contributing to any of your election campaigns since 1998 and the amount each contributed broken down by year."  (Exh. VV.)

161.   Mr. Smith indicated in response to Interrogatory 11 that "All responsive documents maintained by defendant in accordance with New York State Election Law will be provided."  (Exh. WW.)

162.   To date we have received no documents identified as responsive to this request.

### E.   Interrogatory 12: Mr. Smith's Failure to Provide his Educational Background

163.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 12, provided as follows: "Set forth your educational background."  (Exh. VV.)

164.   Mr. Smith indicated in response to Interrogatory 12 that "Documents responsive defendant's [sic] educational background will be provided."  (Exh. WW.)

165.   To date we have received no documents identified as responsive to this request.

### F.   Interrogatory 13: Mr. Smith's Failure to Provide his Employment Background

166.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 13, provided as follows: "Set forth your employment background for the last fifteen (15) years."  (Exh. VV.)

167.   Mr. Smith indicated in response to Interrogatory 13 that "documents responsive to defendant's employment background for the last fifteen (15) years will be provided."  (Exh. WW.)

168.   To date we have received no documents identified as responsive to this request.

### G.   Interrogatory 14: Mr. Smith's Failure to Provide his Income Information

169.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 14, provided as follows: "Set forth all sources and amount of income for the last fifteen (15) years." (Exh. VV.)

170.   Mr. Smith's response to Interrogatory 14 objected to this request.  (Exh. WW.)

171.   The Plaintiffs have alleged that Mr. Brown conditioned his support for the project on Plaintiffs finding a role for Mr. Stenhouse in the project.  Plaintiffs are entitled

to discovery concerning the individual defendants' relationship with Mr. Stenhouse and his affiliated entities.  Plaintiffs are entitled to know the details concerning any income Mr. Smith derives from any business ventures with Mr. Stenhouse or affiliated entities.

**H.    Interrogatory 17: Mr. Smith's Failure to Provide Information Concerning Governmental Investigations or Inquiries Concerning Official or Personal Misconduct**

172.    Plaintiffs' Revised First Set of Interrogatories, Interrogatory 17, provided as follows: "Set forth the details of any government investigation or inquiry of you concerning any official or personal misconduct.    Identify all documents, communications, and witnesses supporting your response."  (Exh. VV.)

173.    Mr. Smith objected to Interrogatory 17 as "overly broad, overly vague, ambiguous. . ."  (Exh. WW.)

174.    There can be no dispute that if Mr. Smith were aware of such a government investigation or inquiry he would be able to identify and describe it as requested in this interrogatory.

175.    Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to this interrogatory.  Mr. Smith has not supplemented his responses to this interrogatory.

176.    Given the nature of the RICO claims in this case, Plaintiffs are entitled to interrogatory responses setting forth the details of any government investigation or inquiry concerning any official or personal misconduct.

**I.    Interrogatory 18: Mr. Smith's Failure to Provide Information Concerning Complaints Concerning Improper Conduct**

177.    Plaintiffs' Revised First Set of Interrogatories, Interrogatory 18, provided as follows: "Set forth the details of any prior complaints, whether formal, informal, written, or verbal, and including but not limited to any notices of claim or litigation, made against you, during the time period 1997 to the present, concerning pay-to-play arrangements; pay-for-votes arrangements; favoritism; nepotism; cronyism; dishonesty; discrimination; improper request, solicitation, or pressure on City of Buffalo employees to make political donations; misuse of public funds; abuse of power; corruption; RICO

violations; bribery; improper bidding practices; repression of political opponents; Hobbs Act violations; wire fraud; mail fraud; patronage; graft; embezzlement; improper fundraising or solicitation of political contributions; improper quid pro quo; influence peddling; improper interaction with lobbyists; electoral fraud; kickbacks; unholy alliances; improperly keeping items off the Common Council Agenda; failure to proceed with a project where prior representations had been (allegedly or actually) made that the City of Buffalo, BURA, or other defendants would proceed with a project;  and/or similar complaints.  Identify all documents, communications, and witnesses supporting your response."  (Exh. VV.)

178.   Mr. Smith's response objected to this interrogatory.  (Exh. WW.)

179.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to this interrogatory.  Mr. Smith has not supplemented his responses to this interrogatory.

180.   Consistent with the other defendants' position with regard to our interrogatory to them concerning improper conduct, Mr. Smith has refused to agree to any accommodation concerning this interrogatory.   As with the other individual defendants, it is difficult to understand how this interrogatory concerning complaints of improper conduct could be considered unduly burdensome.  Presumably there are not so many that it would be unduly burdensome to identify any complaints in general terms as the starting point for further discussion to focus on complaints most relevant to this litigation.

### J.   Interrogatory 19: Mr. Smith's Failure to Provide Information Concerning Ethical Complaints

181.   Plaintiffs' Revised First Set of Interrogatories, Interrogatory 19, provided as follows: "Set forth the details of any ethical complaints made against you during the time period 2001 to the present.   Identify all documents, communications, and witnesses supporting your response."  (Exh. VV.)

182.   Mr. Smith's response objected to this interrogatory, asserting that it was overbroad, overly vague, ambiguous, not described with reasonable particularity, not

limited to issues presented in this lawsuit, not relevant or reasonably calculated to lead to the discovery of admissible evidence, and unduly burdensome.  (Exh. WW.)

183.   Despite several meet and confer conferences, the parties were unable to reach an agreement concerning Mr. Smith's responses to this interrogatory.  Mr. Smith has not supplemented his responses to this interrogatory.

184.   As with Interrogatory 17, the scope of Interrogatory 19 is well defined.  If Mr. Smith were aware of any ethical complaints, he would be readily able to identify them and provide details as requested by this interrogatory.  Given the nature of the RICO claims in this case, Plaintiffs are entitled to a complete response to this interrogatory.

### Summary of Requests and Responses

185.   The following chart summarizes the Plaintiffs' requests which are the subject of this motion.

| Defendant | Issue |
|---|---|
| City Defendants (City of Buffalo, Byron Brown, and Steven Casey) | |
| | Failure to produce privilege logs. |
| | Failure to produce complete electronically stored records. |
| | Failure to produce hard copy documents. |
| | 3rd Request for Production: Failure to produce documents and inadequate responses to requests 2, 3, 4, and 5. |
| | Failure to identify documents responsive to Plaintiffs' discovery requests. |
| City of Buffalo | |

| Defendant | Issue |
|---|---|
|  | Revised 1st Request for Production: inadequate response to requests 13 (failure to produced documents provided to the HUD OIG) and 18 (failure to produce documents concerning the "Mayor's Fund to Advance Buffalo"). |
|  | Revised 1st Set of Interrogatories: inadequate responses to interrogatories 25, 33, 34, and 35. |
| Mr. Brown |  |
|  | Revised 1st Request for Production: inadequate response to requests 4 (failure to produced documents provided to the HUD OIG) and 9 (failure to produce documents concerning the "Mayor's Fund to Advance Buffalo"). |
|  | Revised 1st Set of Interrogatories: inadequate responses to interrogatories 5, 6, 7, 12, 16, and 20. |
|  | Failure to provide verified interrogatory responses. |
| Mr. Casey |  |
|  | Revised 1st Request for Production: inadequate response to requests 4 (failure to produced documents provided to the HUD OIG). |
|  | Revised 1st Set of Interrogatories: inadequate |

| Defendant | Issue |
|---|---|
|  | responses to interrogatories 4, 5, 6, 13, and 16. |
|  | Failure to provide verified interrogatory responses. |
| BURA |  |
|  | Failure to produce privilege logs. |
|  | Failure to identify documents responsive to Plaintiffs' discovery requests. |
|  | Failure to produce ESI. |
|  | 3rd Request for Production: inadequate responses to requests 3, 4, and 5. |
|  | 2nd Set of Interrogatories: failure to respond. |
| Mr. Smith |  |
|  | Failure to produce privilege logs. |
|  | 3rd Request for Production: failure to produce documents and inadequate responses to requests 2, 3, and 4. |
|  | Revised 1st Set of Interrogatories: inadequate responses to interrogatories 4, 5, 6, 7, 11, 12, 13, 14, 17, 18, and 19. |

## **Conclusion**

186.   For the foregoing reasons, Plaintiffs request that this Court grant an Order compelling Defendants' compliance with Plaintiffs' discovery demands, as set forth above.

Dated:      June 19, 2014
             Buffalo, New York

                                      *s/Thomas S. Lane*
                                     Thomas S. Lane