# Exhibit A

**From:** Thomas Lane
**Sent:** Tuesday, April 29, 2014 11:13 AM
**To:** Randall D. White (rdw@connors-vilardo.com); Ball, Timothy (tball@ch.ci.buffalo.ny.us); Richard T. Sullivan (rsullivan@HarrisBeach.com)
**Cc:** Nelson Perel
**Subject:** NRP v. City of Buffalo

Counselors,

There is a June deadline for fact discovery to be completed in this matter.  I assume we will not be able to meet the deadline given that some written discovery remains outstanding and depositions still need to be conducted.  I suggest we consent to an extension until January 31, 2015 for fact discovery.  This will allow us the time needed to complete the deposition phase and, hopefully, quickly wrap up the document production phase.  Please advise if you will agree and, if so, we will prepare a joint motion on consent.

I also have the City's most recent correspondence with an indication that additional documents will be produced.  When we last spoke about this issue, all document productions, supplemental responses, and privilege logs were to be provided by March 18. The most recent letter includes no representations as to when the City intends to complete its written discovery obligations.  At this point, we would like to wrap up the written discovery phase by no later than May 20 (three weeks from today) so that we can move forward with depositions.  After May 20, we will need to consider the need to involve the Court with any outstanding discovery issues.

Regards,

Tom

Thomas S. Lane
Partner

## WEBSTER SZANYI LLP
### ATTORNEYS AT LAW

WEBSTER SZANYI LLP
1400 Liberty Building
Buffalo, New York 14202
Tel – (716) 842-2800
Fax – (716) 845-6709
E- tlane@websterszanyi.com
Web - www.websterszanyi.com

*********************************************************************
Notice of Privacy:  This electronic mail is being sent by an attorney and is intended to be received and read only by certain individuals.  It may contain information that is privileged and/or protected from disclosure by law.  If you have received this message in error, please notify me by replying and then delete both my message and your reply.  Thank you.
*********************************************************************

 Please consider the environment before printing this e-mail.

1

# Exhibit B

1   question?

2          THE COURT:  Sure.  That's why we're here.

3          MR. SULLIVAN:  How does all this affect me?

4          THE COURT:  Well, that's why I asked the question.  I

5   mean, you're in the case until you're out of the case.  You're

6   subject to discovery requests.  Within 30 days you come back

7   and we'll see where things stand.

8          MR. SULLIVAN:  Okay.

9          THE COURT:  If theoretically Judge Skretny were to

10  act immediately upon your 12(b)(6) to your advantage, then

11  Mr. Lane would say, all right, well, here's, you know, here's

12  a subpoena for the same stuff.

13         MR. SULLIVAN:  No, I'm practical enough to realize

14  that part of it.

15         THE COURT:  Yeah, we just discussed that.

16         MR. SULLIVAN:  Yeah, okay.

17         THE COURT:  Am I missing something?

18         MR. SULLIVAN:  No, no, I just want that clarified

19  that the requests are going to be served on my client as well.

20         THE COURT:  So we are issuing a text order -- right,

21  Sandra? -- because we don't want to mess around with chopping

22  trees down here -- that requires the parties to serve their

23  first set of interrogatories slash document requests,

24  including requests for electronically-stored information

25  constituting such documents, not later than November 9th.

# Exhibit C

1        Now, that said, if BURA wants to draft some discovery --

2             THE COURT:  Well, arguably they failed to comply with

3    a direct order of the Court and sanctions require that they be

4    precluded.  Go ahead.

5             MR. LANE:  I have had a chance to look at the other

6    defendants' discovery demands.  By and large, I think we'll be

7    able to comply with those.

8             THE COURT:  Can you give me a flavor as to what

9    they're seeking, so I get a sense of it?  Because I don't,

10   again, I haven't reviewed them, and I don't believe they've

11   been filed.  Of course they don't have to be and I don't

12   remember that I indicated that I wanted you to do that,

13   although now upon reflection, I probably should have.  I would

14   have gotten a better idea for myself before I came on the

15   bench.  But give me a sense, in 25 words or less, what kinds

16   of things they are seeking, what kinds of things you're

17   seeking.

18            MR. LANE:  On the defense side they're searching for

19   or asking for our project file.  They're asking to us identify

20   various witnesses, with respect to a number of allegations in

21   our complaint.  In particular, they're asking to us identify

22   witnesses to various statements, they're asking us to identify

23   authors of various e-mails referred to in our second amended

24   complaint.  All of what they have asked us is, by and large,

25   not all that surprising.  I anticipated their questions.  I

1          MR. LANE:  Judge, I'd like those demands by the end

2     of November, if I have a date of November 19th by which to

3     serve a letter explaining the problems with his demands.

4          THE COURT:  Is that the date?

5          MR. LANE:  December 19th.

6          THE COURT:  December 19th.

7          MR. LANE:  December 19th.

8          THE COURT:  Right.  No, you misspoke, you said

9     November and you threw me off.

10          MR. LANE:  Well, by the end of November I would like

11     BURA's demands, so that I can have a couple of weeks to look

12     at them.  And then if I have to send a letter on them, which

13     would be due under the Court's order by December 19th, I could

14     then comply.

15          THE COURT:  It sounds like he's going to have some

16     practical difficulties doing it by the end of November, right,

17     Mr. Sullivan?

18          MR. SULLIVAN:  I have --

19          THE COURT:  Could we compromise on, say, December 5th

20     or December 7th?

21          MR. SULLIVAN:  That's fine.

22          THE COURT:  December 7th, Mr. Lane?

23          MR. LANE:  Sure.

24          THE COURT:  Thank you.

25          MR. LANE:  Judge, the one thing I would like to

# Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NRP HOLDINGS LLC AND NRP
PROPERTIES LLC,

                      Plaintiffs,

       vs.

CITY OF BUFFALO, BYRON W. BROWN,
STEVEN M. CASEY, DEMONE A. SMITH,
RICHARD A. STENHOUSE, BUFFALO
JEREMIAH PARTNERSHIP FOR
COMMUNITY DEVELOPMENT, INC., CITY
OF BUFFALO URBAN RENEWAL AGENCY
JOHN DOE 1 – 10, AND JOHN DOE
COMPANIES 1 – 5,

                Defendants.

*RECEIVED MAR 2 4 2014*

Docket No.
11-CV-472-WMS-LGF

## DEFENDANT CITY OF BUFFALO'S SUPPLEMENTAL RESPONSES
## TO PLAINTIFFS' REVISED FIRST SET OF INTERROGATORIES

Defendant, CITY OF BUFFALO, by its attorneys, CONNORS & VILARDO,

LLP, pursuant to the Federal Rules of Civil Procedure and the Local Rues of Civil

Procedure of the United States District Court for the Western District of New York

("Local Rules"), submits the following responses and supplemental responses to the

plaintiffs' revised first set of interrogatories:

### GENERAL OBJECTIONS

1.      Defendant objects to having to respond to the interrogatory and

document requests prior to completion of the meet and confer process as directed by

the Court on November 19, 2012.  The Court directed that:  (1) by December 19, 2012, the parties serve letters (without prejudice to their rights to serve formal responses, including objections) setting forth objections and reasons why the party could not fully respond to the outstanding written discovery by February 1, 2013; (2) the parties then promptly meet and confer in an attempt to resolve and narrow the discovery issues; (3) the parties then serve formal responses to the written discovery by February 1, 2013; and (4) the parties appear at a status conference on February 7, 2013 to discuss the possibility of motion practice with respect to that discovery and/or discuss a scheduling order.  As directed by the Court, the City Defendants served their letter on December 19, 2012.  Counsel for the City Defendants and plaintiffs met and conferred on January 14, 2013, but did not complete that process and agreed, at that time, upon the need for a further meeting to continue and complete the meet and confer process.  At the time of defendant's responses on February 13, 2013, that second meeting had not been conducted and the meet and confer process had not been completed.

2.      Defendant objects to the interrogatories on the grounds and to the extent that they inquire about material prepared in anticipation of litigation, work product, attorney-client communications or information, or matters otherwise protected from disclosure under applicable privileges, laws, or rules.  Defendant hereby claims such privileges and protections to the extent implicated by the interrogatories and excludes privileged and protected information and documents

2

from its responses. Any disclosure of such protected documents and information is inadvertent and is not intended to waive those privileges or protections.

3.     Defendant's responses are not intended to waive or prejudice any objections that defendant may assert now or in the future, including without limitation objections as to competence, relevance, materiality, propriety, privilege and the admissibility of any response or category of responses.

4.     Defendant reserves the right to object on any ground at any time to a demand for further response and reserves the right to revise, amend, supplement, correct, clarify or add to these responses. Without limiting this right, defendant specifically reserves the right to revise, amend, supplement, correct, clarify or add to these responses after further discovery.

5.     Defendant objects to the interrogatories and the definitions and instructions to the extent that they are not consistent with the Federal Rules of Civil Procedure or the Local Rules and/or attempt to impose requirements greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules.

6.     Defendant objects to the interrogatories on the grounds and to the extent that they seek to impose an obligation upon defendants to collect and obtain information and documents from any person or entity not a party to this lawsuit.

7.     Defendant objects to the interrogatories to the extent that they are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

3

8.     Defendant objects to any implication and to any explicit or implicit characterization of facts, events, circumstances or issues in the interrogatories. Defendant's responses to the interrogatories shall not be construed as admissions to any legal conclusion, or to any explicit or implicit characterization of the facts, events, circumstances or issues contained in the interrogatories.

9.     Defendant objects to the requests to the extent that they call for legal conclusions, are overly broad, unduly burdensome, overly vague or ambiguous, are not described with reasonable particularity, lack a readily discernible meaning, and/or require defendant to speculate as to the information or documents sought.

10.     Defendant objects to the interrogatories to the extent that responding to them would involve unreasonable expense and the burden and expense of responding to them outweigh their likely benefit.

11.     Defendant objects to the extent that the interrogatories do not provide sufficient time for defendant to search for and provide responsive information

12.     Defendant also objects to the interrogatories as premature, given that discovery in this action is just beginning and/or as overly broad and unduly burdensome at this stage of the action.

13.     Defendant expressly reserves, and does not waive, its right to seek appropriate relief under the Federal Rules of Civil Procedure, including Rule 26(c) and Rule 33(a)(2), with respect to the interrogatories.

14.    Defendant incorporates the foregoing General Objections into each of the following responses, which responses are expressly made subject to these objections.

SPECIFIC RESPONSES AND ADDITIONAL OBJECTIONS

INTERROGATORY #31:

Set forth all steps taken by defendant in an effort to proceed with the Project.

RESPONSE:

Defendant objects to the phrase "proceed with the project" as overly vague and ambiguous as used in this interrogatory and given the issues in this case.  In addition, and as set forth in the responses to Interrogatories #7 and #9, which are incorporated by reference, the City was not obligated to proceed with the Project. Moreover, this interrogatory is facially overbroad and unduly burdensome as it seeks a description or narrative of everything the City, a bureaucracy with multiple departments, offices and employees, did on a project over a multi-year period.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and responses, defendant provides the following supplemental response.

In late 2007, City of Buffalo employees were invited to a meeting with NRP about a possible affordable housing project or development by NRP.  Steven Weiss, Esq., attempted to schedule a meeting among himself, David Heller and Tim Wanamaker for November 30, 2007.  Timothy Wanamaker, Richard Tobe and Carla Kosmerl are believed to have attended that meeting.

5

On January 2, 2008, Sandra Miller of the City sent to NRP "an updated map and list of potential buildable lots in the City of Buffalo for NRP's project." On January 14, 2008, representatives of NRP met with City of Buffalo officials in Buffalo and reviewed possible lots. Also on January 14, 2008, City staffers accompanied representatives of NRP on a brief tour of the sites discussed at the meeting. On January 16, 2008, Sandra Miller sent an internal e-mail seeking help in "putting together 20 additional potential build-able lots for NRP in a short time period." On January 18, 2008, Sandra Miller did send to NRP "a map and property list with additional proposed build-able lots." Ms. Miller's e-mail noted that "we have ended up with a total of 68 potential sites in our targeted area." On February 13, 2008, Sandra Miller sent an e-mail to other City of Buffalo employees stating that "NRP is nearly finished with their evaluation of the proposed build-able lots in the City and expects to provide us with a final list sometime next week." On February 21, 2008, Sandra Miller forwarded NRP's list to John Hannon of the City and stated that "the attached spreadsheet contains the lots that NRP has chosen." On February 21, 2008, as NRP had requested, Timothy Wanamaker sent the letter to Michael Riegel confirming that the City of Buffalo had reserved the lots selected by NRP. The list of selected lots from February 21, 2008 was later modified through additional dialogue between employees of NRP and the City, as well as other individuals. The fifty-one lots ultimately decided upon were presented to the City of Buffalo Planning Board for its review and approval, which it ultimately gave.

On or about April 21, 2008 City of Buffalo Office of Strategic Planning created a "Project Briefing," which described the project as "NRP Group/Belmont Shelter Corp Rent-to-Own-50 Units with $1.6 million HOME funds leveraging NYS Funding and tax credits pending State tax credit awards in July."

NRP prepared draft letters dated June 27, 2008, to Governor Patterson and the Department of Housing and Community Renewal Commissioner, Deborah Van Amerongen, for the Mayor's signature. Those letters generally referenced the rent-to-own aspect of the Project. Although the Mayor signed those letters, he did not discuss the rent-to-own aspect of the Project with Commissioner Van Amerongen until 2009, at which time he attempted to modify the rent-to-own aspect to meaningfully benefit the community.

The witnesses supporting this response and supplemental response include: Christina Akers, Jennifer Baus, Greg Bernas, Scott Billman, Eric Birner, Judy Calogero, Kent Christman, Bryan Danch, Jay Duderwick, Rob Gilray, David Granville, Francisco Guzman, Mary Hada, John Hannon, David Heller, Peter Klemann, David Krug, Carla Kosmerl Mary Lesniak, Jay Lynch, Ron Loyd, John Leonard, Sandra Miller, Rick Ogorek, Kenneth Outcalt, Aaron Pechota, Michael Riegel, Evelyn Rodrgiuez, Maria Scinta, Jennifer Sepulveda, Richard Stenhouse, Richard Tobe, Donald Tolbert, Deborah Van Amerongen, Mary Ann Van Schoor, Timothy Wanamaker, Steve Weiss, and Gary Witulski.

The documents and communications supporting this response and supplemental response include:  COB000012 – COB000017, COB000401 –

7

COB000405, COB001898 – COB001900, COB001912 – COB001916, COB002690,

COB002701, COB002716 – COB002740, COB002896 – COB002901, COB004101 –

COB004106, COB004322 – COB004323, COB007609 – COB007625, COB007648 –

COB007652, COB007722, COB007724 – COB007725, COB007761·COB007762,

COB007798, COB007800 – COB007815, COB007851 – COB007891, COB007904 ·

COB007910, COB008049 · COB008058, COB008112 – COB008113, COB008208 ·

COB008214, COB008269 · COB008272, COB008276, COB008284, COB014883 –

COB014884,  NRP00097, NRP01360, NRP00496 – NRP00517, NRP00640 –

NRP00644, NRP00694, NRP00698, NRP00702 – NRP00707, NRP01360 –

NRP01362, and NRP01364 NRP01367 – NRP01375, NRP01596 – NRP01598.


DATED:     Buffalo, New York
           March 21, 2014

RANDALL D. WHITE / PDM

Terrence M. Connors, Esq.
Randall D. White, Esq.
CONNORS & VILARDO, LLP
Attorneys for Defendants,
   City of Buffalo, Byron W. Brown,
   and Steven M. Casey
1000 Liberty Building
Buffalo, New York 14202
716-852-5533 (T)
716-852-5649 (F)
tmc@connors-vilardo.com
rdw@connors-vilardo.com

8

## VERIFICATION

STATE OF NEW YORK   )
COUNTY OF ERIE        ) SS.:


TIMOTHY A. BALL, ESQ., being duly sworn, deposes and says that he is the Corporation Counsel for the City of Buffalo, a defendant in the within action; that he has read the foregoing Defendant City of Buffalo's Supplemental Responses to Plaintiff's Revised First Set of Interrogatories, and knows the contents thereof; that the same is true to his knowledge except as to those matters therein alleged upon information and belief, and as to those matters, he believes them to be true.

_____
TIMOTHY A. BALL


Sworn to before me this
21st day of March, 2014

_____
Notary Public

MARY B. SCARPINE
Notary Public, State of New York
No. 02SC6094011
Qualified in Erie County
Commission Expires June 16, 20/5

# Exhibit E

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RECEIVED MAR 2 4 2011

NRP HOLDINGS LLC AND NRP
PROPERTIES LLC,

                **Plaintiffs,**

      vs.

CITY OF BUFFALO, BYRON W. BROWN,
STEVEN M. CASEY, DEMONE A. SMITH,
RICHARD A. STENHOUSE, BUFFALO
JEREMIAH PARTNERSHIP FOR
COMMUNITY DEVELOPMENT, INC., CITY
OF BUFFALO URBAN RENEWAL AGENCY
JOHN DOE 1 – 10, AND JOHN DOE
COMPANIES 1 – 5.

            Defendants.

Docket No.
11-CV-472-WMS-LGF

## DEFENDANT BYRON W. BROWN SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REVISED FIRST SET OF INTERROGATORIES

    Defendant, BYRON W. BROWN, by his attorneys, CONNORS & VILARDO,

LLP, pursuant to the Federal Rules of Civil Procedure and the Local Rules of Civil

Procedure of the United States District for the Western District of New York ("Local

Rules"), submits the following supplemental responses to plaintiff's revised first set

of interrogatories:

## GENERAL OBJECTIONS

    1.    Defendant objects to the interrogatories on the grounds and to the

extent that they inquire about material prepared in anticipation of litigation, work

product, attorney-client communications or information, or matters otherwise protected from disclosure under applicable privileges, laws, or rules. Defendant hereby claims such privileges and protections to the extent implicated by the interrogatories and excludes privileged and protected information and documents from his responses. Any disclosure of such protected documents and information is inadvertent and is not intended to waive those privileges or protections.

2.      Defendant's responses are not intended to waive or prejudice any objections that defendant may assert now or in the future, including without limitation objections as to competence, relevance, materiality, propriety, privilege and the admissibility of any response or category of responses.

3.      Defendant reserves the right to object on any ground at any time to a demand for further response and reserves the right to revise, amend, supplement, correct, clarify or add to these responses. Without limiting this right, defendant specifically reserves the right to revise, amend, supplement, correct, clarify or add to these responses after further discovery.

4.      Defendant objects to the interrogatories and the definitions and instructions to the extent that they are not consistent with the Federal Rules of Civil Procedure or the Local Rules and/or attempt to impose requirements greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules.

5.      Defendant objects to the interrogatories on the grounds and to the extent that they seek to impose an obligation upon defendant to collect and obtain information and documents from any person or entity not a party to this lawsuit.

2

6.      Defendant objects to the interrogatories to the extent that they are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

7.      Defendant objects to any implication and to any explicit or implicit characterization of facts, events, circumstances or issues in the interrogatories. Defendant's responses to the interrogatories shall not be construed as admissions to any legal conclusion, or to any explicit or implicit characterization of the facts, events, circumstances or issues contained in the interrogatories.

8.      Defendant objects to the requests to the extent that they call for legal conclusions, are overly broad, unduly burdensome, overly vague or ambiguous, are not described with reasonable particularity, lack a readily discernible meaning, and/or require defendant to speculate as to the information or documents sought.

9.      Defendant objects to the interrogatories to the extent that responding to them would involve unreasonable expense and the burden and expense of responding to them outweigh their likely benefit.

10.     Defendant objects to the extent that the interrogatories do not provide sufficient time for defendant to search for and provide responsive documents.

11.     Defendant also objects to the interrogatories as premature given that discovery in this action is just beginning and/or overly broad and unduly burdensome at this stage of the action.

12.    Defendant expressly reserves, and does not waive, his right to seek appropriate relief under the Federal Rules of Civil Procedure, including Rule 26(c) and Rule 33(a)(2) with respect to the interrogatories.

13.    Defendant incorporates the foregoing General Objections into each of the following responses, which responses are expressly made subject to these objections.

## SPECIFIC RESPONSES AND ADDITIONAL OBJECTIONS

### INTERROGATORY #1:

Identify each individual involved in locating and preserving electronically stored information (ESI) concerning this litigation.  For each individual identified, provide a detailed explanation of the actions taken by each individual, including the date each action was taken, to locate and preserve ESI concerning this litigation.

### RESPONSE:

Defendant objects to this interrogatory as overbroad, including the use of "concerning" in this interrogatory.  Defendant also objects to the interrogatory as calling for attorney-client privileged and work-product information.  Without waiver of those objections, defendant states:  Timothy A. Ball, Corporation Counsel, Cavette A. Chambers, Assistant Corporation Counsel, Raj Mehta, Peter Barone, Director of Management Information Systems.  The individual defendants were instructed to retain all electronically stored information and the City's Management Information Systems Department as headed by Raj Mehta at the onset of the litigation and now headed by Acting Chief Information Officer Peter Barone were

4

instructed to maintain the City Server and preserve access to prior versions of the City Server, to the extent they exist, to prevent the destruction, accidental deletion and/or loss of electronically stored information.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and response, defendant provides the following supplemental response. Immediately after receipt and filing of the purported Notice of Claim in June of 2010, defendant received a copy of the same and was instructed not to delete or destroy any e-mails, electronic files or other documents relating to NRP, Reverend Stenhouse, the East Side Housing II Project, the Jeremiah Partnership, or any of the other individuals or key terms contained within said Notice of Claim. This directive was reinforced by Acting Corporation Counsel David Rodriguez.

At that time, defendant and/or, or members of his staff, searched defendant's hard-drives, e-mails and/or shared drive for documents containing the above-mentioned terms as well as others specifically contained within the Notice of Claim. Any documents identified in those searches have been previously produced in this litigation.


INTERROGATORY #2:

Identify all documents concerning the location and preservation of ESI concerning this litigation.

5

**RESPONSE:**

Defendant objects to this interrogatory as overbroad, including the use of "concerning" in this interrogatory. Defendant also objects to the interrogatory as calling for attorney-client privileged and work-product information.

**SUPPLEMENTAL RESPONSE:**

Without waiving defendant's objections and response, defendant provides the following supplemental response. Defendant's supplemental response to Interrogatory #1 identifies the actions taken regarding the location and preservation of ESI concerning this litigation.

**INTERROGATORY #3:**

Identify the name of any search software used by defendant to search for ESI concerning this litigation and all search terms used by defendant to search for ESI concerning this litigation.

**RESPONSE:**

Microsoft Office/Outlook/Exchange application.

**SUPPLEMENTAL RESPONSE:**

Without waiving defendant's objections and response, defendant has no knowledge as to the specifics of ESI searches run concerning this litigation aside from previously addressed in Interrogatory #1 above.

INTERROGATORY #4:

Set forth the basis and all facts concerning your denial of the allegations contained in ¶ 101 of NRP's Second Amended Complaint that "At the June 24, 2008 meeting, Brown voiced no objection to this type of Project.  Nor did he object to the scattered sites."  Identify all documents, communications and witnesses supporting your response.

RESPONSE:

Mayor Brown does not recall being briefed on the specific details of the project at any 2008 meeting and only recalls a meeting that introduced some representatives and purported agents of Plaintiffs to the City of Buffalo.  Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.


INTERROGATORY #5:

Set forth the basis and all facts concerning your affirmative defense that you are entitled to absolute and/or qualified immunity.  Identify all documents, communications and witnesses supporting your response.

RESPONSE:

Defendant is entitled to qualified immunity as an administrative official because he/she is shielded from liability if his/her activities are within the scope of his/her office, are performed in objective good faith and do not violate clearly

established statutory or constitutional rights of which a reasonable person would be aware.

## INTERROGATORY #6:

Set forth the basis and all facts concerning your affirmative defense that you are entitled to governmental function immunity. Identify all documents, communications and witnesses supporting your response.

## RESPONSE:

Plaintiffs' claims arise out of actions undertaken by the City Defendants in their official capacities and in connection with a public housing project. The City Defendants were exercising their discretion and reasoned judgment in deciding not to commence the Project. Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.

## INTERROGATORY #7:

Set forth the basis and all facts concerning your affirmative defenses that Plaintiffs are not entitled to an award of punitive damages. Identify all documents, communications and witnesses supporting your response.

## RESPONSE:

The City of Buffalo, as a municipality, is immune from punitive damages. Municipal officials who are sued in their official capacity are also immune from

8

punitive damages.  Plaintiffs' claims arise out of actions allegedly undertaken by the City Defendants in their official capacities and in connection with a public housing project.  In addition, plaintiffs cannot allege or establish that the defendant's conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of others, as is necessary to sustain an award of punitive damages against an individual municipal official. Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.


INTERROGATORY #8:

Do you understand that the Project was a "rent to own" project covering a thirty (30) year period of time?  When, and from whom, did you first learn the Project was a "rent to own" project covering a thirty (30) year period of time?

RESPONSE:

Mayor Brown does not recall being briefed on the specific details of the project at any 2008 meeting and only recalls a meeting that introduced some representatives of Plaintiffs to the City of Buffalo.  Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and response, defendant provides the following supplemental response and objection. Defendant does not recall when and from whom he learned of the Project's proposed 30-year time period. In 2009, defendant was advised by Department of Housing and Community Renewal Commissioner Deborah Van Amerongen that the 30-year time period could be reduced to 15 years.

INTERROGATORY #9:

Who selected the lots to be used for the Project? Identify all documents, communications and witnesses supporting your response.

RESPONSE:

City-owned lots were identified for potential use on the Project by the City's Division of Real Estate and communicated to the developers by said staff. There was ongoing discussion of the lots, including identification and possible selection. Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and responses, defendant provides the following supplemental response. Defendant has no personal knowledge of who selected the lots to be used for the Project. For more information, see City of Buffalo Supplemental Response to Plaintiffs' Revised 1st Set of Interrogatories, No. 28.

10

INTERROGATORY #10:

Set forth all steps taken by defendant in an effort to proceed with the Project.

RESPONSE:

Defendant objects to the phrase "proceed with the project" as overly vague and ambiguous as used in this interrogatory and given the issues in this case. In addition, and as set forth in the responses to Interrogatories #7 and #9, which are incorporated by reference, the City was not obligated to proceed with the Project. Moreover, this interrogatory is facially overbroad and unduly burdensome as it seeks a description or narrative of everything the City, a bureaucracy with multiple departments, offices and employees, did on a project over a multi-year period.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and response, defendant provides the following supplemental response and objection. When first given an overview of the Project, defendant, who, like his predecessors, has been a strong advocate of urban renewal projects, was interested in the proposed development, and at the request of Timothy Wanamaker and Carla Kosmerl, sent letters in support of the Project to the Governor's Office and the DHCR. Throughout 2009, NRP and Belmont negotiated with the Mayor's Office over the terms of the Project. Defendant continued to learn the details of the project in order to make an informed decision on whether or not to proceed.

Thereafter, while the rent-to-own term was reduced from 30 to 15 years, it still exceeded defendant's goals for the low-income families the HOME program was designed to protect. Plaintiffs also engaged a number of political figures and well-

known supporters of defendant, namely Steve Weiss, Ken Peterson, Paul Tokasz, Maurice Garner and Jim Pitt, as project consultants in an improper attempt to gain support for the Project.  The reliance by unknown out-of-town developers on political figures to push the project cast doubt in Defendant's mind on whether the Project had local community support, whether the developers were committed to local community involvement in the Project, and whether real local participation in the skilled and unskilled workforce on the Project would be achieved.  Still unsatisfied with the Project's terms and now uncomfortable with the developers' attempt to use political influence, defendant decided to use the City's limited HOME funds on other projects and therefore took no further action to proceed with the project.

INTERROGATORY #11:

Set forth the reasons, basis and all facts concerning defendant's decision to not proceed with the Project.

RESPONSE:

Although plaintiffs' proposal initially received support from members of the City's Office of Strategic Planning, Mayor Brown ultimately rejected the project because (1) the terms were unfavorable to the residents of Buffalo and inconsistent with the strategic plan of the City; (2) he believed the City's limited HOME funds should be used on or reserved for other projects; and (3) he was uncomfortable with NRP's attempts to use political influence to win support for the Project.

When first given an overview of the Project, Mayor Brown, who, like his predecessors, has been a strong advocate of urban renewal projects, was interested in the proposed development, and at the request of Timothy Wanamaker and Carla Kosmerl, sent letters in support of the Project to the Governor's Office and the DHCR. As the Mayor became more aware of the Project's specific terms, however, he had a number of concerns: First, he thought it unreasonable that families would be required to rent the homes for thirty years before coming eligible to purchase them. Similarly, he objected to the scattered-sites nature of the Project, as a systematic, block-by-block approach was preferred for the Cold Springs Section of the City where the Project was to be located. Finally, Mayor Brown – in keeping with Congress' intent in creating the HOME program – was concerned with the lack of community involvement in the Project, and, especially, the absence of minority-owned businesses.

Throughout 2009, NRP and Belmont negotiated with the Mayor's Office over the terms of the Project. While the rent-to-own term was reduced to fifteen years, it still exceeded the Mayor's goals for the low-income families the HOME program was designed to protect. Plaintiffs and Belmont were also unable to convert the Project from a scattered-site to a block-by-block development. Moreover, at the same time, plaintiffs engaged a number of political figures and well-known supporters of the Mayor, including campaign contributors, as project consultants in an improper attempt to gain the Mayor's support for the Project. These individuals – namely Steve Weiss, Ken Peterson, Paul Tokasz, Maurice Garner and Jim Pitts – or

organizations associated with them have contributed in excess of $15,000 since 2006. The reliance by unknown out-of-town developers on political figures to push the project also cast doubt on whether the Project had local community support, whether the developers were committed to local community involvement in the Project, and whether real local participation in the skilled and unskilled workforce on the Project would be achieved. Still unsatisfied with the Project's terms and now uncomfortable with the developers' attempt to use political influence, Mayor Brown decided to use the City's limited HOME funds on other projects.

Mayor Brown ultimately exercised his judgment and did not support the Project because he did not want to use the City's limited funds on a project with unfavorable terms for the citizens of Buffalo that was also the subject of political lobbying efforts. Moreover, Mayor Brown – like his predecessors – has made a firm commitment to involving local community home development organizations, as well as local residents themselves, in HOME projects, and plaintiffs failed to adequately ensure their involvement. At the same time, other developers presented projects on their merits with proper focus on contractual terms – not political influence.

INTERROGATORY #12:

Set forth the basis and all facts supporting your campaign claim that there has been three billion dollars of development in the City of Buffalo since you were elected. Identify the developments included, the start and completion dates of each development, the name of the developer, and please state whether the Project is

14

included as part of the "three billion dollars." Identify all documents, communications, and witnesses supporting your response.

RESPONSE:

Projects that were completed, underway, or pledged totaled over $3 billion in total actual and projected project costs for the time period in question. Defendant objects to that part of the interrogatory seeking the identification of all facts, documents, communications and witnesses supporting defendant's response as overly broad, unduly burdensome and premature.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and responses, defendant provides the following supplemental response. Defendant's campaign claim was made in reliance on records maintained by the Office of Strategic Planning. These documents have already been provided to plaintiffs.


INTERROGATORY #13:

Identify each individual or entity contributing to any of your election campaigns since 1998 and the amount each contributed broken down by year

RESPONSE:

Defendant objects to this interrogatory as overly broad, unduly burdensome and seeking irrelevant information not reasonably calculated to lead to the discovery of admissible evidence. Defendant also objects to the interrogatory to the extent that the burden or expense of providing the requested information outweighs the likely benefit. Without waiver of those objections, defendant states that

documents will be produced to the extent they exist pursuant to New York State document retention guidelines.

SUPPLEMENTAL RESPONSE:

Without waiving defendant's objections and responses, defendant provides the following supplemental response. The requested information is publically accessible on the New York State Board of Elections website by searching for "Brown for Buffalo." *See* Campaign Financial Disclosure Contribution Search Page, New York State Board of Elections Website, available at http://www.elections.ny.gov/ContributionSearchA.html (last visited on March 21, 2014).

INTERROGATORY #14:

Set forth your educational background.

RESPONSE:

B.A. in Political Science and Journalism, Buffalo State College – 1983. Certificate recipient for Senior Executive in State and Local Government at Harvard University's John F. Kennedy School of Government.

INTERROGATORY #15:

Set forth your employment background for the last fifteen (15) years.

RESPONSE:

Mayor of the City of Buffalo (December 31, 2002 to Present); New York State Senator (58th District) (January 1, 2001 – December 30, 2005); Masten District Council Member (January 1, 1996 – December 30, 2005).

INTERROGATORY #16:

Set forth all sources and amount of income for the last fifteen (15) years.

RESPONSE:

Defendant objects to this interrogatory as calling for personal and confidential information that is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, and that is not subject to disclosure. This interrogatory is similar to a demand for income tax returns, the disclosure of which is strongly disfavored.

INTERROGATORY #17:

Set forth all elected positions you have run for during the last fifteen (15) years and the result of each election.

RESPONSE:

The positions identified in the response to Interrogatory #15, including related primary elections.

INTERROGATORY #18:

State whether defendant has ever been convicted of, or pleaded guilty to, a felony or misdemeanor.  If so, state:

(a)      the city and state where convicted;

(b)      the date of the offense and the conviction; and

(c)      the felony or misdemeanor involved.

Identify all documents, communications, and witnesses supporting your response.

RESPONSE:

No.


INTERROGATORY #19:

Set forth the details of any government investigation or inquiry of you concerning any official or personal misconduct.  Identify all documents, communications, and witnesses supporting your response.

RESPONSE:

Defendant objects to this interrogatory as overly vague and ambiguous, including the use of general and undefined terms, and overbroad.  Without waiver of those objections, defendant states:  None, to his knowledge.


INTERROGATORY #20:

Set forth the details of any prior complaints, whether formal, informal, written, or verbal, and including but not limited to any notices of claim or litigation, made against you, during the time period 1997 to the present, concerning pay-to-

play arrangements; pay-for-votes arrangements; favoritism; nepotism; cronyism; dishonesty; discrimination; improper request, solicitation, or pressure on City of Buffalo employees to make political donations; misuse of public funds; abuse of power; corruption; RICO violations; bribery; improper bidding practices; repression of political opponents; Hobbs Act violations; wire fraud; mail fraud; patronage; graft; embezzlement; improper fundraising or solicitation of political contributions; improper quid pro quo; influence peddling; improper interaction with lobbyists; electoral fraud; kickbacks; unholy alliances; improperly keeping items off the Common Council Agenda; failure to proceed with a project where prior representations had been (allegedly or actually) made that the City of Buffalo, BURA, or other defendants would proceed with a project; and/or similar complaints.  Identify all documents, communications, and witnesses supporting your response.

RESPONSE:

     Defendant objects to this interrogatory for numerous reasons.  First, it is overbroad and uses thirty-five (35) separate terms, all of which are undefined.  In that regard, the interrogatory uses legal terms (*e.g.*, RICO, Hobbs Act, bribery), broad general terms (*e.g.*, patronage, dishonesty, abuse of power, cronyism and favoritism), and colloquialisms, (*e.g.*, kickbacks, unholy alliances).  Second, the interrogatory covers a fifteen (15) year timeframe that is overbroad and seeks irrelevant information.  Third, the actual categories of complaints, claims and complaints are not limited to those with any potential relevance to the issues presented in this lawsuit and are not reasonably calculated to lead to the discovery

of admissible evidence. Fourth, the interrogatory is overbroad and unduly burdensome to the extent it seeks oral and written complaints, and formal and informal complaints, made to anyone. Defendant objects to this interrogatory as a quintessential fishing expedition in the hope of finding something "bad" or derogatory about defendants, and designed primarily to harass defendants. Defendants also object to the interrogatory as the burden and expense of the requested information outweigh its likely benefit.

INTERROGATORY #21:

Set forth the details of any ethical complaints made against you during the time period 2001 to the present. Identify all documents, communications, and witnesses supporting your response.

RESPONSE:

Defendant objects to this interrogatory as overly vague and ambiguous, including the use of general and undefined terms, and overbroad. Without waiver of those objections, defendant states: None, to his knowledge.

INTERROGATORY #22:

State the name, address, and job title of any person answering or providing any information used to answer each Interrogatory.

RESPONSE:

Byron W. Brown.

DATED:     Buffalo, New York
           March 21, 2014

                              _Randall D. White / pdm_
                              _____
                              Terrence M. Connors, Esq.
                              Randall D. White, Esq.
                              CONNORS & VILARDO, LLP
                              Attorneys for Defendants,
                                 City of Buffalo, Byron W. Brown,
                                 and Steven M. Casey
                              1000 Liberty Building
                              Buffalo, New York 14202
                              716-852-5533 (T)
                              716-852-5649 (F)
                              tmc@connors-vilardo.com
                              rdw@connors-vilardo.com