NRP HOLDINGS LLC and
NRP PROPERTIES LLC,

          Plaintiffs,

    v.

CITY OF BUFFALO, BYRON W. BROWN, STEVEN      Civ. No 11-CV-472(WMS)
M. CASEY, DEMONE A. SMITH, RICHARD A.
STENHOUSE, BUFFALO JEREMIAH PARTNERSHIP
FOR COMMUNITY DEVELOPMENT, INC., CITY OF
BUFFALO URBAN RENEWAL AGENCY, JOHN DOES 1-
10, and JOHN DOE COMPANIES 1-5,

          Defendants.

## REPLY DECLARATION OF THOMAS S. LANE

Thomas S. Lane, makes this Declaration under penalties of perjury, pursuant to 28 U.S.C. § 1746:

1. I am an attorney admitted to practice law in New York State and before this Court and a partner in the law firm Webster Szanyi LLP, attorneys for Plaintiffs NRP Holdings LLC and NRP Properties LLC ("Plaintiffs"). As such, I have personal knowledge of the prior pleadings and proceedings in this action and the matters stated below.

### I.    Introduction

2. The Defendants imply they were surprised by Plaintiffs' motion. Plaintiffs' motion was only made after repeated efforts to complete written discovery and obtain adequate responses were met with delay and denial. We made it very clear to Defendants that we would seek court intervention if they did not provide adequate

discovery responses. We advised them by letter dated April 29, 2014 that, in the absence of any representation as to when they would complete their discovery obligations, "[a]fer May 20, we will need to consider the need to involve the Court with **any** outstanding discovery issues." (Dkt. 81-2, Exh. A, Lane e-mail dated April 29, 2014.) (emphasis added).

3.      Simply put, from the outset Plaintiffs and this Court accepted the Defendants' representations concerning their asserted difficulties in locating and producing responsive written discovery. With the passage of time, however, Plaintiffs could no longer wait to seek judicial intervention to compel and put an end to this phase of the discovery process. As the Court no doubt appreciates, in a complex case such as this one, the completion and evaluation of all written discovery is a necessary prerequisite to depositions - a phase that the parties have agreed, and with the Court's understanding and approval, will require several months to complete. Plaintiffs' motion to compel is timely and should be addressed now.

4.      As part of their belated response, Defendants produced several items of requested discovery that they claim resolve certain of the issues in Plaintiffs' motion to compel. However, a number of key disputes remain unresolved. Plaintiffs expressly reserve the right to object to the sufficiency of these belated responses, as their adequacy is not within this motion to compel.[1] These belated responses do not erase the fact that Defendants were in default on many of their discovery obligations. Instead, they confirm that Defendants recognize that their responses were incomplete.

---

[1] In an effort to streamline the requests at issue on this motion, I indicate below where it appears Defendants' recent responses satisfy the issues raised in this motion. I note, however, that several responses are deficient and raise additional concerns.

## A. The City Defendants Have Withheld and Attempted to Conceal Damaging Emails

5.      The City Defendants' belated production of documents illustrates that their strategy concerning discovery is to appear to be bending over backwards to provide voluminous and comprehensive responses.  In reality, they are attempting to hide key facts and avoid tough questions.

6.      Buried near the back of the City Defendants' belated production on July 17, 2014 are two emails confirming what Plaintiffs have alleged from the very beginning and what Defendants have repeatedly denied in sworn pleadings and discovery responses.  Mr. Brown's only reason to kill the Project was the failure to find a paid role for Rev. Stenhouse.   (Exh. A, Perel letter dated July 21, 2014 with enclosures, COB032003-04.)  The April 28, 2009 Brian Reilly email to Mr. Brown and Mr. Casey confirms the City Defendants' plan to pass legislation and sign necessary documents that day to advance the Project.  (*Id.* at COB032004.)[2]  These emails refute the City Defendants' denials and assertion that Mr. Brown reversed his support for the Project because it was a scattered site, rent to own project, or any concern relating to the Development Team's lobbying efforts.  To the contrary, Mr. Brown and Mr. Casey were ready, willing, and set to obtain Common Council approval for the Project on April 28,

---

[2] This email reads as follows:

"Had mtg with Steve Weiss on another matter this am-he said his client knows what to do, will do it and Rev. Stenhouse will call Mayor should that contract be signed this AM.

IF that happens, presumably the file could be introduced for passage today at Council. If not today, the tax credits will be lost by month's end.

I'll ensure Peter S has the legislation and other signature documents routed yesterday in case u want to move on this."

(*Id.*)

2009.  (*Id.*)  All that was required was a phone call from Rev. Stenhouse to the Mayor, and the Project would have been approved by the Common Council that day.  (*Id.*)  Likewise, the March 12, 2009 email shows that Mr. Brown and Mr. Casey specifically authorized the signing and submission of the form setting in motion the release of HUD funds for the Project.  (*Id.* at COB032003.)

7.      The City Defendants have waited over a year to produce these emails. The City Defendants held on to these documents until they had "substantially completed their production of ESI."  (Dkt. 89, City Defendants' Memorandum of Law In Opposition to Motion to Compel, pg. 22.)  These emails were clearly not produced as they were maintained among other documents.  Rather, they were intentionally slipped in among documents concerning the St. John's Townhomes project.  That they were produced in this manner in a belated production speaks volumes.[3]

8.      Given that Plaintiffs received these emails on July 17, 2014, we decided to provide Defendants with an opportunity to answer several questions before seeking judicial intervention to address all of the ramifications resulting from their belated production and substantive impact on prior verified representations made to date.  (Exh. A, Perel letter dated July 21, 2014.)  Depending on Defendants' response, Plaintiffs reserve the right to seek judicial intervention and, at a minimum, will be prepared to address this matter further on the hearing date of their motion to compel.

---

[3] These emails cannot be reconciled with Defendants' answer, public statements, and verified interrogatory responses.  *See, e.g.*, Brown Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories, Interrogatories 10, 11 (Dkt. 81-2, Exh. E); City of Buffalo's Responses to Plaintiffs' Revised First Set of Interrogatories, Interrogatory 32 (Dkt. 81-6, Exh. DD).

**B.** **Defendants' Continued Refusal to Respond to Key Discovery Demands**

9.     Defendants continue to refuse to provide responses to demands which concern several key issues in this case.   The outstanding discovery requests at issue on this motion concern central elements to Plaintiffs' allegation that Mr. Brown conditioned his support for the Project on finding a role for his political ally Rev. Stenhouse.   Plaintiffs allege that Defendants have committed RICO violations - a claim upheld by the Court - which requires proof of a course of conduct.   Many of Plaintiffs' discovery demands concern Defendants' political fundraising.   These are relevant to refute the pretext that the decision to not support the Project was based on the doubts cast by "reliance by unknown out-of-town developers on political figures to push the project" and the City Defendants' discomfort with "the developers' attempt to use political influence."   (Dkt. 81-2, Exh. E, Brown Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories, Interrogatories 10, 11.)

10.     Defendants continue to refuse to answer basic questions concerning their role with Rev. Stenhouse.   Defendants refuse to identify any projects involving Rev. Stenhouse.   Mr. Brown and Mr. Casey refuse to provide information concerning any financial dealings with Rev. Stenhouse, but do not deny that they had financial dealings with Rev. Stenhouse.   Defendants refuse to identify whether they have received a single allegation or complaint concerning a similar pay to play arrangement.   Defendants failed to identify governmental investigations concerning development projects.   Plaintiffs anticipate that the evidence will demonstrate that the Defendants had no reservations supporting similar projects involving similar lobbying efforts.

11. The common refrain when faced with these tough questions is that they are vague, or ask for "any and all" facts or documents and are therefore unduly burdensome. The Defendants would like the court to permit Defendants to make no response to these requests. Plaintiffs have offered to reasonably modify several requests, including interrogatories concerning complaints or allegations of improper conduct.

12. As Defendants observe, they are more than willing to provide lengthy interrogatory responses and produce tens of thousands of pages of documents. But only when the questions are easy, or the documents benign. Their willingness wanes when the questions are difficult. When the documents are highly damaging, they are buried in belated productions made amidst a swirl of motion papers.

13. For the reasons set forth below and in Plaintiffs' prior Declaration and Memorandum of Law, we request that Court order Defendants to comply with their discovery obligations.

## II. City Defendants

### A. City Defendants' Failure to Produce Privilege Logs

14. The City Defendants correctly observe that the parties agreed to produce privilege logs when they completed their productions. That date was to be March 18, 2014. (Dkt. 81-1, Lane Declaration in Support of Plaintiffs' Motion to Compel, ¶ 16.) The City Defendants can point to no document reflecting an agreement to provide privilege logs after that date. On April 10, 2014, Plaintiffs demanded a privilege log when the City Defendants had failed to complete their document productions or provide a privilege log, with no end in sight. (*Id.* at ¶ 17.)

15.     The City Defendants did not respond to this request.  The City Defendants did not object that there was an agreement in place permitting them to provide their privilege log when they completed their production.   The City Defendants now unilaterally assert the right to produce a privilege log whenever they complete their document productions.  This is contrary to any agreement between the parties, and contrary to the clear requirements of the Federal and Local Rules, as set forth in Plaintiffs' Memorandum of Law.  (Dkt. 81-12.)

16.     The City Defendants' assertion that Plaintiffs were not prejudiced misses the mark.  Defendants cite to no authority supporting their suggestion that waiver of privilege for failure to provide a privilege log requires a showing of prejudice.

17.     Plaintiffs were in fact prejudiced: Defendants have had over four months to review the sufficiency of Plaintiffs' privilege log.  Defendants indicate that their privilege log is forthcoming, but there is no indication as to how voluminous it will be. Based on the brevity of the privilege log in relation to the tens of thousands of produced documents, it is our assumption that a significant number of additional documents were withheld on the basis of privilege and will be reflected on a supplemental privilege log. Plaintiffs will be forced to review a forthcoming privilege log and potentially challenge its sufficiency (which may involve motion practice) while at the same time preparing for and conducting numerous depositions on a rigorous schedule.

18.     While the sufficiency of the City Defendants' belated privilege log is not within the scope of this motion, we note that the log appears to be deficient.  The City Defendants assert Work Product privilege as to documents numbered four through six.

(Dkt. 89-37, Exh. JJ.)  There is no suggestion on the privilege log that these materials were prepared in anticipation of litigation.

## B. City Defendants' Failure to Produce Documents

19. Plaintiffs' accept the City Defendants request for an Order providing thirty days from the date of that Order for the City Defendants to complete the remainder of their ESI production; to complete their production in response to Plaintiffs' Third Request for Production; and to identify documents responsive to Plaintiffs' request for production.

20. The City Defendants do not address Plaintiffs' motion concerning outstanding hard copy documents to be produced.  Accordingly, as that portion of Plaintiffs' motion is unopposed, we request that the Court issue an Order providing thirty days from the date of entry of that Order to complete the remainder of their hard copy production.

### 1. The City Defendants' Failure to Produce Documents Provided to the Office of Inspector General, United States Department of Housing and Urban Development

21. The City Defendants failed to disclose the existence of the investigation by the Office of Inspector General, U.S. Department of Housing and Urban Development ("OIG").  To date, the City Defendants have still failed to provide any supplemental written response to Plaintiffs' Request for Production identifying any HUD or OIG investigation or audit.

22. The City Defendants have undergone a number of extensive audits and investigations by the United States HUD in recent years which have found numerous deficiencies concerning the use of Federal funds and recordkeeping in connection with

housing and community development projects. Documents concerning these audits and investigations are relevant to demonstrate a course of conduct as well as to refute the City Defendants' pretext that they did not support the Project because they were conscientious guardians of the City's limited federal funds. (Dkt. 81-2, Exh. E, Brown Supplemental Responses to Plaintiffs' Revised First Set of Interrogatories, Interrogatory 11.)

23.     The City Defendants have failed to produce any subpoenas or requests for information in connection with these audits or investigations. The City Defendants have failed to produce any documents provided to the HUD in connection with these audits or investigations.

24.     The only evidence concerning any OIG investigation is the Declaration of Ms. Steele - who is counsel for Mr. Smith, not the City Defendants. (Dkt. 91-11.) Ms. Steele indicates that the City Defendants received an audit letter from the OIG in 2010, but have been unable to locate it. (*Id.* at ¶ 52.)

25.     Plaintiffs challenged the City Defendants' failure to produce documents concerning the OIG investigation on February 18, 2014. (Dkt. 81-6, Exh. AA.) Rather than admit the existence of this investigation, the City Defendants said nothing until their opposition to this motion. Evidently, the City Defendants believed simply losing the OIG audit letter excused them from identifying its existence or the existence of the OIG investigation.

26.     To the extent there are any other investigations, subpoenas, or requests for information that the City Defendants have still failed to disclose or provide

documents responsive to Plaintiffs' demands, Plaintiffs reserve the right to request the Court to issue appropriate sanctions, including striking the City Defendants' answers.

## 2. The City Defendants' Failure to Produce Documents Concerning the "Mayor's Fund to Advance Buffalo"

27.     Plaintiffs have requested all documents concerning the Mayor's Fund to Advance Buffalo (the "Mayor's Fund").  (Dkt. 81-1, ¶ 49.)  The City Defendants initially produced tax records for 2008 and 2009.  (*Id.* at ¶ 51.)  The City Defendants have also produced invite lists for the 2008 through 2012 State of the City address (a principal fundraising event for the Mayor's Fund); 2010 State of the City donors list; 2010 State of the City donors; and a 2007 list of donors (though it is unclear from this document if this is a list of donors from the State of the City or for the Mayor's Fund).

28.     On July 17, 2014, the City Defendants produced tax records for 2007, 2010, 2011, 2012, and 2013.  On that date the City Defendants also produced By-Laws for the Mayor's Fund; application for tax exempt status; and an unsigned certificate of incorporation.

29.     The City Defendants' production omits large categories of documents concerning the Mayor's Fund.  Among these are 2013 and 2014 State of the City invite lists; 2007 to 2009 and 2011 to 2014 State of the City attendance lists; a signed certificate of incorporation; and donor lists for 2008 to 2009 and 2011 to 2014.  Also absent from the City Defendants' production is any document evidencing what the Mayor's Fund does with its funds.  At a minimum this should include the Mayor's Fund's accounting books including itemized balance sheets and income / expense reports.

**C.    Defendants' Failure to Provide Complete Interrogatory Responses**

    **1.    City Interrogatory 25; Brown Interrogatories 5, 6; Casey Interrogatories 4, 5; Smith Interrogatories 4, 5: The City Defendants' Failure to Set forth All Facts Concerning Their Immunity Affirmative Defenses**

30.    The City Defendants' responses are boilerplate legal conclusions.  The City Defendants fail to set forth a single actual fact.  Their responses do not clarify whether they simply deny that the allegations took place (which is not an affirmative defense) or that, assuming Mr. Brown conditioned his support for the Project on Plaintiffs' finding a no-show job for Rev. Stenhouse as alleged, that this somehow is still within their discretion and accordingly the City Defendants are entitled to immunity. Such a response would clarify the issues in advance of depositions and trial.

    **2.    City of Buffalo Interrogatory 33: The City of Buffalo's Failure to Identify Housing and Community Development Projects and to Identify Information Concerning these Projects**

31.    Plaintiffs accept in part the City's Supplemental Responses to Plaintiff's Revised First Set of Interrogatories, No. 33 (Dkt. 89-35, Exh. HH.)  Plaintiffs request that the Court issue an Order requiring that the City clarify whether the listed projects involved the transfer of City owned lots (subsection h of this interrogatory).

    **3.    City of Buffalo Interrogatory 34: The City Defendants' Failure to Identify Stenhouse, Jeremiah Partnership, or Bethel Community Development Corporation Housing and Community Development Projects**

32.    The City Defendants know what projects involve the listed Stenhouse entities.  The City Defendants are familiar with Rev. Stenhouse, a political ally of Mr. Brown, and are aware of any entities affiliated with Rev. Stenhouse.   The City

Defendants' have refused to apply the commonly understood meaning of the terms "involve" and "affiliated" and instead refused to provide any responsive information. Plaintiffs request the City Defendants conduct no more than a reasonable inquiry, and provide interrogatory responses to the best of their abilities. The City Defendants refuse to do this much.

4. **City of Buffalo Interrogatory 35; Brown Interrogatory 20; Casey Interrogatory 16: The City Defendants' Failure to Provide Details Concerning Prior Complaints of Improper Conduct**

33. Again the City Defendants' position is that Plaintiffs' interrogatory is so objectionable that no response is required. Plaintiffs have offered to limit the scope of this interrogatory, and suggested with regard to the individual defendants that in the absence of any attempt to respond at all, one approach may be to identify complaints in general terms to focus on complaints most relevant to this litigation. (Dkt. 81-1, ¶ 92, Lane Declaration in Support of Motion to Compel.)

34. The City Defendants' characterize the interrogatories as seeking wholly irrelevant information. Plaintiffs have asserted a pay to play RICO scheme, requiring proof of prior conduct. Discovery concerning prior allegations of pay to play schemes is entirely appropriate. Defendants deny even this much discovery. In the absence of any attempt to cooperate to define reasonable parameters to this interrogatory, we request that the Court issue an Order requiring defendants to list any and all complaints responsive to these interrogatories as a first step to identifying those complaints most relevant to this litigation.

5. **Brown Interrogatory 7; Casey Interrogatory 6; Smith Interrogatory 6: Failure to Provide the Factual Basis for their Affirmative Defenses that Plaintiffs are not Entitled to Punitive Damages**

35.     As with the City Defendants' responses concerning their immunity affirmative defenses, the individual defendants cite to no fact supporting their affirmative defense that Plaintiffs are not entitled to punitive damages.  Accordingly, it would seem their position is merely a denial of the allegations, which is not an affirmative defense. Their responses do not suggest that they take the position that punitive damages are not warranted assuming the facts alleged.

6. **Brown Interrogatory 12: Mr. Brown's Failure to Set Forth the Basis and All Facts Supporting his Campaign Claim Concerning Development in the City of Buffalo**

36.     We accept Mr. Brown's second supplemental response to this interrogatory as responsive to this interrogatory.

7. **Brown Interrogatory 16; Casey Interrogatory 13: Failure to Identify Sources and Amount of Income**

37.     Plaintiffs have not requested Mr. Brown's or Mr. Casey's tax returns.  The authorities cited are inapposite.   Plaintiffs are entitled to discovery concerning Mr. Brown and Mr. Casey's financial dealings with Rev. Stenhouse and affiliated entities. Notably, the City Defendants' response does not deny that Mr. Brown or Mr. Casey had financial dealings with Rev. Stenhouse or affiliated entities.  Plaintiffs are entitled to at least this much.

8. **Mr. Brown's Failure to Provide Verified Interrogatory Responses**

38.     Counsel has submitted a Verification for Mr. Brown concerning the "Supplemental Responses to Plaintiff's [sic] Revised First Set of Interrogatories."  (Dkt.

89-34, Exh. GG.)   We interpret this to also apply to Mr. Brown's Supplemental Responses concerning Interrogatory No. 12 as well (Dkt. 89-36, Exh. II).   On that understanding, Mr. Brown's interrogatory responses are now properly verified.

### 9. Mr. Casey's Failure to Provide Verified Interrogatory Responses

39.     Mr. Casey's interrogatory responses are now properly verified.

### III. BURA

40.     BURA's affirmation in response to Plaintiffs' motion to compel concedes it has failed to adequately respond to a number of discovery requests and fails to adequately address the remaining requests.

### A. BURA's Failure to Produce Privilege Logs

41.     BURA indicates that "[t]o the extent that BURA claims a privilege for any electronically stored document, a log will be provided to the Plaintiffs by BURA identifying those documents and the reason for the privilege."   (Dkt. 88, ¶ 10.)   BURA has already agreed to provide a privilege log.   BURA's renewed offer is too little, too late.

42.     BURA's response suggests that the only documents it withheld for privilege are electronically stored documents.   It is implausible that no privileged documents were withheld from the materials made available for review.   BURA offers no explanation for its failure to identify privileged hard copy documents, or even any representation that it will ever do so.   We respectfully request that this Court order BURA to produce any responsive hard copy documents withheld from inspection for any reason.

43.     BURA's response also reveals that it has abrogated its privilege review of electronically stored documents to the City of Buffalo.  BURA makes no effort to explain how any privilege or confidentiality can continue to attach to any document it has handed over to the City to discharge its discovery obligations.   BURA and the City Defendants are distinct parties represented by different counsel.  From the beginning of this action, BURA has tried to distance itself from the City Defendants.  Likewise, the City Defendants have tried to distance themselves from BURA.  BURA has not asserted they share any common interest or common defense with the City Defendants. Accordingly, in admitting BURA has simply handed over all its ESI to the City in an attempt to wash its hands of its discovery obligations, BURA has waived any claim to confidentially or privilege to any ESI.

**B.      BURA's Failure to Produce Documents**

**1.      BURA's Failure to Identify Documents Responsive to Plaintiffs' Discovery Requests**

44.     BURA's response does not deny that it has agreed to provide supplemental written responses to Plaintiffs' Requests for Production, identifying documents responsive to each request by production number.

**2.      BURA's Failure to Produce ESI**

45.     BURA asserts that it is relying on the City Defendants to review and produce responsive ESI.  BURA has an independent obligation to produce ESI within its custody or control and to certify that it has produced all responsive documents.  It is immaterial whether BURA maintains ESI on servers maintained by the City Defendants. BURA may no more delegate this task to the City Defendants than a party may delegate production of their ESI to an third party service provider and claim they have no further

responsibility.  Plaintiffs request that the Court issue an Order compelling BURA - not the City Defendants - to produce all responsive BURA ESI within BURA's custody or control within thirty days from the date of this Order.

### 3. BURA's Deficient Responses to Plaintiffs' Third Request for Production

46.     Plaintiffs requested documents concerning technical assistance provided to the Jeremiah Partnership (Request 2); documents sufficient to identify other developers for whom similar technical assistance meetings were held (Request 3); and documents sufficient to identify other developers receiving similar assistance (Request 4).

47.     In response BURA merely states that any such documents concerning the Jeremiah Partnership would have been contained in the Jeremiah Partnership file inspected by Plaintiffs.  This is inaccurate.  There was no such "Jeremiah Partnership" file provided for inspection.  Rather, the materials provided for inspection consisted of a limited number of project-specific files.  To the extent such a file exists, Plaintiffs request that it be made available for discovery and inspection.

48.     BURA has indicated that it in fact has **not** made all documents concerning the Jeremiah Partnership available for inspection.  (Dkt. 81-9, Exh. QQ).  BURA has expressly disclaimed any independent duty to provide responsive ESI, and indicated "any e-mail communications relating to the Jeremiah Partnership were stored on the server maintained by the City of Buffalo." (*Id.*, Response to Request 2(a).)  BURA does not indicate the extent to which responsive BURA ESI concerning this request exists or whether it will ever be produced.

49. BURA's response fails to address any technical assistance meetings or assistance provided to other developers. BURA provided a limited scope of documents available for inspection, limited to discrete projects. To the extent documents concerning technical assistance provided in other projects exist, they were not provided for review.

50. BURA claimed in its response that the phrase "similar Technical Assistance" was vague and ambiguous. (Dkt. 81-9, Exh. QQ, Response to Request 3.) BURA apparently now concedes that the meaning of this phrase is clear: BURA's response to Plaintiffs' Motion to Compel makes no objection to the definition of this phrase.

### C. BURA's Failure to Provide Complete Interrogatory Responses

#### 1. BURA's Failure to Respond to Plaintiffs' Second Set of Interrogatories

51. BURA indicates "[t]o the extent there are any unanswered Demands for Interrogatories [sic] BURA has no objection to an Order compelling Answers as proposed by the Plaintiffs." (Dkt. 88, ¶ 8.) BURA's responses to Plaintiffs' Second Set of Interrogatories were due April 22, 2014. BURA offers no explanation why its responses are more than four months overdue.

### IV. Mr. Smith

52. Preliminarily, it should be noted that counsel for Mr. Smith has submitted a declaration which purports to address Plaintiffs' motion to compel as it concerns the City of Buffalo, Mr. Brown, and the City Defendants in general. (Dkt. 91-11, Declaration of M. Steele.) There has been no showing that Ms. Steele or Mr. Ball represent anyone in this action other than Mr. Smith or have any authority to speak for the City Defendants.

Accordingly, Plaintiffs request that the Court reject these submissions to the extent they purport to advance arguments on behalf of the City Defendants.

## A. Mr. Smith's Failure to Produce Privilege Logs

53. Counsel for Mr. Smith submitted no independent position with regard to Mr. Smith's failure to produce a privilege log. Rather, counsel indicated that they joined in the Declaration submitted by Mr. White, Esq. and incorporate the facts, arguments, and exhibits therein, and incorporated the City Defendants' Memorandum of Law with regard to interrogatories directed to Mr. Smith. (Dkt. 91, Ball Declaration, ¶ 3; Dkt. 91-11, Steele Declaration, ¶ 3.)

54. This conflation of responses makes it difficult to discern to what extent the arguments advanced by the City Defendants are applicable to Mr. Smith. Throughout the course of this litigation, the phrase "City Defendants" has been used to refer to Mr. Brown, the City of Buffalo, and Mr. Casey. Contemporaneously with their opposition to Plaintiffs' motion, the City Defendants submitted a Privilege Log. (Dkt. 89, Exhs. GG, JJ.) The privilege log is labeled "City Defendants' Privilege Log." (Dkt. 89-37, Exh. JJ.) Counsel for the City Defendants described it as "our privilege log." (Dkt. 89, Exh. GG.) Mr. Smith has not submitted a privilege log, indicated whether one would be provided, or indicated whether any documents were withheld on the basis of privilege. Accordingly, we respectfully request that the Court find that Mr. Smith has waived any claim of privilege and issue an Order compelling him to produce any responsive documents withheld for any reason.

### B. Mr. Smith's Failure to Produce Documents

#### 1. Mr. Smith's Deficient Responses to Plaintiffs' Third Request for Production

55. Counsel for Mr. Smith fail to address any requests for production directed to Mr. Smith. Instead, counsel incorporated generally the City Defendants' Declaration in opposition (which does not address document demands directed to Mr. Smith) and the City Defendants' Memorandum of Law, but only to the extent they concern interrogatories directed to Mr. Smith. (Dkt. 99-11, Steele Declaration, ¶ 3.)

56. In response to Plaintiffs' Third Request for Production, Mr. Smith made contradictory representations that documents would be provided but that this statement should not be construed to mean that documents exist. (Dkt. 81-1, ¶ 144.) Plaintiffs' motion challenging this non-response is unopposed. Accordingly, Plaintiffs request that the Court issue an Order compelling Mr. Smith to produce documents responsive to this request or affirmatively indicate he has no such documents.

### C. Demone Smith's Failure to Provide Complete Interrogatory Responses

#### 1. Interrogatory 7: Mr. Smith's Failure to Provide Adequate Information Concerning the "Rent to Own" Nature of the Project

57. Counsel for Mr. Smith admits that Mr. Smith conducted no investigation in response to this interrogatory but rather simply answered it "to the best of his recollection." (Dkt. 91-11, Steele Declaration, ¶ 8.) This is insufficient. Mr. Smith has a duty to conduct a reasonable investigation in answering this interrogatory and has failed to do so.

### 2.    Interrogatories 11-14; 17-19

58.    Plaintiffs accept Mr. Smith's supplemental responses as responsive to these interrogatories, but insist that Mr. Smith provide a verification of these responses.

### V.    Issues Concerning Scheduling Order

59.    Plaintiffs' motion to compel, as well as Defendants' recently-filed motion to compel (Dkt. 90), raise several issues concerning the deadlines set forth in the Second Amended Scheduling Order dated May 27, 2014 (Dkt. 80.)  Below is a summary of these issues, which we will be prepared to address on the hearing date of Plaintiffs' motion to compel.

60.    Defendants have suggested the Court issue an Order providing 30 days from the date of the Order for Defendants to comply with a number of agreed-upon issues.  Plaintiffs agree such an Order would be appropriate, and further request that any additional relief granted by the Court likewise be subject to a 30 day order. Attached as Exhibit B is a revised proposed Order.

61.    Defendants have moved to compel Plaintiffs' discovery responses.  (Dkt. 90.)  Oral argument on this motion is set for September 11, 2014.  (Dkt. 92.)

62.    Defendants' belated discovery responses raise significant issues concerning the timing, manner, and thoroughness of their collection and production. We have sought clarification and additional documents from Defendants in connection with these issues.  Defendants' forthcoming productions may address these issues, but may also fail to address them and raise new concerns.  Plaintiffs may need to seek judicial intervention concerning these issues.  Should we be unable to satisfactorily

resolve them through good faith efforts, we anticipate promptly raising them with the Court.

63.    The parties have agreed that completion of written discovery in this case should precede the deposition phase.  The parties anticipate that the deposition phase may take several months to complete.

64.    Accordingly, it is likely the parties will seek leave to modify the Second Amended Scheduling Order to provide additional time to complete discovery.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for an Order compelling Defendants' compliance with Plaintiffs' discovery demands, as set forth above.


Dated:      July 24, 2014
            Buffalo, New York

                                        *s/Thomas S. Lane*
                                        Thomas S. Lane