# EXHIBIT A

## ASSIGNMENT and RELEASE

This Assignment and Release Agreement (the "Agreement") is made effective as of the 14th day of January, 2011, by and among NRP Holdings LLC ("NRP Holdings") and NRP Properties LLC ("NRP Properties," and collectively with NRP Holdings, "NRP"), jointly and severally, and Belmont Housing Resources for WNY, Inc., formerly known as Belmont Shelter Corp. ("Belmont").

## RECITALS

A. In early 2008, NRP and Belmont engaged in discussions regarding plans to develop, construct and manage fifty (50) units of single-family homes in the Masten Park and Cold Springs neighborhoods of the City of Buffalo (the "Project").

B. As a result of such discussions, NRP and Belmont entered into two agreements concerning the Project – the Development Agreement between NRP Properties, on behalf of an entity to be formed (the "Owner"), and Belmont dated February 21, 2008 (the "Development Agreement") and the Agreement for Development Services between Belmont and NRP Holdings dated February 21, 2008 (the "Sub-Development Agreement").

C. Pursuant to the Development Agreement, Belmont agreed to carry out various tasks in connection with the Project, including, without limitation, to cooperate with NRP Holdings as the sub-developer pursuant to the Sub-Development Agreement and to perform such other matters as were reasonably requested by the Owner.

D. Pursuant to the Sub-Development Agreement, NRP Holdings agreed to carry out various tasks in connection with the Project.

E. Paragraph 4 of the Sub-Development Agreement provides, in relevant part, that "[a]ny sums advanced by NRP [Holdings] on behalf of the Owner for reasonable costs associated with submission of an application for tax credits and related financing to New York State Division of Housing and Community Renewal, prior to the time of funding award by the New York State Division of Housing and Community Renewal, shall be repaid if the project contemplated by the Agreement otherwise fails to be consummated, as follows. [Belmont] shall bear the liability for (and pay to NRP) twenty five percent (25%) of the sums advanced by NRP and NRP shall bear the remaining seventy five percent (75%) of such liability for sums advanced by NRP."

F. Paragraph 5 of the Sub-Development Agreement provides, in relevant part, that "[a]ny sums advanced to or on behalf of the Owner by NRP, between the time of funding award by the New York State Division of Housing and Community Renewal and the project construction loan closing, with the prior approval of the Owner and NRP shall be evidenced by an executed promissory note . . . . In the event that . . . the project contemplated by the Agreement otherwise fails to be consummated [Belmont] shall bear the liability for (and pay to

NRP) twenty five percent (25%) of the sums advanced by NRP and NRP shall bear the remaining seventy five percent (75%) of such liability for sums advanced by NRP."

G.  NRP Holdings claims that its incurred costs on the Project are approximately $440,000.00. NRP Holdings claims that Belmont's share of these costs is approximately $110,000.00. (NRP's claims to recover such costs are hereafter referred to as the "Cost Claims"). Belmont disputes the amount of the Cost Claims and asserts that it owes no further payments to NRP with respect to such Cost Claims.

H.  NRP and Belmont wish to resolve their dispute regarding the Cost Claims by the assignment by Belmont to NRP of certain rights Belmont may have under certain agreements and commitment letters received by Belmont in connection with the Project.

I.  By letter dated February 25, 2008, from the City of Buffalo ("Buffalo") to Belmont, Buffalo agreed and committed itself to participate in the Project by, among other things, extending to the Project its usual Low Income Housing PILOT agreement, providing $1,600,000 of its HOME funds to assist in the construction and, in addition, providing fifty-one (51) buildable vacant lots at a price no greater than $2,000 per buildable lot, and not to exceed a total price of $100,000. This letter is hereafter referred to as "the Buffalo February 25, 2008 agreement and commitment letter."

J.  By letter dated August 20, 2008, from the New York State Division of Housing and Community Renewal ("DHCR") to Belmont, DHCR agreed and committed to provide Low Income Housing Tax Credits ("LIHTC") in support of the Project. By letter dated November 5, 2008, from DHCR to Belmont, DHCR stated that the amount of the LIHTC was increased from $794,363 to $922,954. Collectively these letters are hereafter referred to as "the DHCR agreement and commitment letters."

K.  By letter dated November 8, 2008, from the New York State Housing Trust Fund Corporation ("HTFC") to Belmont, HTFC approved a low interest loan in the amount of $2,200,000 in support of the Project. This letter is hereafter referred to as "the HTFC November 8, 2008 agreement and commitment letter."

L.  By a Notice of Claim dated June 14, 2010 (hereafter referred to as "the Notice of Claim"), NRP asserted its intention to commence a lawsuit against Buffalo and others based on tortious and illegal actions concerning the Project. Such actions include the breach of the Buffalo February 25, 2008 agreement and commitment letter. They also included actions giving rise to claims based on tortious interference with contract and prospective contractual relations, tortious interference with prospective economic advantage and prospective economic relations, concerted action theory, and for violations of Federal and State statutory law.

**NOW, THEREFORE,** in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

2

NRP 01677

1. Belmont hereby unconditionally and irrevocably assigns, grants and transfers all rights, title, interest in, to and under the following to NRP: (a) the Development Agreement, (b) the Sub-Development Agreement, (c) the Buffalo February 25, 2008 agreement and commitment letter, (d) the DHCR agreement and commitment letters, and (e) the HTFFC November 8, 2008 agreement and commitment letter.

2. Belmont hereby unconditionally and irrevocably assigns, grants and transfers all rights, title, interest in or to under the following to NRP:

      (a) claims referenced in the Notice of Claim, and

      (b) claims asserted by NRP in connection with any lawsuit or lawsuits concerning the Project.

3. Belmont makes no representation or warranty with respect to the assignability of the contracts referenced above in paragraph "1" or the claims referenced above in paragraph "2".

4. Belmont hereby represents and warrants that it possesses full right and authority to enter into this Agreement and to transfer and assign the aforementioned rights, title and interests referenced above in paragraphs "1" and "2" to the extent such rights, title and interests are assignable.

5. NRP shall be entitled to retain and keep, without limitation, all manners and methods of recovery, including money or money damages, if any, recovered in response to the Notice of Claim or the lawsuits referenced above in paragraph "2" or that may be recovered in any other type of proceeding or settlement in connection with the Project.

6. Belmont agrees, in consideration of the mutual covenants and releases set forth in this Agreement, that it will cooperate in good faith with all reasonable requests for information and materials made by NRP and / or attorneys acting on its behalf with respect to the claims referenced in paragraph "2" above. Belmont further agrees to respond to such requests within 20 business days from its receipt of such requests. Belmont further agrees that it will make available its employees with pertinent knowledge of the Project for interviews as may be reasonably requested by NRP or its attorneys with respect to the claims referenced in paragraph "2" above.

7. NRP and Belmont agree and acknowledge that, as a result of the assignment to NRP of all rights under the Development Agreement and Sub-Development Agreement, Belmont shall have no remaining obligations or liabilities of any nature whatsoever to NRP under the Development Agreement or the Sub-Development Agreement.

8. In consideration of and to induce Belmont to enter into the Agreement, NRP hereby releases Belmont, its subsidiaries, affiliates, directors, officers, employees and agents from any and all liabilities, claims, causes of action, duties, debts, contracts, promises or obligations of any nature whatsoever arising from any circumstance or fact existing on or prior to the date hereof, including without limitation liabilities, claims, causes of action, duties, debts, contracts, promises or obligations arising out of the Development Agreement or the Sub-

3

NRP 01678

Development Agreement or otherwise in connection with the Project, and specifically including any liability, obligation or duty concerning the Cost Claims.

9. In consideration of the foregoing, Belmont hereby releases NRP, its parents, subsidiaries, affiliates, partners, members, managers, employees and agents from any and all liabilities, claims, causes of action, duties, debts, contracts, promises or obligations of any nature whatsoever arising from any circumstance or fact existing on or prior to the date hereof, including without limitation liabilities, claims, causes of action, duties, debts, contracts, promises, or obligations arising out of the Development Agreement or the Sub-Development Agreement or otherwise in connection with the Project.

10. In consideration of the foregoing, NRP hereby agrees to indemnify, defend and hold harmless Belmont, its subsidiaries, affiliates, directors, officers, employees and agents against any and all cost, expense and liability Belmont or any of them may incur after the date of this assignment and arising out of or relating to (1) the assignment; and (2) any claim that may be asserted against Belmont in connection with any litigation pursued by NRP under the assignment. NRP shall be entitled to select counsel of its own choosing to comply with any obligation to defend that may arise under the foregoing.

11. This Agreement shall be binding on NRP and Belmont and their heirs, executors, personal representatives, successors and assigns.

12. This Agreement shall be construed and enforced in accordance with the laws of the State of New York, without regards to principles of conflicts of law.

13. This Agreement may be executed in counterparts, each with full force and effect of an original document. In addition, a copy of a signed Agreement transmitted by fax, e-mail or other means shall have the same force and effect of an original document.

Dated: January __, 2011

                                        Belmont Housing Resources for WNY, Inc.

By: _____
                       Elizabeth Huckabone, President

NRP 01679

Dated: January 14th, 2011

                NRP Properties, LLC

            By: NRP Partners LLC, its Sole Member

            _____
            (Insert Name: J. DAVID HELLER)
            (Insert Title: managing member

Dated: January 14th, 2011

                NRP Holdings, LLC

            By: NRP Investments Corp., its Manager

            _____
            (Insert Name: J. DAVID HELLER )
            (Insert Title: Executive Vice President

5

NRP 01680