UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------

NRP HOLDINGS LLC AND NRP PROPERTIES LLC

                                                Plaintiffs,

                                                vs.

CITY OF BUFFALO, BYRON W. BROWN, STEVEN M. CASEY,
DEMONE A. SMITH, RICHARD A. STENHOUSE, BUFFALO
JEREMIAH PARTNERSHIP FOR COMMUNITY DEVELOPMENT, INC.,
CITY OF BUFFALO URBAN RENEWAL AGENCY, JOHN DOES 1-10,
AND JOHN DOE COMPANIES 1-5,

                                                Defendants.

-------------------------------------------------------------------------------

# CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(c)
## 11-CV-472-WMS-LGF

                                        Terrence M. Connors, Esq.
                                        Randall D. White, Esq.
                                        CONNORS & VILARDO, LLP
                                        Attorneys for Defendants
                                        City of Buffalo, Byron W. Brown,
                                        and Steven M. Casey
                                        1000 Liberty Building
                                        424 Main Street
                                        Buffalo, New York 14202
                                        (716) 852-5533

                                        Timothy A. Ball, Esq.
                                        Megan Steele, Esq.
                                        Corporation Counsel
                                        CITY OF BUFFALO
                                          DEPARTMENT OF LAW
                                        Attorneys for Defendant
                                         Demone A. Smith
                                        65 Niagara Square
                                        Buffalo, New York 14202
                                        (716) 851-4318

**TABLE OF CONTENTS**

I.  This Rule 12(c) Motion Is Not a Motion for Reconsideration and Is Proper Pursuant to Rules 12(g)(2) and 12(h)(2)(A). ...................................................................... 2

II. All of NRP's RICO Claims Must Be Dismissed. ............................................................ 3

    A.  NRP's RICO Claims as Belmont's Assignee ......................................................... 3

        1.  Deficiencies in the Federal Statutory Scheme ............................................ 4

        2.  Preemption ................................................................................................... 6

    B.  NRP's Own RICO Claims ...................................................................................... 7

III. All of NRP's Promissory Estoppel Claims Must Be Dismissed. ..................................... 8

    A.  No Clear and Unambiguous Promise ...................................................................... 8

    B.  No Reasonable Reliance ........................................................................................ 10

IV. Conclusion ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Hisham Elzanaty,* 929 F.Supp. 2d 199 (E.D.N.Y. 2013) ................................ 3

*Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608 (2000) .................................................................... 5

*Biro v. Conde Nast*, 963 F.Supp.2d. 255 (S.D.N.Y. 2013) ............................................................. 3

*Clark St. Wine v. Emporos Sys. Corp.*, 754 F.Supp.2d 474 (E.D.N.Y. 2010) ................................ 3

*Corcoran v. New York Power Authority*, 202 F.3d 530 (2d Cir. 1999) ......................................... 7

*DeFalco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ........................................................................... 8

*Dorchester Investors v. Peak TrENDS Trust,* 2002 U.S. Dist. LEXIS 3067
    (S.D.N.Y. Feb. 26, 2002) ........................................................................................... 2

*Frooks v. Town of Cortlandt*, 997 F. Supp. 438 (S.D.N.Y. 1998), *aff'd,* 182 F.3d 899
    (2d Cir. 1999) ............................................................................................................. 6

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991) ...................................................... 6

*Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789 (2d Cir. 1999) ..................... 4, 6, 7

*Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399 (1941) ................................................................. 7

*Linden v. President and Directors of Chase Manhattan Bank*, 299 A.D.2d 216,
    749 N.Y.S.2d 247 (1st Dep't 2002), *lv. denied,* 99 N.Y.2d 509,
    760 N.Y.S.2d 100 (2003) .......................................................................................... 4

*Neroni v. Zayas*, 2015 U.S. Dist. LEXIS 72071 (N.D.N.Y. June 4, 2015) .................................... 3

*Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069 (D.N.J. 1996) .......................................... 7

*Palmer v. N.Y. State Office of Court Admin.*, 2007 U.S. Dist. LEXIS 60008
    (N.D.N.Y. Aug. 13, 2007) ......................................................................................... 3

*Samborski v. West Valley Nuclear Servs.*, 2000 U.S. Dist. LEXIS 7925
    (W.D.N.Y. June 8, 2000) .......................................................................................... 3

*Toliver v. City of New York*, 2013 U.S. Dist. LEXIS 39894 (S.D.N.Y. March 21, 2013) ............. 3

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 2015 U.S. Dist. LEXIS 115610
    (S.D.N.Y. August 31, 2015) ...................................................................................... 1

**Statutes**

42 U.S.C. §1395dd ................................................................................................................ 4

Fed.R.Civ.P 12(b)(6) ......................................................................................................... 2, 3

Fed.R.Civ.P 12(h)(2)(B) ....................................................................................................... 2

Fed.R.Civ.P. 12(g)(2) ............................................................................................................ 1

General Municipal Law §50-e ............................................................................................... 1

Public Law 91-452, § 904(b) ............................................................................................. 5, 6

Public Law 91-452, October 15, 1970, 84 Stat. 922 (Statement of Findings and Purpose) ........... 5

NRP's "motion for reconsideration" argument fails under Rule 12(g)(2) and numerous New York federal court Rule 12(c) cases which NRP's opposition completely ignores.[1]

In direct contradiction to what it told the Court just over a year ago, NRP now says that it is <u>not</u> pursuing promissory estoppel claims as assignee of Belmont.[2] Moreover, all of NRP's promissory estoppel claims, regardless of the capacity in which they are brought, fail for lack of a clear and unambiguous promise and lack of reasonable reliance.

NRP tacitly concedes that if the General Municipal Law §50-e notice of claim requirement applies to RICO claims, then its RICO claims, as assignee of Belmont, must be dismissed. NRP's opposition ignores the key RICO notice of claim cases, as well as the express terms of its own notice of claim, and relies instead on a blanket – and clearly erroneous – statement of law. The notice of claim requirement does apply to RICO claims, and NRP's RICO claims, as assignee of Belmont, must be dismissed. Moreover, if the promissory estoppel claim is dismissed, then NRP's own RICO claims necessarily fail for lack of injury to business or property, as confirmed by NRP's own pleadings. Thus, the City Defendants' motion did properly seek complete dismissal of the second amended complaint.

---

[1] NRP's contention that the motion is "premised entirely on facts extrinsic" to the complaint, and should be treated as a summary judgment motion, is ridiculous. (Dkt. No. 120-17 at 18-19, n.9). The motion relies only on the pleadings, a document referenced in the complaint, state and federal regulations, City Charter excerpts, and judicially noticeable governmental documents and publicly filed documents, all of which may be considered on a Rule 12(c) motion. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC,* 2015 U.S. Dist. LEXIS 115610, **15-25 (S.D.N.Y. August 31, 2015).

[2] (*Compare* Dkt. No. 96 at 4 *with* Dkt. No. 120-17 at 10; *see* Connors Reply Declaration). NRP does not deny the City Defendants' demonstration that the alleged HTFC loan, $1.6 million HOME funds commitment, fifty-one buildable lots commitment, and PILOT agreement were not assignable. (*See* Dkt. No. 112-13 at 22-25).

I. **THIS RULE 12(C) MOTION IS NOT A MOTION FOR RECONSIDERATION AND IS PROPER PURSUANT TO RULES 12(G)(2) AND 12(H)(2)(A).**

NRP's lengthy argument that this is an improper motion for reconsideration is wrong. (*See* Dkt. No. 120-17 at 4-5, 6-10, 13). In partially denying the Rule 12(b)(6) motions, the Court found that the City Defendants and BURA had not raised arguments as to the lack of a clear and unambiguous promise, and the lack of reasonable reliance, and therefore declined to consider and rule on them.[3] Thus, there is no decision of the Court to "reconsider" on those two elements. Moreover, Rule 12(g)(2) provides that a party who makes a Rule 12 motion cannot make another Rule 12 motion raising a defense or objection that was available to the party but omitted from its earlier motion, subject to the exceptions set forth in Rule 12(h)(2) and (3). Rule 12(h)(2)(B), in turn, provides that failure to state a claim can be raised in a Rule 12(c) motion. Thus, the City Defendants' Rule 12(c) motion is proper for two reasons: (1) the motion falls within the failure to state a claim exception of Rule 12(h)(2); and (2) it is based, in part, on grounds not available to defendants at the time of the earlier motion, *i.e.*, the date of the assignment.

"District courts in the Second Circuit have held that successive motions to dismiss for failure to state a claim are not precluded by 12(h)(2) – that is, failure to raise a particular defense in a motion to dismiss does not preclude a party from bringing that defense in a 12(c) motion." *Dorchester Investors v. Peak TrENDS Trust,* 2002 U.S. Dist. LEXIS 3067, *8 (S.D.N.Y. Feb. 26, 2002).

For example, in *Dorchester Investors,* the defendants made a Rule 12(b)(6) motion to dismiss the securities fraud claim on materiality grounds. *Id.* at **8-9. The defendants' Rule 12(c) motion then sought dismissal of the same claim on the grounds that it failed to allege a

---

[3] While the City Defendants' memorandum of law correctly explained that procedural history and status, it should have made clear that the Court did, in fact, deny the motions to dismiss the promissory estoppel claim. (*See* Dkt. No. 112-13 at 25-26; Dkt. No. 43 at 19-20; Dkt. No. 68 at 7).

false or misleading statement. *Id.* at *9. The Court rejected the plaintiffs' argument that the Rule 12(c) motion improperly sought "to revisit" the Court's order denying the Rule 12(b)(6) motion, and found that the Rule 12(c) motion was proper. *Id.*

Numerous other New York District Courts have reached the same result. *See, e.g., Neroni v. Zayas*, 2015 U.S. Dist. LEXIS 72071, **6-7 (N.D.N.Y. June 4, 2015); *Biro v. Conde Nast*, 963 F.Supp.2d. 255, 266 n.2 (S.D.N.Y. 2013); *Toliver v. City of New York*, 2013 U.S. Dist. LEXIS 39894, *4 (S.D.N.Y. March 21, 2013); *Clark St. Wine v. Emporos Sys. Corp.*, 754 F.Supp.2d 474, 480 (E.D.N.Y. 2010); *Palmer v. N.Y. State Office of Court Admin.*, 2007 U.S. Dist. LEXIS 60008, **10-11 (N.D.N.Y. Aug. 13, 2007); *Samborski v. West Valley Nuclear Servs.*, 2000 U.S. Dist. LEXIS 7925, **3-4 (W.D.N.Y. June 8, 2000).[4]

## II. ALL OF NRP'S RICO CLAIMS MUST BE DISMISSED.

### A. NRP's RICO Claims As Belmont's Assignee

NRP's opposition first contends that its RICO claim is not subject to the notice of claim requirement because it is "plainly not [a] tort claim[ ]." (Dkt. No. 120-17 at 10). But NRP's own notice of claim, which is affirmatively alleged in and attached to the second amended complaint, expressly characterized its RICO claim as a tort claim, stating: "Respondents' actions also give rise to tort claims recognized under Federal law based on violations of the Hobbs Act and the Racketeer Influenced and Corrupt Practices Act ('RICO'), among other Federal statutes." (Dkt. No. 44 at 19-20, ¶110; Dkt. No. 45-4 at 3, ¶2).

NRP's blanket statement that New York's notice of claim requirement is not "a condition to pursue claims arising under federal law" is also wrong. (Dkt. No. 120-17 at 9). For example,

---

[4] This motion is also proper because the date of the assignment was not available to the City Defendants at the time of their Rule 12(b)(6) motion, and Rule 12(g)(2) therefore does not apply to that part of this motion. *See Allstate Ins. Co. v. Hisham Elzanaty,* 929 F.Supp. 2d 199, 214-215 (E.D.N.Y. 2013).

3

in *Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789 (2d Cir. 1999), the Second Circuit held that General Municipal Law §50-e's notice of claim requirement was a condition precedent to bringing suit under the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. §1395dd, and affirmed the Rule 12(c) dismissal of the complaint for failure to comply with that notice of claim requirement.

NRP's blanket statement that "[t]he law is clear that a notice of claim is not required to advance" a RICO claim is wrong as well. (*See* Dkt. No. 120-17 at 5). In fact, the Appellate Division has held that RICO claims are subject to New York's notice of claim requirement. *See Linden v. President and Directors of Chase Manhattan Bank*, 299 A.D.2d 216, 217, 749 N.Y.S.2d 247, 248 (1st Dep't 2002), *lv. denied,* 99 N.Y.2d 509, 760 N.Y.S.2d 100 (2003). In *Linden* – which NRP does not cite – the First Department held that the plaintiff's "motion to amend the complaint to allege a RICO claim against defendant Village was properly denied since, inter alia, no such claim was set forth in plaintiff's notice of claim against the Village." *Id.*

That determination is consistent with the two-step approach the Second Circuit adopted in *Hardy* for determining whether a state notice of claim requirement applies to *federal* claims brought in federal court. First, the Court determined whether there are "deficiencies" in the federal statutory scheme such that it is an appropriate exercise of the court's discretion to "borrow [the notice of claim requirement] from state law." *See Hardy*, 164 F.3d at 793. Second, the Court analyzed whether federal law preempts the notice of claim requirement. *Id.* at 794. In this case, RICO's core purpose and legislative history demonstrates that Congress intended the notice of claim requirement to apply to RICO claims brought in federal court.

### 1. Deficiencies in the Federal Statutory Scheme

In *Hardy,* the Second Circuit stated that although the absence of a notice of claim provision "generally does not render a federal statute deficient," the courts will apply such a

provision to a federal action "where there is evidence that Congress intended us to do so." 164 F.3d at 793.

The Second Circuit noted that the "purpose of EMTALA is to prevent patient dumping, the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions [are] stabilized." *Id.* at 792 (internal quotations omitted). The Second Circuit found that EMTALA was intended to "supplement, but not supplant, state tort law." *Id.* at 793. Because the "purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner," the Court found that this "commendable aim is in no way inconsistent with EMTALA's complementary objective of preventing hospitals from turning away emergency room patients merely because they cannot pay." *Id.* at 794. Instead, it found that EMTALA served "as a 'gap-filler' for state malpractice law," and should therefore incorporate the notice of claim requirement into its statutory scheme. *Id.*

Like EMTALA, civil RICO was intended to fill gaps in state tort law. RICO's purpose – to "seek the eradication of organized crime in the United States," Public Law 91-452, October 15, 1970, 84 Stat. 922 (Statement of Findings and Purpose) – in no way conflicts with the opportunity to investigate tort claims provided to municipalities through notice of claim statutes. Like EMTALA, RICO makes clear that it does not create exclusive remedies to achieve its purpose but instead builds upon state law already in existence. PL 91-452, § 904(b). ("Nothing in this title shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title.") Rather than conflicting with tort law, RICO emanated from common law civil conspiracy. *See generally Beck v. Prupis,* 529 U.S. 494, 120 S.Ct. 1608 (2000). Indeed, NRP's own characterization of its

5

RICO claim in its notice of claim as a "tort claim[ ] recognized under Federal law" accurately reflects RICO's legislative history and clear purpose, and underscores that it is indeed a tort claim subject to the notice of claim requirement. (Dkt. No. 45-4 at 3, ¶2).

In *Hardy*, the Second Circuit never specifically identified what "deficiency" the notice of claim statute filled in the EMTALA statutory scheme but instead relied on its analysis of congressional intent. The argument for application of the notice of claim requirement is even stronger here because RICO was never intended to be used directly against municipalities. *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991) ("Congress, in keeping with the common law, did not intend to subject municipal corporations to RICO liability."); *accord Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) ("[E]very court in this Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality."), *aff'd,* 182 F.3d 899 (2d Cir. 1999). Thus, the notice of claim requirement provides municipalities with a necessary opportunity to investigate and address RICO claims before the expense of litigation begins.[5]

### 2. Preemption

As to preemption, the Court's "sole task is to ascertain the intent of Congress." *Hardy*, 164 F.3d at 794 (quotation omitted). As noted above, RICO expressly states that it does not preempt "any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies in addition to those provided for in this title." PL 91-452, § 904(b). "When Congress expressly defines a statute's preemptive reach, and the definition provides 'a reliable indicium' of congressional intent as to what should be left to state authority, there is a

---

[5]  As the City Defendants' motion showed, the City was deprived of that opportunity with respect to Belmont's claims – which Belmont was willing to give up (through its assignment to NRP) for $110,000. (*See* Dkt. No. 112-13 at 21-22).

6

'reasonable inference' that Congress did not intend to preempt matters beyond that reach." *Hardy*, 164 F.3d at 794. Because Congress stated that it did not intend RICO to preempt other criminal and civil remedies, it is clear that Congress considered preemption but chose not to preempt notice of claim statutes.

Moreover, the notice of claim statute does not directly conflict with RICO or "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404 (1941). Providing a municipality the opportunity to investigate a tort claim does not frustrate RICO's purpose to root out organized crime. Instead, a notice of claim actually may advance RICO's purpose to stamp out corruption by requiring municipal officials to investigate potential offenses by their employees. *Cf. Corcoran v. New York Power Authority*, 202 F.3d 530, 540 (2d Cir. 1999) ("New York's notice of claim requirement actually furthers one of Price-Anderson's purposes – ensuring that adequate funds are available to satisfy meritorious claims.")[6]

**B.     NRP's Own RICO Claims**

Finally, contrary to NRP's argument, this motion properly sought complete dismissal because it did "address the substance of Plaintiffs' RICO claim." (Dkt. No. 120-17 at 5). More specifically, if the Court dismisses NRP's promissory estoppel claim, then NRP's own RICO claim also must be dismissed for lack of injury to business or property, as confirmed by NRP's own pleadings.

In its Amended RICO Case Statement – which NRP's opposition expressly incorporates – NRP described its alleged injury to its business and property as follows: "As a result of the

---

[6] In fact, the notice of claim requirement serves essentially the same, complementary purpose as one purpose of a RICO case statement, *i.e.*, preventing frivolous RICO claims at any early stage of the litigation while allowing meritorious claims to proceed. *See Northland Ins. Co. v. Shell Oil Co.*, 930 F. Supp. 1069, 1075 (D.N.J. 1996) ("[t]he case statement may help in the early screening of ill conceived [sic] RICO claims").

7

defendants' alleged schemes, NRP was no longer able to claim the benefits of their agreements with members of the Development Team, the DHCR, the HTFC and others who issued loan commitments and, in turn, Buffalo." (Dkt. No. 22-7 at 17, ¶15; Dkt. No. 120-17 at 5). NRP repeated that same injury allegation elsewhere in its RICO statement and in the second amended complaint. (Dkt. No. 22-7 at 8, ¶4; Dkt. No. 44 at 5-6 (¶¶28-30), 17 (¶94)).

The Court already has dismissed NRP's breach of contract claim because the purported agreement "demonstrate[s] that the City harbored no intent to be bound" or even to "work in good faith with NRP." (Dkt. No. 43 at 12, 14). And as explained above, NRP's promissory estoppel claim is subject to dismissal because the City never made any clear and unambiguous promise to fund the project and because there was no reasonable reliance. Thus, there is no cognizable injury for a RICO claim based on the alleged agreements with the City.

Moreover, NRP's opposition repeatedly makes clear that it is not pursuing any claim with respect to the other alleged agreements referred to in paragraph 94 of the second amended complaint and in the amended RICO case statement. (Dkt. No. 120-17 at 23-25).

As a result, NRP is unable to allege injury to business or property, and its own RICO claim must be dismissed as well.[7]

### III.   ALL OF NRP'S PROMISSORY ESTOPPEL CLAIMS MUST BE DISMISSED.

#### A.   No Clear and Unambiguous Promise

NRP does not and cannot dispute the well-settled law that a promise that is conditional on the signing of an agreement is not a clear and unambiguous promise. Instead, NRP is forced to fall back on bald claims that "none" of the City Defendants' three alleged promises "were

---

[7]   In the alternative, any such injury would be impermissibly speculative, and NRP's RICO claim is also subject to dismissal for that reason. *See, e.g., DeFalco v. Bernas*, 244 F.3d 286, 329-331 (2d Cir. 2001) (developer's "mere belief" that his project would be approved and ultimately profitable insufficient to support a RICO claim against municipal defendants who allegedly killed the project).

8

conditioned upon execution of a formal written contract" and "were not contingent upon any regulatory or Common Council approvals." (Dkt. No. 120-17 at 15). NRP contends that the "**only** contingency set forth in the Wanamaker Letter" concerned securing a LIHTC allocation. (*Id.*) (emphasis in original).

The Wanamaker Letter, however, expressly stated that "BURA is required to meet all applicable Federal, State and local rules and regulations before issuance of HOME funds to eligible recipients." As the City Defendants have shown, those rules and regulations included, *inter alia*, a written HOME Agreement.

But the more fundamental point is that regardless of the terms of the Wanamaker Letter or whether the promises were repeated elsewhere, all three alleged promises were, as a matter of law, conditional upon the signing of further written agreements, as well as regulatory and Common Council approval. Therefore, none of them constituted a clear and unambiguous promise for purposes of a promissory estoppel claim.[8]

The City could not bind itself to disburse $1,600,000 in HOME funds without a written HOME Agreement and HUD approval. The City could not provide 51 buildable lots without a further written agreement for the sale and purchase of the lots and Common Council approval. The City could not extend a PILOT agreement without a written PILOT Agreement and Common Council approval.

NRP skips over the required written agreements as well as the HUD approval.[9] NRP's argument that "there never was any reason to doubt" that the Common Council would approve

---

[8]  Accordingly, the alleged promises fail regardless of whether they were made to NRP, Belmont, or both.

[9]  In fact, as to the fifty-one buildable lots and the PILOT agreement, NRP affirmatively admits that "[t]here are no written agreements concerning these commitments as they relate to this Project." (Dkt. No. 120-17 at 26).

9

the PILOT agreement or sale of lots is therefore insufficient, as well as erroneous. NRP's argument – that the parties and Court can and should speculate and simply assume how the Common Council would act – would effectively eliminate the Common Council approval requirement set forth in the City Charter. NRP's argument would also allow the executive branch to bind the City, without legislative branch approval, if the general subject matter was of a type previously approved by the legislature. Not surprisingly, NRP cites no authority for such a fundamentally flawed argument.

### B. No Reasonable Reliance

The City Defendants' motion does not, as NRP contends, claim that the second amended complaint fails to make any allegations that NRP relied on the alleged promises. (Dkt. No. 120-17 at 18). Rather, the City Defendants' motion demonstrated that any such reliance was, as a matter of law, unreasonable because the three alleged promises were all contingent, as a matter of law, upon the signing of further written agreements, as well as regulatory and Common Council approval. In addition, NRP is charged with knowledge of the applicable law and could not reasonably rely on a promise that is contrary to federal HOME funds regulations or the City Charter. (*See* Dkt. No. 112-13 at 30-32).

Again, NRP's opposition completely ignores the requirement for further written agreements as to all three alleged promises. (Dkt. No. 120-17 at 18-23). Again, NRP simply repeats its prior arguments that "there is no doubt" that Common Council approval would have been forthcoming. (*Id.* at 19-21). But that argument fails for the reasons set forth above.

### IV. CONCLUSION

The City Defendants' Rule 12(c) motion should be granted, and the second amended complaint should be dismissed.

DATED:   Buffalo, New York
         October 20, 2015

                                                  s/Terrence M. Connors
                                                  Terrence M. Connors, Esq.
                                                  Randall D. White, Esq.
                                                  CONNORS & VILARDO, LLP
                                                  Attorneys for Defendants
                                                      City of Buffalo, Byron W. Brown
                                                      and Steven M. Casey
                                                  1000 Liberty Building
                                                  424 Main Street
                                                  Buffalo, New York 14202
                                                  716-852-5533
                                                  tmc@connors-vilardo.com
                                                  rdw@connors-vilardo.com

                                                  Timothy A. Ball, Esq.
                                                  Megan Steele, Esq.
                                                  Corporation Counsel
                                                  City of Buffalo Department of Law
                                                  Attorneys for Defendant
                                                    Demone A. Smith
                                                  65 Niagara Square
                                                  Buffalo, New York 14202
                                                  (716) 851-4318
                                                  tball@ch.ci.buffalo.ny.us
                                                  msteele@ch.ci.buffalo.ny.us