UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NRP HOLDINGS LLC and
NRP PROPERTIES LLC,

                              Plaintiffs,
   v.                                      **DECISION AND ORDER**
                                                   11-CV-472S

CITY OF BUFFALO, *et al.*,

                              Defendants.

**I. INTRODUCTION**

Presently before this Court are Defendants' motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The sufficiency of Plaintiffs' pleadings has been challenged twice before, and familiarity with this Court's prior orders is assumed. Briefly, however, as stated in this Court's July 2012 Decision, this lawsuit arose as a result of a stalled housing project on the City of Buffalo's East Side. From 2007 to 2009, Plaintiffs NRP Holdings LLC and NRP Properties LLC (collectively "NRP"), two intertwined housing development corporations, were working with the City of Buffalo on a project to build and manage 50 subsidized homes in the Masten and Cold Springs neighborhoods in the City of Buffalo. After each side had taken significant steps towards the project's completion, the City of Buffalo, a defendant in this case, backed out of the deal because, as NRP alleges, NRP rebuffed Mayor Byron Brown's attempts to involve his political ally Richard Stenhouse, and Stenhouse's company, Jeremiah Partnership for Community Development, Inc., in the project.

1

In July of 2012, this Court dismissed several of NRP's claims but found that, based on the dismissal arguments raised, the claims under the doctrine of promissory estoppel and under the Racketeer Influenced and Corrupt Organizations Act (commonly known as "RICO") survived the City Defendants'[1] motion to dismiss. This Court also granted NRP leave to file another amended complaint, adding the City of Buffalo Urban Renewal Agency ("BURA") as a defendant. As alleged, BURA is a public benefit corporation that acts as an agent of Buffalo in carrying out its urban renewal services.

NRP then filed the Second Amended Complaint, which BURA moved to dismiss as against it. In September 2013, this Court denied the motion with respect to NRP's promissory estoppel claim, but otherwise granted the motion with respect to Counts I, III, and V, which are the same claims that this Court previously dismissed as against the City of Buffalo defendants in July 2012. Two years later, Defendants filed the present motions for judgment on the pleadings.

## II. DISCUSSION

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Resolution of the merits in this manner is appropriate if the material facts are undisputed and a judgment may be reached merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). In determining whether judgment on the pleadings is warranted, courts employ the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. L-7 Designs, Inc. v. Old Navy, LLC, 647

---

[1] The City Defendants consist of the City of Buffalo, Byron W. Brown, Steven M. Casey, and Demone A. Smith.

F.3d 419, 429 (2d Cir. 2011); Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). Thus, all factual allegations in the Second Amended Complaint and exhibits attached to or referenced therein will be accepted as true, and all reasonable inferences will be made in NRP's favor. L-7 Designs, Inc., 647 F.3d at 429; Johnson, 569 F.3d at 43; see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

The City Defendants[2] contend that they are entitled to judgment on the pleadings because: (1) NRP's failure to comply with the New York General Municipal Law notice of claim requirement warrants dismissal of the remaining promissory estoppel and RICO claims; (2) NRP's claimed damages are based on contracts to which it was not a party and were either not assignable to NRP or contingent upon conditions which had not occurred; and (3) NRP failed to sufficiently allege an unambiguous promise or the reasonable reliance necessary to state a claim for promissory estoppel. (Docket No. 112-13.) BURA further contends that dismissal of the Second Amended Complaint as against it is warranted because NRP is not the assignee of any claim against BURA. (Docket No. 116-7.)

---

[2] Defendant BURA has incorporated the City Defendants' arguments regarding dismissal of Count II of the second amended complaint. (Docket No. 116-1 ¶ 4.)

3

**A.     Timeliness of the Present Motions**

NRP first opposes the present motions on the ground that they are improper requests for reconsideration of this Court's two prior decisions and orders. (Docket No. 120-17 at 6-9.)   NRP further argues that Defendants are precluded from raising arguments that could have been raised, but were not, in support of their prior motions to dismiss pursuant to Rule 12(b)(6).  However, as Defendants argue (Docket Nos. 123-3 at 6-7; 124), although certain defenses may not be raised on a subsequent Rule 12 motion, an argument that a complaint fails to state a claim upon which relief can be granted may be brought by a motion under Rule 12(c).  See Fed. R. Civ. P. 12(g)(2),(h); Clark Street Wine & Spirits v. Emporos Sys. Corp., 754 F.Supp.2d 474, 480 (S.D.N.Y. 2010); Dorchester Inv'rs v. Peak Trends Trust, No. 99 CIV. 4696 (LMM), 2002 WL 272404, at *2-3 (S.D.N.Y. Feb. 26, 2002).   Further, the arguments raised were not previously considered by this Court; indeed, at that time Defendants were not privy to the scope of the assignment underlying at least one contention raised in the present motion.

**B.     Consideration of NRP's Sur-Reply**

NRP moved to file a sur-reply to the City Defendants' motion to dismiss on the grounds that these Defendants raised arguments for the first time in their reply brief that: (1) NRP's RICO claim must be dismissed for the failure to appropriately comply with New York's notice of claim statute; and (2) if NRP's promissory estoppel claim fails, then the RICO claim must also be dismissed.  This Court agrees that, although the City Defendants raised the notice of claim issue in its primary brief, they did not develop the

argument that a federal RICO claim was subject to a state notice requirement until their reply brief. Similarly, although the City Defendants initially argued that the RICO claim must be dismissed in its entirety, the contention that the RICO claim is contingent on the promissory estoppel claim was not expressly stated until their reply brief. Even then, it is only presented in a conclusory fashion. Accordingly, NRP's motion to file a sur-reply with respect to these issues is granted.

NRP also addresses several perceived misrepresentations in the attorney reply declaration filed in support of the City Defendants' motion. This Court finds that further discussion of such arguments would not be constructive at this time, particularly where the piecemeal presentation of both NRP's pleadings as well as Defendants' dismissal arguments have contributed to a lack of clarity in the present litigation.

**C.    Notice of Claim**

The City Defendants argue that the remaining promissory estoppel and RICO claims must be dismissed because NRP failed to appropriately file a notice of claim as required by New York General Municipal Law § 50-i. (Docket No. 112-13 at 11-14.) This provision precludes, as relevant, the prosecution of an action or special proceeding against a city for "personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof" unless the plaintiff first files a notice of claim. See N.Y. Gen. Mun. Law § 50-i(1); § 50-e. Notice of claim requirements are strictly construed by New York state courts, and the failure to comply can result in the

dismissal of a complaint for the failure to state a cause of action. See Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

The City Defendants do not dispute that NRP filed a notice of claim in June 2010. They argue, however, that this notice is a nullity because, at that time, non-party Belmont Shelter Corporation had not yet assigned to NRP the rights to the claims raised in the present complaint. (See Docket No. 112-5 (assignment agreement between Belmont and NRP was executed in January 2011).) In support of this argument, these Defendants note that NRP has twice expressly relied on the assignment in the Second Amended Complaint. (Docket No. 112-13 n. 1 (citing Sec Am Compl ¶¶ 115, 130).) As NRP argues, however, this reliance was asserted in connection with the first and third causes of action alleging breach of contract, tortious interference with contract, and tortious interference with prospective economic advantage, all of which have already been dismissed. (See Docket Nos. 43, 68.) No reliance on Belmont's assignment of any right or claim is alleged with respect to the remaining two causes of action, nor does such reliance appear necessary.

To that end, in support of the promissory estoppel claim, NRP alleges that certain defendants:

> made clear and unambiguous promises to participate in the Project by, among other things, extending to the Project its usual Low Income Housing PILOT agreement, providing $1,600,000.00 of its HOME funds to assist in the construction and, in addition, providing fifty-one (51) buildable lots at a price no greater than $2,000 per buildable lot, and not to exceed a total price of $100,000.00.

(Sec Am Compl ¶ 125.) Thus, as pled, the only promises expressly alleged are the assertions made in the February 25, 2008 letter signed by "Thomas E. Wanamaker, Executive Director" that was addressed to Belmont, not NRP. Defendants' argument

6

that this claim is premised on the assignment is therefore understandable. It is not, however, meritorious. Even if the only promises sufficiently alleged are the assertions contained in the Wanamaker letter,[3] NRP has alleged that it became a part of the project's Development Team before this letter was issued. (Sec. Am. Compl. ¶¶ 21-23; see Docket No. 112-5 (NRP and Belmont entered into two agreements related to the project prior to the Wanamaker letter).) A third party to an unfulfilled promise – assuming one has been sufficiently stated – may under certain circumstances pursue a claim of promissory estoppel for damages suffered as a result of that party's reasonable reliance thereon.[4] See Henneberry v. Sumitomo Corp. of Am., No. 04 CIV. 2128 (PKL), 2005 WL 991772, at *5-6 (S.D.N.Y. Apr. 27, 2005); see generally Restatement, Contracts 2d, § 90; cf. MatlinPatterson ATA Holdings LLC v. Fed. Express Corp., 87 A.D.3d 836, 842, 929 N.Y.S.2d 571 (N.Y.A.D. 1st Dep't 2011), *lv denied*, 21 N.Y.3d 853 (2013).

Further, it is unclear on what basis the City Defendants are asserting assignment is necessary for NRP's viable pursuit of a RICO claim. These Defendants highlight that Belmont assigned to NRP all its rights to "claims referenced in [NRP's June 14, 2010] Notice of Claim." (Docket Nos. 112-5, 112-13 at 12-13.) Although the notice states that Defendants' action gave rise to "tort claims recognized under Federal law based on violations of the Hobbs Act and the Racketeer Influenced and Corrupt Practices Act

---

[3] NRP argues that these promises were also made directly to them. It has not, however, alleged or argued that Defendants made different or more specific promises than those in the Wanamaker letter.

[4] This Court is not suggesting, however, that NRP may pursue a promissory estoppel claim on behalf of the Development Team generally. Instead, NRP will need to establish that NRP Holdings and/or NRP Properties suffered a specific injury by reason of their actions or forbearance from action based on their reliance on Defendants' promises. See Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000) (no claim for promissory claim where plaintiff did not establish any concrete injury resulting from the failure to keep the alleged promise). Further, it must have been foreseeable to Defendants that NRP would act in reliance on the promise alleged. Id.

('RICO')," the fact that Belmont assigned any rights it had under these statutes does not establish that NRP was without standing to pursue a RICO claim in its own right. (Docket No. 45-4.) Dismissal of the remaining claims based on Defendants' assignment arguments is therefore unwarranted.

Moreover, even if NRP could not have pursued the remaining claims absent an assignment from Belmont, this Court agrees with NRP that a notice of claim is not necessary for either remaining claim. Initially, the notice provisions of New York's General Municipal Law apply only to tort claims, not causes of action sounding in contract. See Matteawan on Main, Inc. v. City of Beacon, 84 A.D.3d 1183, 1185, 924 N.Y.S.2d 139 (N.Y.A.D. 2d Dep't 2011); Finke v. City of Glen Cove, 55 A.D.3d 785, 786, 866 N.Y.S.2d 317 (N.Y.A.D. 2d Dep't 2008); see also N.Y. Gen. Mun. Law § 50-i(1). Under New York law, promissory estoppel is considered a quasi-contract claim. Kwon v. Yun, 606 F. Supp. 2d 344, 368 (S.D.N.Y. 2009) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, 516 N.E.2d 190 (1987)); Harrison v. Toptani Law Offices, No. 11CV6801–LTS–RLE, 2012 WL 694755, at *2 (S.D.N.Y. Mar. 2, 2012). Notice was therefore not required. Matteawan on Main, 84 A.D.3d at 1185.

With respect to NRP's federal civil RICO claim, the general rule is that state law notice of claim requirements apply only to state law claims in federal court. Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999) (citing Felder v. Casey, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988)). "On the other hand, when a *federal* action is brought in federal court, the court has discretion to borrow from state law when there are deficiencies in the federal statutory scheme." Hardy, 164 F.3d at 793 (emphasis in original). The City Defendants rely on Hardy, wherein the Second

Circuit recognized that "the absence of a notice-of-claim provision generally does not render a federal statute deficient," but nonetheless found that there was evidence that Congress intended that the notice requirement be applied to the federal claim before the Court. 164 F.3d at 793-94.

The federal statute at issue in Hardy was the Emergency Medical Treatment and Active Labor Act ("EMTALA"), which was enacted "to prevent 'patient dumping,' the practice of refusing to provide emergency medical treatment to patients unable to pay, or transferring them before emergency conditions are stabilized." 164 F.3d at 792 (alterations and citation omitted). This statute therefore permitted an individual who suffered personal harm due to a hospital's violation of EMTALA to recover damages in a civil action "under the law of the State in which the hospital is located." Hardy, 164 F.3d at 793 (quoting 42 U.S.C. § 1395dd(d)(2)). In light of this language, as well as EMTALA's intended purpose of supplementing, rather than supplanting, state medical malpractice law, the Second Circuit held that there was evidence of Congressional intent to incorporate the state law condition precedent of a notice of claim. Hardy, 164 F.3d at 794.

Thus, EMTALA simply provides an additional basis for recovery for a claim, the substantive nature of which sounds in state tort law – specifically, medical malpractice. See generally Corcoran v. New York Power Auth., 202 F.3d 530, 538 (2d Cir. 1999) (holding that state notice of claim requirement applied to federal Price-Anderson action because, among other things, the "substantive rules of decision are derived from state law"), *cert denied*, 529 U.S. 1109 (2000). Further, an EMTALA claim is expressly conditioned on compliance with state law, logically including any state law notice of

9

claim requirements. See 42 U.S.C. § 1395dd(d)(2). In contrast, 18 U.S.C. § 1964 affords an individual a civil remedy that is not available under state law: a private right of action for damages caused by the federal crime of racketeering.[5] The fact that the requisite predicate acts necessary to establish a RICO violation may include violations of state criminal law is of no moment; a RICO violation may just as likely be alleged and resolved without any reference to state law. See 42 U.S.C. § 1961(a) (defining "racketeering activity" to include, in addition to certain specific federal crimes, specified crimes "chargeable under State law and punishable by imprisonment for more than one year"); see generally Christian v. Town of Riga, 649 F. Supp. 2d 84, 90-91 (W.D.N.Y. 2009) (recognizing that, absent certain circumstances, criminal statutes do not provide private rights of action); Mathon v. Feldstein, 303 F. Supp. 2d 317, 325 (E.D.N.Y. 2004). Thus, unlike Hardy, here there is no "express deference" to state law, and this Court finds no evidence of congressional intention to adopt a state law notice of claim requirement.[6] Hardy, 164 F.3d at 794.

**D.    Failure to State a Claim of Promissory Estoppel**

The City Defendants further contend that NRP's promissory estoppel claim must be dismissed. Promissory estoppel is established by showing "(1) a promise that is

---

[5] Indeed, although later rejected, the wording of § 1964(c), which provides that an individual harmed by racketeering activity ". . . may sue therefor in any appropriate United States district court . . ." prompted several courts to initially conclude that state courts lacked jurisdiction to even hear a RICO claim. See Simpson Elec. Corp. v. Leucadia, Inc., 128 A.D.2d 339, 349, 515 N.Y.S.2d 794, 801 (1987) (collecting cases), *aff'd on other grounds*, 72 N.Y.2d 450, 530 N.E.2d 860 (1988); but see Tafflin v. Levitt, 493 U.S. 455, 460-62, 110 S. Ct. 792, 795-96, 107 L. Ed. 2d 887 (1990).

[6] Defendants' reliance on Linden v. President & Directors of Chase Manhattan Bank does not compel a different conclusion in this Court. 299 A.D.2d 216, 217, 749 N.Y.S.2d 247 (2002), *lv denied*, 99 N.Y.2d 509 (2003). There the state court held that a denial of a motion to amend the complaint to allege a RICO claim was proper because no such claim had been asserted in the requisite notice of claim. This conclusion, however, was presented without discussion, citation, or explanation, and this Court finds it neither controlling nor persuasive with respect to this federal claim.

10

sufficiently clear and unambiguous; (2) reasonable reliance on the promise by a party; and (3) injury caused by the reliance." MatlinPatterson ATA Holdings, 87 A.D.3d at 841-42; Henneberry, 2005 WL 991772 at *5-6; see N.Y.C. Health & Hosps. Corp. v. St. Barnabas Hosp., 10 A.D.3d 489, 491, 782 N.Y.S.2d 12 (N.Y.A.D. 1st Dep't 2004). Here, the City Defendants argue that the Second Amended Complaint fails to sufficiently allege two of these elements: a clear and unambiguous promise, and Plaintiff's reasonable reliance on that promise.

"Under New York law, there can be no 'clear and unambiguous promise' where the promise is explicitly made conditional or contingent on some future event." Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 510 (S.D.N.Y. 1994) (citing In re Gulf Oil/Cities Service Tender Offer Lit., 725 F. Supp. 712, 735 (S.D.N.Y.1989)). As noted above, the only specific promises referenced in NRP's latest pleading are those asserted in the Wanamaker letter: that "defendants Buffalo, BURA, Brown, Casey, and/or Smith" would extend to "the Project its usual Low Income Housing PILOT agreement, provid[e] $1,600,000.00 of its HOME funds to assist in the construction and, in addition, provid[e] fifty-one (51) buildable lots at a price no greater than $2,000 per buildable lot, and not to exceed a total price of $100,000.00." (Sec Am Compl ¶ 125.)

This Court finds that, on its face, the Wanamaker letter includes two contingencies. First, the commitment letter would not be valid unless "the developer is successful in securing a 2008 Low-Income Housing Tax Credit allocation to complete the project." (Sec Am Compl Ex A.) NRP sufficiently alleged (and Defendants do not dispute) that Belmont fulfilled this requirement on behalf of the Project in August 2008. (see Sec Am Compl ¶ 24 Ex B.) The second contingency is that "BURA is required to

meet all applicable Federal, State and local rules and regulations *before issuance of HOME funds* to eligible recipients." (Id. (emphasis added).) The letter does not define the rules or regulations that must be complied with prior to the release of the specified funds. Accordingly, even considered solely within the four corners of the letter, the release of HOME funds is not only contingent, but the terms of that contingency are ambiguous.

The remaining two "promises" – to extend a low-income PILOT agreement and to sell 51 buildable vacant lots – appear on their face to be unambiguous. The City Defendants nonetheless argue that any reliance on these statements was unreasonable because Defendants' fulfillment of such promises would be contingent on the approval of the City's Common Council. (Docket No. 112-13 at 31-32.) NRP counters that the Wanamaker letter "[b]y its terms" did not subject these promises to any approval condition, and further asserts that "there was never any reason to doubt that the Common Council would approve the Project's PILOT agreement or the sale of lots." (Docket No. 120-17 at 16-17.)

Although the issue of reasonable reliance may be resolved as a matter of law in certain situations, such as where a promise is *expressly* conditioned on the future execution of a written agreement, the question of whether a plaintiff reasonably relied on an alleged promise is generally a fact intensive inquiry. Levantino v. Starwood Mortgage Capital LLC, No. 15CV5349(DLC), 2015 WL 7430860, at *4 (S.D.N.Y. Nov. 20, 2015). " 'In assessing the reasonableness of a plaintiff's alleged reliance, [courts] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements

12

between them.' " Levantino, 2015 WL 7430860 at *4 (quoting Crigger v. Fahnestock & Co., 443 F.3d 230, 235 (2d Cir. 2006)); see generally Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir.1997) (issue of what constitutes reasonable reliance "is always nettlesome because it is so fact-intensive").

Here, although the Wanamaker letter did not expressly condition the PILOT agreement or sale of vacant lots on Common Council approval, NRP's sophistication as an award-winning multifamily development firm (Sec Am Compl ¶ 20) undermines any conclusion that it was not aware of the need to comply with this and other similar regulatory conditions prior to successful completion of the project. In contrast, however, it would certainly be foreseeable to Defendants that members of the Development Team, including NRP, would take action to move the project forward as a result of this commitment letter, including taking steps necessary to obtain project approvals from the Common Council and the City of Buffalo Planning Board. (Sec Am Compl ¶¶ 34, 63-65); see US W. Fin. Servs., Inc. v. Tollman, 786 F. Supp. 333, 343 (S.D.N.Y. 1992) (recognizing that there may be situations where it would be reasonable and foreseeable for sophisticated businesspersons to rely on promises they ordinarily would consider risky or uncertain); see also Bellen v. Weiser, No. 05 CIV. 8775 (PLK), 2007 WL 2979827, at *7 n. 6 (S.D.N.Y. Oct. 11, 2007) (permitting promissory estoppel claim where, despite some uncertainty, reliance was nonetheless reasonable). Any uncertainty created by the need for approval may therefore be more relevant to the issue of appropriate damages than to the dismissal of this claim as a matter of law on the present motion. See generally Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73-74 & n. 2 (2d Cir. 1989) (noting that success on a promissory estoppel

claim "sometimes entitles a party only to its out-of-pocket expenses, rather than to benefit-of-the-bargain damages"); Re-Source Am., Inc. v. Corning Inc., No. 07-CV-6048 CJS, 2008 WL 850231, at *9 (W.D.N.Y. Mar. 27, 2008) (same); Restatement, Contracts 2d, § 90 (any remedy granted for breach of a promise "may be limited as justice requires"). Further, the City Defendants also do not address the fact that a member of the Common Council, in addition to the City of Buffalo, is alleged to have participated in the conduct underlying this claim. (Sec Am Compl ¶¶ 11, 125.)

Resolution of this issue is further complicated by the lack of specificity as to what actions NRP Holdings and/or NRP Properties, as opposed to other members of the Development Team, took to their detriment in reliance on these alleged promises. See Rosoff v. Mountain Laurel Ctr. for Performing Arts, 317 F. Supp. 2d 493, 502 (S.D.N.Y. 2004) (determination of whether reliance was reasonable requires close focus "on both the alleged promise and the claimed reliance"). However, the City Defendants expressly state that they are not arguing that the Second Amended Complaint "fails to make any allegations that NRP relied on the alleged promises." (Docket No. 123-3 at 14.) This Court therefore declines to find that NRP's purported reliance was unreasonable as a matter of law at this stage of the proceedings.

### III. CONCLUSION

NRP's motion for leave to file a sur-reply is granted in part, and that brief will be considered to the extent that it addresses the applicability of New York's notice of claim requirement to the RICO cause of action, as well as Defendants' argument that if NRP's promissory estoppel claim fails, then the RICO claim must also be dismissed. NRP's

promissory estoppel claim is dismissed to the extent it is based on the alleged promise to provide $1,600,000 of its HOME funds toward the Project. Defendants' motions for judgment on the pleadings are otherwise denied.

## IV.    ORDERS

IT HEREBY IS ORDERED that NRP's motion for leave to file a sur-reply (Docket No. 125) is GRANTED in part and DENIED in part as stated above;

FURTHER, that Defendants' motions for judgment on the pleadings (Docket Nos. 112, 116) are GRANTED in part and DENIED in part as stated above.

SO ORDERED.

Dated: December  17, 2015
Buffalo, New York

                                                          <u>/s/William M. Skretny</u>
                                                           WILLIAM M. SKRETNY
                                            United States District Judge