UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**NRP HOLDINGS LLC and**
**NRP PROPERTIES LLC,**

                    Plaintiffs,

          v.

**CITY OF BUFFALO, BYRON W. BROWN, STEVEN**          Civ. No 11-CV-472(WMS)
**M. CASEY, DEMONE A. SMITH, RICHARD A.**
**STENHOUSE, BUFFALO JEREMIAH PARTNERSHIP**
**FOR COMMUNITY DEVELOPMENT, INC., CITY OF**
**BUFFALO URBAN RENEWAL AGENCY, JOHN DOES 1-**
**10, and JOHN DOE COMPANIES 1-5,**

                    Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO THE CITY DEFENDANTS' MOTION TO**
**STAY DISCOVERY AND FOR A PROTECTIVE ORDER**

WEBSTER SZANYI LLP
Attorneys for Plaintiffs
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800

## PRELIMINARY STATEMENT

NRP Holdings LLC and NRP Properties LLC ("NRP") file this Memorandum of Law in opposition to the motion to stay discovery pending resolution of their summary judgment motion and for a protective order filed by Defendants City of Buffalo, Mr. Brown, and Mr. Smith (the "City Defendants") (*See* Dkts. 160 and 161).

The City Defendants' motion to stay discovery lays bare what their strategy has transformed into since terminating their former counsel this summer.  Their objective is to derail remaining discovery. As NRP represented to this Court on October 20, 2016, this consists of a limited number of depositions and document cleanup that can be completed in a 60 day time frame absent interference by the City Defendants.[1]  When complete, expert discovery followed by dispositive motions can occur in the usual course, and this now more than five year old case can be trial ready.

The City Defendants' conduct, including its failure to appear at the October 20, 2016 conference prepared to address matters previously ordered by the Court, warrant rejection of its motion out of hand and, in addition, consideration of appropriate Rule 37 relief.  Even worse, the City Defendants' motion fails to offer a single case remotely suggesting a stay is appropriate - much less required - where a summary judgment motion on immunity grounds is made on the eve of a fact discovery deadline after the parties have engaged in discovery on all case issues. Indeed, federal law is to the contrary.  NRP would be severely prejudiced if this five-year-old

---

[1] After numerous opportunities by the Court to explain what discovery they needed, the City Defendants admitted that they were unaware of any issues concerning NRP's responses to interrogatories or document production and had no intention to serve new interrogatories or document demands.  They also stated that they had no intention to take depositions, although they partially amended that admission with a later passing comment that they intended to take depositions of unspecified NRP principals without even identifying a single specific person that they wished to depose.  (Exh. A, October 20, 2016 Conference Transcript, pp. 59-62; 64-69.)

case is delayed for years as requested by the City Defendants in order to allow them to isolate the immunity issue and litigate that one issue through all appellate levels.

The City Defendants' alternative request for a protective order should be denied because they waived their right to challenge the topics in NRP's notice pursuant to Rule 30(b)(6). Regardless, NRP was and is prepared to confer in good faith concerning those topics if the City Defendants can spare the time needed to do so.  As the Court stated during the October 20 2016 conference, its involvement should not be necessary in this issue.  (Lane Decl. Exh. A, October 20, 2016 Conference Transcript, pg. 34.)

## Statement of Facts

The facts relevant to these motions are set forth in the accompanying Declaration of Thomas S. Lane, dated November 4, 2016 and exhibits thereto.

## Argument

**I.      The City Defendants' Claim that They First Learned The Basis Of NRP's RICO Claim in the Fall of 2015 Is Meritless**

At the October 20, 2016 hearing, this Court provided the City Defendants countless opportunities to explain why the motion for summary judgment on immunity grounds and the stated intention to file this motion for a stay was made more than five years into the litigation with only sixty days remaining to complete fact discovery.  (Lane Decl., Exh. A, October 20, 2016 Conference Transcript, pp. 59-62; 64-69.)

Initially, the City Defendants refused to explain to the Court why former counsel was terminated and the reasons they were hired.  (Lane Decl., Exh. A, October 20, 2016 Conference Transcript, pg. 7.)  As such, it may be assumed that the failure to move on immunity grounds

was not due to any incompetence or inadequate representation by the former counsel.  Indeed, the City Defendants were represented by two very capable attorneys who have served for years in the Western District of New York.

The Court then pressed the City Defendants for any other reason for the delay in making a motion, a motion that if meritorious is generally made at the inception of a case.  In response, the City Defendants concocted an irrational story.  On one hand, they represented that they were new to the case, had 40 boxes to review; it was the most extensive document case they ever experienced; and they simply were unaware of the immunity grounds when they filed the motion to extend discovery deadlines in August 2016.  Less than sixty days later, and only after the motion was denied, they located the eureka moment.  According to them, NRP disclosed key facts for the first time in the Fall of 2015.  (Lane Decl. Exh. A, October 20, 2016 Transcript, pg. 18.)  Key facts that had no apparent impact on former counsel.  As it turns out, the key facts were the claim that the individual defendants killed the project by refusing to honor the promises made to NRP at the inception of the project – to wit the conveyance of lots and the PILOT agreement. (Dkt. 161, pg. 5, n. 1.)

The basis for NRP's RICO and promissory estoppel claims were made explicit at every step in this case, including in a pre-litigation 50-h examination conducted by City Attorney Mr. Ball; NRP's complaints; response to interrogatories; and RICO Case Statements.  (Lane Decl., ¶¶ 11-12.)  Judge Skretny referred to those broken promises in each of his decisions.  (Dkts. 43, 68, 132.)

While claiming that they needed time to review the file and were not in a position to advise this Court of their needs to complete discovery, the City Defendants were somehow able

to file a motion for summary judgment consisting of four affidavits or declarations, 397 pages of exhibits, and an exhaustively cited 25-page memorandum of law.

The City Defendants have acted in bad faith, both in terms of representations made and not made to this Court in their first motion to stay discovery (Dkt. 142) concerning the failure to disclose their intention to file a summary judgment motion, seek a stay in support of that motion, and thereby derail the remaining fact discovery needed to ready this case for the next phase. They also ignored this Court's Order to appear at the October 20, 2016 hearing prepared to explain remaining fact discovery needs.  They make questionable legal arguments that a stay is automatic when a summary judgment motion based on immunity is made on the eve of the close of discovery without offering a single case where a stay was granted in similar circumstances. And they refuse to spend the time necessary to meet and confer in good faith concerning a Rule 30(b)(6) notice regarding topics that have been in play for months and years.  This is precisely the type of conduct that demands consideration of the full panoply of Rule 37 sanctions.

## II.   Discovery Was Not Stayed By The City Defendants' Motion for Summary Judgment

Counsel for the City Defendants unequivocally (and incorrectly) represented to this Court that their motion for summary judgment <u>automatically</u> stayed discovery. (Lane Decl. Exh. A, October 20, 2016 Court Conference Transcript, pp. 40-42, pg. 83.)  Their motions for summary judgment and to stay discovery cite no authority in support of this proposition.[2]

It is well settled that a motion for summary judgment pursuant to Rule 56 does not automatically stay discovery.  *Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, No. 08CV561S F, 2009 WL 3191464, at *3 (W.D.N.Y. Sept. 30, 2009); *Fantastic Graphics Inc. v.*

---

[2] The City Defendants implicitly concede there is no such automatic stay of discovery - if there was, why even file the instant motion?

*Hutchinson*, No. 09-CV-2514(LDW)(ETB), 2010 WL 475309, at *3 (E.D.N.Y. Feb. 8, 2010)

("The mere filing of a dispositive motion does not warrant the issuance of a stay under Rule

26(c).")

    **A.**    **Courts Have Denied a Stay of Discovery When a Motion for Summary Judgment Based on Immunity Is Filed After the Parties Have Engaged in Discovery on All Case Issues**

Demonstrating that a stay is unjustified where a defendant's summary judgment motion

on immunity grounds is made after discovery on all case issues, courts have routinely denied

such requests.   In *Lugo v. Alvarado*, the court affirmed an order denying a stay of discovery

during the pendency of an official's motion for summary judgment on immunity grounds.  819

F.2d 5, 6–7 (1st Cir. 1987).   The court emphasized the official's conduct in participating in

litigation and making discovery demands prior to invoking immunity as a shield from discovery:

> Considering appellant's conduct prior to filing its motion to stay discovery, as well as thereafter, the mere filing of the motion to stay, to say nothing of the taking of this appeal, <u>demonstrates considerable *chutzpa*, bordering on bad faith abuse of the processes of both the district court and this court</u>. In fact it could very well be argued that appellant's use of discovery against appellee estops him from raising any limited right that he may have had under *Mitchell* and *Harlow* to restrict the scope of appellee's discovery against him. <u>Such estoppel arises not only from appellant's engaging in active discovery against appellee but also in his acquiescence to the discovery schedule established by the district court after consultation with the parties.</u>

*Id.* at 6–7 (internal citations omitted).[3]

Similarly, in this case the City Defendants have engaged in extensive discovery,

including numerous interrogatories, depositions, and documents produced by all parties.  (*See*

Lane Decl. Exh. A, October 20, 2016 Conference Transcript, pp. 7-8 (City's counsel stating this

---

[3] The court also noted that the discovery sought was relevant, in part, to respond to the immunity motion.  *Id.*

case was "the largest volume of materials that I've ever encountered… Forty boxes is the file.")) They have acquiesced in the discovery schedule established by the Court and, in fact, <u>even moved to extend the discovery deadlines</u> or joined in such requests.  (Dkts. 69; 78; 109; 126; 133.)  As such, the summary judgment motion may not be used to derail the completion of all fact discovery at this stage of the case.

The City Defendants' reliance on *Kennedy v. City of Cleveland* is misplaced.   In *Kennedy*, the court <u>dismissed as untimely</u> the officials' appeal denying their motions to dismiss based on immunity.  797 F.2d 297, 298 (6th Cir. 1986).  The court stated that immunity is not a jurisdictional defense, but one which must be properly asserted or else waived.  *Id. at* 300 ("We also note that immunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded; it is not a doctrine of jurisdictional nature that deprives a court of the power to adjudicate a claim.")  The court noted that "the failure to plead immunity may, at different stages of the litigation, work either a partial or complete waiver.  Hence, we conceive it possible that one might assert immunity as an affirmative defense to the complaint and thus as an affirmative defense to ultimate liability without putting in issue his or her right to be free of subjection to trial or, before that, to the burdens of discovery."  *Id.*  Importantly, the court observed that a trial court may limit the timing and manner in which a defendant may move to dismiss based on immunity and/or the impacts of such a motion on discovery:

> …to maintain control of his docket and to assure the expeditious advancement of cases, it is entirely proper for a trial judge in such cases as this to establish a time for the filing of motions challenging the sufficiency of the pleadings, during which discovery will be stayed unless good cause can be shown to the contrary.  Plainly, <u>if the trial judge places reasonable limits upon the time within which to challenge the sufficiency of the pleadings, the failure of the defendant to take advantage of the opportunity can and should normally work a waiver of the right,</u> at least absent some appealing reason for making an exception. In like fashion

judges have historically been allowed to limit both the extent and the time for taking discovery. Limitations upon discovery are a common and necessary part of limiting the cost to the parties and assuring the orderly progression of the case to trial. Thus, it is also entirely proper for courts in cases such as this, to fix reasonable times for the completion of discovery and thereafter reasonable times in which motions for summary judgment are to be filed. Given this, it seems logical to us also that <u>the trial judge retains discretion not only to set cut off dates for [discovery] but to cut off motions for summary judgment, even those which may challenge the plaintiff's right to go to trial on the basis of an absolute or qualified immunity</u>. The quid pro quo is obvious: in exchange for the defendant's right to interrupt the judicial process, <u>the court may expect a reasonable modicum of diligence in the exercise of that right.</u>

*Id.* at 300–01 (internal citations omitted) (emphasis added).

As the court stated in *English v. Dyke*, in language omitted by the City Defendants from their Memorandum of Law, "a defendant who fails to timely assert the [immunity] defense prior to discovery may <u>waive the right to avoid discovery</u> but may nonetheless raise the issue <u>after discovery on summary judgment or at trial</u>. 23 F.3d 1086, 1090 (6th Cir. 1994) (emphasis added).

NRP's claims against the City and BURA provide further grounds for denying a stay. The basis for the requested stay - alleged legislative and qualified immunity - have been asserted only with respect to the RICO claims against Mayor Brown and Mr. Smith. Defendant Casey has made no such application. The court in *Becker v. City of Evansville* declined to stay discovery pending resolution of the individual defendants' dispositive motions. No. 3:12-CV-182-WGH-TWP, 2014 WL 1706390, at *2 (S.D. Ind. Apr. 29, 2014). The court noted that, regardless of how the individual defendants' motions would be resolved, there were remaining claims against the municipal defendants. The court reasoned that "no resolution of the qualified immunity question would relieve the Defendants of any discovery burden," and therefore found that a stay of discovery was unwarranted. *Id.*

7

The decision in *Collins v. Aguirre* underscores why a stay of discovery is improper on a motion for summary judgment, as contrasted with a stay in connection with a motion to dismiss. No. 06-C-657-C, 2007 WL 5356662, at *1 (W.D. Wis. Feb. 8, 2007).   The court noted that discovery is usually not required on a motion attacking the pleadings.  *Id.*  "If, however, qualified immunity is to be determined in the context of summary judgment, then matters outside the pleadings may be considered.  In that case, <u>discovery must be allowed on issues that a defendant puts into play in his summary judgment motion</u>."  *Id.*  Denying the requested stay, the court emphasized: "The defendants cannot have it both ways. If they would like a judgment on the pleadings, then they may have a complete discovery stay. But if the defendants would like the court to find facts in a Rule 56 determination, then they must submit to discovery on the material facts that they are proposing the court accept as undisputed."  *Id.*

NRP should be permitted to complete its discovery so that it is prepared to address the factual issues raised by the City Defendants on their motion for summary judgment.[4]   The City Defendants have had multiple swings at the pleadings.   Their current Rule 56 attack - though they claim relies purely on legal grounds - requires examination of extensive factual material which is the subject of ongoing discovery.   By way of example only, discovery is needed to further establish that the promises made to NRP were clear and unambiguous and that NRP's reliance on these promises was reasonable.   Further, the qualified immunity argument raises

---

[4] Because these issues encompass all of the conduct alleged by NRP, there should be no limitation on the limited remaining discovery.  *See Collins*, WL 5356662, at *1 (limiting discovery to immunity issues, but observing "it is hard to envisage any topics that would be off limits. So, although I am granting in part and denying in part the motion to stay, for all practical purposes I am denying the motion.")

factual questions about what conduct the defendants engaged in and whether it was legislative, administrative, and/or objectively reasonable to believe this conduct did not violate a clearly established right.   The actual conduct, however, is hotly disputed by the parties and requires further discovery.  (*See* Lane Decl., ¶¶ 11-12.)

> **B.      Defendants' Authorities Do Not Concern a Stay or Are Limited to Situations Where the Immunity Issue Is Raised As A Threshold Matter At the Inception of Litigation**

The City Defendants' reliance on *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), *Pearson v. Callahan*, 555 U.S. 223 (2009), and *Hunter v. Bryant*, 502 U.S. 224 (1991) is misplaced.  None of those cases concerned a request for a stay of discovery pending resolution of a dispositive motion on immunity grounds.   In *Harlow*, the dispositive motion came after the conclusion of discovery.  457 U.S. at 802-03.

The City Defendants quotation from *Anderson v. Creighton*, 483 U.S. 635, 656 (1987) mischaracterizes the holding in that decision and the significance of the quoted language.  The City Defendants fail to advise the court that the quotation from Anderson is from the dissent. The majority decision dismissed a claim concerning an alleged unreasonable search. The Court held that the official was entitled to qualified immunity because a reasonable officer could have believed the search comported with the Fourth Amendment.  *Id.* at 646.  Significantly, the ruling concerned the official's motion to dismiss or for summary judgment filed following removal to Federal District Court - i.e., prior to any discovery.  *Id.* at 637.  The dissent's discussion of *Harlow* did not concern whether a stay of discovery should have issued.  Rather, it was to observe that – in the case of certain claims of qualified immunity such as at issue in *Harlow* – that the *Harlow* court implicitly assumed that many immunity issues could be determined as a matter of law before discovery.  *Id.* at 651.  The dissent in *Anderson* believed that the motion should have been <u>denied</u> and would have permitted discovery to proceed.

Likewise, *Kennedy* did not concern a stay of discovery.   Rather, the motions were filed well after discovery was completed and following a mistrial.   797 F.2d at 302-03.

This case is simply unlike those cited by the City Defendants.   This is a case where extensive discovery on all case issues has been conducted for several years by all parties.   The parties were on the verge of completing fact discovery until the City Defendants implemented their most recent attempt to throw the brakes on discovery.   This Court has the authority to ensure a just, speedy, and efficient resolution of this matter, and should therefore deny the City Defendants' untimely motion to stay.  *See Kennedy*, 797 F.2d 297; *Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (denying the motion to stay discovery pending resolution of dispositive motion because it would "effectively impede the just and speedy administration of the progress of [the] lawsuit.").

The City Defendants' reliance on *Levy v. Town of North Hempstead*, is misplaced.   No. 12-CV-1777 JFB AKT, 2013 WL 5276559, at *1 (E.D.N.Y. Sept. 18, 2013).   As the court's decision resolving the dispositive motions make clear, the motions were filed prior to any discovery.  *Id.*   Moreover, the motions by the individual defendants asserting immunity were 12(b)(6) motions - not summary judgment motions, as suggested by the City Defendants.  *Id.* Likewise, the motion in *Johnson v. N.Y. Univ. Sch. of Educ.*, was a motion to dismiss made two months after the complaint was served.   No. 00CVI8117WKRLE, 2002 WL 1144634, at *2 (S.D.N.Y. May 23, 2002), *report and recommendation adopted,* No. 00CV8117(WK)(RLE), 2003 WL 21433443 (S.D.N.Y. June 16, 2003); *See also King v. City of N.Y.*, No. 12-CV-2344 NGG RER, 2013 WL 2285197, at *1 (E.D.N.Y. May 23, 2013) and *King v. City of N.Y.*, No. 12-CV-2344 NGG RER, 2014 WL 4954621, at *1 (E.D.N.Y. Sept. 30, 2014) (stay concerned 12(c) motion to dismiss); *Gomes v. ANGOP, Angola Press Agency*, No. 11-CV-0580 DLI JO, 2012

WL 3637453, at *1 (E.D.N.Y. Aug. 22, 2012), *aff'd sub nom. Gomes v. ANGOP*, 541 F. App'x 141 (2d Cir. 2013) (12(b) motions to dismiss).

As this Court is aware, there was no discovery on any issues in this case until the City Defendants' Rule 12(b)(6) motion was resolved by Judge Skretny.  This Court held the initial Rule 16 conference afterwards and the parties proceeded to full and unlimited discovery on all case issues.  There was no request by the City Defendants to limit discovery to their immunity defense, an issue which, if valid, could have and should have been raised at the Rule 16 conference.  The above authorities are plainly irrelevant to the issues raised on the present motion concerning a request to stay discovery on the eve of the deadline for fact discovery.

## C.   The Equities Favor Denial of the City Defendants' Motion for a Stay

The foregoing points demonstrate that the City Defendants' motion should be denied because their premise that the filing of a summary judgment motion on immunity grounds triggers a stay regardless of when that motion is filed is incorrect and should be rejected.  A balancing of the respective interests in the completion of the remaining fact discovery is another factor that supports the denial of the motion.[5]

---

[5] "A request for stay of discovery pursuant to Fed.R.Civ.P. 26(c) requires a showing of good cause and is within the sound discretion of the court." *Steuben Foods*, 2009 WL 3191464, at *3. Stays of discovery are strongly disfavored.  *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988) (noting that discovery stays "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.")  "[D]iscovery should precede consideration of dispositive motions when the facts sought to be discovered are relevant to consideration of the particular motion at hand." *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979).

### 1.      NRP Would be Prejudiced By a Stay

The events central to NRP's allegations concerning the East Side II project took place in 2007-2009 - now more than seven years ago.  Mayor Brown has already found it convenient to have memory lapses in response to countless questions at his deposition.  Key documents requested by NRP, including the executive items generated and administratively filed with the Common Council, have apparently been lost to the mists of time.

If the City Defendants have their way, discovery in this matter could grind to a halt indefinitely.  A decision concerning the pending summary judgment motion could take months - if not longer - to resolve.  The City Defendants have promised an appeal if their motion is denied which could take years to resolve.  Permitting an indefinite stay of discovery would unquestionably undermine NRP's ability to obtain needed evidence and its right to an expeditious resolution of this matter.

The remaining fact discovery can and should be completed in 60 days.  Thereafter a period should be provided for expert discovery, putting the parties in a position to file dispositive motions in less than six months.  By comparison, the City Defendants' plan would adjourn fact discovery for one to two years awaiting a trial court decision and then appellate process.

### 2.      Mayor Brown and Mr. Smith Would Not Be Burdened

The City Defendants fail to address the breadth of remaining discovery and the burden that the <u>individual</u> defendants would bear in responding to it.  Simply put, any burden upon Mayor Brown or Mr. Smith would be minimal, if any.  They have already been deposed, and it is unlikely that they would need to be significantly involved in preparation for the depositions of the City or BURA designees.  The City Defendants' suggestion that the individual defendants – Mayor Brown and Mr. Smith – would be the City's 30(b)(6) designees is off base.  (Dkt. 161, pg.

7 (stating that the City's 30(b)(6) designees "would necessarily include the Individual Defendants…")   It is precisely because of Mayor Brown's and Mr. Smith's disclaimed knowledge that the remaining depositions are so vital to unveiling the troubling truth.

> **3.** **The Lack Of Merit to The Immunity Defenses Is Yet Another Reason Why A Stay Should Not Be Issued**

The City Defendants' summary judgment motion does not rely on any facts unavailable at the inception of this case or any new cases decided since their previous motions to dismiss. Both the City Defendants and BURA were represented by eminently competent counsel – if these arguments had merit, they would have been raised years ago.  It is fair to assume that they would not have subjected their clients to years of discovery on all case issues if there was a dispositive legal ground enabling them to short circuit discovery in this case and obtain a final judgment in their favor.

Instead, the City Defendants' new counsel advances arguments that simply rehash arguments previously made and rejected.  Concerning immunity and promissory estoppel, the City Defendants do not rely on any change in existing law.  Further, Judge Skretny has addressed countless cases involving immunity defenses and in neither of his decisions addressed whether that doctrine warranted dismissal of the RICO or promissory estoppel claims.  To the contrary, he specifically held that these claims against the public officials in this case stated valid claims and should proceed.

Once the threads are pulled from the City Defendants' arguments, its becomes clear that this case will survive their motion for summary judgment.  Therefore, a stay of discovery would serve no purpose but to delay resolution of this matter and risk losing more valuable evidence to the passage of time.

The merits of the City Defendants' summary judgment motion will be addressed in full at the appropriate time, once a briefing schedule concerning the summary judgment motion has been set.   However, by way of example only, the City Defendants make several errors undermining their motion.[6]

Importantly, The City Defendants do not contend in their summary judgment motion that the alleged acts do not state a cause of action under RICO; nor do they contend that discovery has exonerated the individual defendants concerning NRP's RICO claims.

The City Defendants narrowly characterize the relevant conduct in order to fit neatly into their claimed immunity defense.   But the relevant conduct extends <u>far beyond</u> simply refusing to submit the project for approval to the Common Council.   The allegations in the Second Amended Complaint, as amplified by discovery to date, establish a host of unlawful conduct, including, but not limited to, the fact that the subject project failed because the Mayor was "sick of seeing those … white developers on the East Side with no black faces represented."   (Dkt. 44, Second Amended Complaint, ¶ 73.)   The relevant conduct included the promises set forth in the February 25, 2008 Wanamaker letter, <u>and</u> promises which were made before and after the letter was sent.   (Dkt. 45; *see also* Dkt. 60-3, Declaration of Mr. Pechota, ¶¶ 3-8.)   The conduct also included the continued and repeated public commitments by the City in support of the project, resulting in commitments from the New York State Division of Housing and Community Renewal ("DHCR") for the necessary Low Income Housing Tax Credits; and loans from the New York State Housing Trust Fund Corporation.   (*See* Dkt. 22-7, December 23, 2011 Amended Rico Case Statement.)   The relevant conduct included the extortionate demands made by

---

[6] We would be pleased to supplement with a more fulsome briefing concerning the merits of the City Defendants' motion for summary judgment, should the Court so desire.

defendants that NRP must include Rev. Stenhouse or affiliated organizations in the project for the project to proceed, and demands that NRP must "make Stenhouse happy." (*Id.*) The relevant conduct included other projects where the City's support was conditioned on finding a role for and/or the payment of monies to Rev. Stenhouse and affiliated organizations and/or other allies of the administration. (*Id.*) The conduct consists of violations of the Hobbs Act, 18 U.S.C. § 1951 and New York Penal Law § 200 *et seq.*, 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

Even so, courts have denied legislative immunity in cases concerning activity such as council consideration of third party projects. For example, in *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, the court denied the municipal defendants' claim of legislative immunity, holding that the council's resolution awarding a contract concerning installation of cable was administrative and not legislative. 502 F. Supp. 1118, 1136 (W.D. Pa. 1980). Likewise, in *Visser v. Magnarelli,* the court held that the decision to deny rehiring of a former city employee, even though by vote of city council, was an administrative function and not entitled to legislative immunity. 542 F. Supp. 1331 (N.D.N.Y 1982).

Concerning qualified immunity, the City Defendants cite to no case law standing for the proposition that the conduct alleged does not violate a clearly established right. Rather, they rely on a misreading of the Court's discussion concerning NRP's due process claim - this discussion was limited to the property interests required to sustain a due process claim; not the rights implicated by NRP's RICO claim. (Dkt. 43, pp. 29-30.)

This Court has previously held that the conduct alleged states a claim for RICO (Dkt. 43), relying on *DeFalco v. Bernas*, which similarly held that government officials can be liable under RICO. 244 F.3d 286, 305 (2d Cir. 2001).

The City Defendants arguments concerning promissory estoppel are virtually identical to those previously made and rejected by the Court.  (*See* Dkt. 112-13, Memorandum of Law in Support of Motion to Dismiss, pp. 22-25;[7] Dkt. 26-6, Memorandum of Law in Support of Motion to Dismiss, pg. 10-11[8].)   This Court held that the promises to extend the PILOT agreement and transfer lots "appear on their face to be unambiguous."  (Dkt. 132, pg. 12.)  The City Defendants renewed attack on the unambiguity of these promises is barred by the law of the case and could be considered frivolous.

The Court rejected the City Defendants' prior attempt to argue that NRP did not reasonably rely on these promises because "fulfillment of such promises would be contingent on the approval of the City's Common Council."  (*Id.*)  The Court noted "the issue of reasonable reliance may be resolved as a matter of law in certain situations, such as where a promise is *expressly* condition on the future execution of a written agreement, [but] the question of whether a plaintiff reasonably relied on an alleged promise is generally a fact intensive inquiry."  (*Id.*)  The Court noted that "it would certainly be foreseeable to Defendants that members of the Development Team, including NRP, would take action to move the project forward as a result of

---

[7] "…the Wanamaker Letter fails to make a clear and unambiguous promise for the sale of fifty-one buildable lots and the PILOT agreement.  As noted above, both the PILOT agreement and the transfer of fifty-one buildable lots were contingent, as a matter of law, upon the approval of the Common Council…  Thus, as a matter of law, there was no clear and unambiguous promise either to enter into a PILOT agreement of to transfer fifty-one buildable lots…

Because the PILOT agreement and the transfer of fifty-one lots were contingent upon the approval of the Common Council, NRP could not, as a matter of law, have reasonably relied on the City's alleged promise…"

[8] "Courts have repeatedly rejected efforts to use equitable theories such as estoppel to circumvent the fact that a municipal contract is unenforceable."  The City argued in its initial motion to dismiss that estoppel is unavailable in the context of un-executed contracts and to circumvent statutory requirements concerning municipal contracts.

this commitment letter, including taking steps necessary to obtain project approvals from the Common Council and the City of Buffalo Planning Board." (*Id.*)

Mayor Brown testified that the Wanamaker Letter did create affirmative obligations on the part of both NRP and the City.  He testified that such a letter required both sides to actively pursue efforts in support of the Project – as both sides did.  (Lane Decl., Exh. D, Brown Deposition, pp. 134-35; 227-30.)  Mayor Brown admitted that the Development Team could rely on the Wanamaker Letter and "feel that they were receiving support from the City, that it made sense for them to continue to move toward a project, that it made sense for them to do everything that they were supposed to do to try to complete a project." (*Id.* at 228-29) (emphasis added).[9]

The City Defendants again attempt to cast this issue as a black and white question of law. The Court has rejected this, and should do so again: discovery has demonstrated that the defendants expected NRP to rely on their promises and NRP reasonably relied on them.

**III.    The City's Motion for a Protective Order Concerning The City's Deposition Should be Denied: All Objections to the Notice Should Be Deemed Waived As Untimely And Due to the City's Failure to Properly Meet and Confer; Alternatively the City Should Be Directed to Meet and Confer in Good Faith**

The City has waived any objections to the topics set forth in NRP's deposition notice by their inordinate delay and by failing to meet and confer in good faith.  The sole meeting concerning NRP's deposition notice to the City was a 24-minute call on October 13, 2016. (Lane Decl, ¶ 29.)  The City's counsel repeatedly refused to discuss its specific objections and refused NRP's counsel's offers to make specific proposals to modify the topics to address the

---

[9] The Wanamaker letter simply re-stated promises made before and after the letter was sent. Thus, the letter is not the sole basis for these promises.  (*See* Dkt. 60-3, Declaration of Mr. Pechota, ¶¶ 3-8.)

City's concerns.  (Lane Decl, ¶ 29.)[10]  The City's counsel suggested that the City would respond to rewritten notice and produce a designee.  (Lane Decl, ¶ 30.)  The City had no such intention, as evidenced by the summary judgment motion it filed the next day.  A motion the City incorrectly believes automatically stayed discovery.

Fed. R. Civ. P. Rule 26(c) requires that a party seeking a protective order must certify they have "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  The City's counsel refused to discuss its specific objections and refused to designate a representative to testify unless the entire notice was withdrawn and rewritten in some unspecified manner.  (Lane Decl., ¶ 30.)  This alone is sufficient to warrant a finding of bad faith.  The City's lack of good faith warrants a finding that it has waived any objections to the deposition notice, and certainly a denial of the City's motion for a protective order as premature.

Moreover the City has waived any objections to the topics set forth in the deposition notice by its extraordinary delay and waiting until the eve of its deposition to serve objections. "Courts have held that a failure to respond or object to a discovery request in a timely manner waives any objection which may have been available."  *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 236 (W.D.N.Y. 1998) (finding that failure to respond to discovery demand within 90 days resulted in waiver of any objections).  The City has twice failed to respond timely to NRP's notice - first delaying over a year before serving any objections to the January 6, 2014 notice; then stalling 119 days before objecting to the topics set forth in the June 15, 2016 notice (which have remained unchanged since) on the eve of its deposition.  Although

---

[10] We specifically offered to limit the time frame for topics, and to provide discrete details concerning other projects that we wished to establish, and were prepared to discuss additional reasonable clarifications / modifications.  (Lane Decl. ¶ 29.)

substitution of counsel and the discussions concerning mediation and a discovery stay might excuse such a delay, the City failed to respond to our repeated requests for timely objections in September.  These requests were made precisely to avoid this situation - a contrived eleventh hour request for a protective order.  Furthermore, it is clear the delay was motivated not by any excusable hardship, but because the City was focusing on yet another motion seeking dismissal of NRP's claims.  It had no intention to produce a designee.  Accordingly, the Court should find the City's objections waived.  Alternatively, the Court could order the City to meet and confer in good faith.  (Lane Decl., ¶¶ 28-30.)

### IV.  The City Defendants Should Be Directed to Pay NRP's Costs and Fees Incurred in Responding to the City Defendants' Motion to Stay and for a Protective Order

The City Defendants failed to mention their intention to file a summary judgment motion and seek an automatic stay as part of their prior motion to extend discovery deadlines.  In an attempt to achieve that result by other means – an end run around this Court's Order – they have filed a motion for summary judgment and this motion for a stay without any case supporting such relief.  They further ignored this Court's Order by failing to state their remaining discovery needs at the October 20 conference.  Under the circumstances, this is the rare case where NRP is entitled to an Order denying the motion for a stay and/or protective order; requiring the City Defendants to cooperate with NRP's stated needs to complete remaining fact discovery in 60 days from decision; and awarding attorneys' fees, costs and other relief.  *See* Fed. R. Civ. P. Rule 26(c)(3); Rule 37(a)(5)(B) and (C).

## CONCLUSION

For the foregoing reasons, the City Defendants' motion for a stay should be denied in all respects, and costs and fees should be awarded to NRP.  Concerning the deposition notice to the City, the City's objections should be deemed waived or, instead, the City should be directed to meet and confer in good faith.


DATED:        November 4, 2016

**WEBSTER SZANYI LLP**
Attorneys for Plaintiffs


By:   *s/Thomas S. Lane*

        Thomas S. Lane
        Nelson Perel
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
tlane@websterszanyi.com
nperel@websterszanyi.com