UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**NRP HOLDINGS LLC and
NRP PROPERTIES LLC,**

                           Plaintiffs,

      v.

**CITY OF BUFFALO, BYRON W. BROWN, STEVEN
M. CASEY, DEMONE A. SMITH, RICHARD A.
STENHOUSE, BUFFALO JEREMIAH PARTNERSHIP
FOR COMMUNITY DEVELOPMENT, INC., CITY OF
BUFFALO URBAN RENEWAL AGENCY, JOHN DOES 1-
10, and JOHN DOE COMPANIES 1-5,**

                         Defendants.

Civ. No 11-CV-472(WMS)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO CITY DEFENDANTS' SUMMARY JUDGMENT MOTION

**WEBSTER SZANYI LLP**
Attorneys for Plaintiffs
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1

STATEMENT OF FACTS .........................................................................2

SUMMARY JUDGMENT STANDARD ..........................................................2

ARGUMENT ........................................................................................3

   I- Defendants Brown and Smith are Not Entitled to Legislative Immunity ..................3

      A – Defendants' Conduct was Not "Legislative" in Nature ......................................4

      B – Bribery/Extortion is Not "Legislative" in Nature .................................................9

      C – The Cases Cited By Brown and Smith Are Inapposite ....................................10

      D – NRP Asserts No RICO Claims Against the City ...............................................11

   II – Defendants Brown and Smith Are Not Entitled to Qualified Immunity.................12

   III – Questions of Fact Bar Summary Judgment on NRP's Promissory
      Estoppel Claim................................................................................................15

      A – The Promises Were Made Multiple Times in an Unambiguous
         Fashion and Defendants Expected NRP to Rely Upon the Promises ...............15

      B – Defendants Do Not Address Plaintiffs' Claims That They
         Acted Wrongfully .......................................................................................16

      C – Plaintiffs Can Establish and/or Raise Issues of Fact on Each Element
         Of the Promissory Estoppel Claim .................................................................18

      D – Defendants' Cases are Distinguishable or Not Applicable ..............................21

   IV – Alternatively, Further Discovery Is Warranted .......................................................23

      A – The City Defendants Have Waived Immunity Arguments at This Stage ..........23

      B – Further Discovery Is Warranted To Oppose the City Defendants' Motion ........24

CONCLUSION.......................................................................................25

## PRELIMINARY STATEMENT

NRP Holdings LLC and NRP Properties LLC ("NRP") file this Memorandum of Law in opposition to the motion for summary judgment filed by Defendants City of Buffalo, Byron W. Brown, and Demone A. Smith ("City Defendants").  (Dkt. 152.)

This case concerns corruption and cronyism at the highest levels of City government. City Defendants' motion is yet another attempt to evade responsibility for the Mayor's extortionate demands that NRP pay off a political ally in return for the Mayor's continued support of the East Side Housing Opportunities II project (the "Project").  City Defendants rely on a case concerning the infamous Mr. Blagojevich in support of their argument that Mayor Brown, like Mr. Blagojevich, is immune from NRP's RICO claim.  Blagojevich, however, is distinguishable because this case does not involve enactment of a law or broadly applicable policy, but rather administrative action, among others, concerning a specific and discrete project.

Mayor Brown's Deputy Mayor, defendant Steven Casey, has submitted a sworn affidavit verifying NRP's claims. Mayor Brown insisted that Rev. Stenhouse had to be involved as the face of the Project.  (Casey Aff., ¶¶ 5-7.)  Mayor Brown held up and ultimately killed the Project because NRP refused to hire and pay Rev. Stenhouse.  (Id. at ¶¶ 4-6, 8-9, 11.)  But for Mayor Brown's decision to kill the Project, all systems were go and the Project would have received funding and City approvals.  (Id. at ¶ 7.)  Mayor Brown's retribution targeting NRP was merely an administrative action - at most - and therefore not entitled to legislative immunity.  Nor are City Defendants entitled to qualified immunity because NRP has a viable RICO claim (which is a federal right for purposes of qualified immunity) and they fail to show that a clearly established right did not exist against extortion by elected officials administering land use projects.

City Defendants' arguments concerning promissory estoppel add nothing new to the ones previously made and rejected by this Court.[1]  This Court held that the promises to extend the PILOT agreement and transfer lots "appear on their face to be unambiguous."  (Dkt. 132, pg. 12.)  City Defendants' renewed attack on the unambiguity of these promises is barred by the law of the case and the record.  Likewise, City Defendants' contention that NRP's promissory estoppel claim fails because approvals were required for the payment in lieu of taxes ("PILOT") agreement and land transfer is barred by the law of the case and the record.  This Court held that the issue of the approvals was an issue of fact concerning NRP's reasonable reliance and likely "more relevant to the issue of appropriate damages." City Defendants do not suggest that this Court misunderstood the applicable law in reaching that conclusion.  They offer no case decided afterwards casting doubt on this Court's legal determination. They also fail to offer any evidence suggesting that NRP did not reasonably rely on the promises (indeed, they have not taken a single deposition in this case) or that NRP did not incur damages.  To the contrary, NRP has supplemented the record demonstrating both.

As noted below, NRP is also entitled to additional discovery under FRCP 56(d).

## STATEMENT OF FACTS

The facts relevant to these motions are set forth in the Declaration of Thomas S. Lane, dated December 15, 2016, and Plaintiffs' Statement of Undisputed Facts.

## SUMMARY JUDGMENT STANDARD

This Court recently set forth the summary judgment standard in Saleh v. Savage, 2015 WL 1608839, at *2 (W.D.N.Y. 2015).

---

[1] Dkt. 112-13, pp. 22-25; Dkt. 26-6, pg. 10-11.

**ARGUMENT**

**I.**     **Defendants Brown and Smith are Not Entitled to Legislative Immunity**

To be entitled to legislative immunity, a party's conduct must fall within the "sphere of legitimate legislative activity," which requires an act to be (1) legislative "in form" (i.e., "integral steps in the legislative process") and (2) legislative "in substance" (i.e., "bore all the hallmarks of traditional legislation . . . reflect[ing] discretionary, policymaking decision[s] implicating the budgetary priorities of the services the [government] provides to its constituents.").[2]  One test that courts have adopted "focuses on the particularity of the impact;" if the action establishes a general policy, it is legislative; if however an action "'singles out specifiable individuals and affects them differently from others,' it is administrative."[3]  This test was applied by the First Circuit in Cutting v. Muzzey, which denied legislative immunity where a legislature imposed "outrageous conditions" on a development project and rejected the developer's mortgage.[4]

Courts in this Circuit apply this test, "recogniz[ing] that local legislative immunity may be lost if the actions taken impact on particular individuals, rather than on a community generally."[5]  In Harhay v. Town of Ellington Bd. of Educ., the Second Circuit Court of Appeals held that a school board's conduct in refusing to reappoint a teacher was not "legislative" because it involved a "situation regarding a single individual" rather than "broad, prospective

---

[2] State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 89 (2d Cir. 2007) (quoting Bogan v. Scott-Harris, 523 U.S. 44, 54-56 (1998)) (emphasis added).  Notably, Defendants omitted "legitimate" when quoting Rowland.  Docket No. 152-1, at 8.

[3] Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984) (citation omitted).  Although the first (of two) tests discussed in Cutting may no longer remain valid after the Supreme Court's decision in Bogan to the extent that it considers whether a legislator considered "legislative facts," the second test set forth above remains good law.  Brockton Power LLC v. City of Brockton, 948 F. Supp. 2d 48, 64 (D. Mass. 2013) (analyzing Bogan and Cutting and holding that "[a]ctions are administrative if they 'single out individuals or groups, rather than create general policies.'"); Williamson v. Scioto Twp. Trustees, 2014 WL 4388266, at *16 (S.D. Ohio 2014) (same).

[4] Cutting, 724 F.2d at 260.

[5] Moore v. Trippe, 743 F. Supp. 201, 207 (S.D.N.Y. 1990) (citing Cutting and Scott v. Greenville County, infra).

policymaking."[6]   The difference between legislative and administrative acts is "whether the challenged action targeted a specific individual, as opposed to the community at large."[7]

A.    **Defendants' Conduct was Not "Legislative" in Nature**

The subject conduct by Brown and Smith ("Defendants" herein), i.e., refusing to (a) submit the PILOT Agreement and (b) transfer 51 City-owned lots -- is not legislative in nature.[8] In the land development context, refusal to process a proposed development plan and/or issue a needed permit, are administrative in nature, and thus not protected by legislative immunity.[9]

In Franklin Building Corp. v. City of Ocean City, the court held that a city council was not entitled to legislative immunity for failing to adopt a resolution of need for an affordable housing project.[10]   Franklin Building is on all fours with this case (aside from Mayor Brown's more egregious pay-to-play demand).   Franklin Building held that "statutory focus on the

---

[6] 323 F.3d 206, 210-11 (2d Cir. 2003); *see also* Grasson v. Board of Educ. of Town of Orange, 2010 WL 1444570, at *4 (D. Conn. 2010) (citing Harhay for the proposition that "[e]ven actions taken by a board vote are not legislative activity if the decision is directed to a particular individual and does not implicate policy.").

[7] Anderson Group, LLC v. City of Saratoga Springs, 557 F. Supp. 2d 332, 345 (N.D.N.Y. 1998) (citing Orange Lake Assocs., Inc. v. Kirkpatrick, 21 F.3d 1214 (2d Cir. 1994)), *aff'd in part sub nom.*, Anderson Grp., LLC v. Lenz, 336 Fed. Appx. 21 (2d Cir. 2009).

[8] Although Defendants restrict their analysis to these two acts (their argument fails even when so restricted), NRP alleges additional facts, which further show that legislative immunity is not proper here. *See, e.g.,* Dkt 44, ¶¶ 35 – 109; Dkt. 22-7; and Statement of Facts filed with NRP's opposition.

[9] Anderson Grp., 557 F. Supp. 2d at 345 ("Board action taken on the [developers'] application was not the sort of formal, quintessentially legislative activity that legislative immunity was intended to cover."); Altaire Builders, Inc. v. Village of Horseheads, 551 F. Supp. 1066, 1072, 1075 (W.D.N.Y. 1982) ("New York's courts have consistently held that the denial of a permit is an administrative decision" entitling legislators "to only qualified immunity" at best); Vestavia Plaza, LLC v. City of Vestavia Hills, 2013 WL 4804196, at *20 (N.D. Ala. 2013) (legislative immunity for enacting ordinance requiring business licenses, but no immunity for voting to deny a business license because the "decision to deny the specific business-license application" of a single entity "is not covered by legislative immunity"); Miles-Un-Ltd., Inc. v. Town of New Shoreham, 917 F. Supp. 91, 99 (D. N.H. 1996) (citing cases outlining administrative functions, including withholding a building permit, refusal to approve a development plan or attempts to hinder construction of a project and actions directed to a specified developer).

[10] 946 F. Supp. 1161, 1170-71 (D.N.J. 1996).

individual project makes the municipality's decision to grant or deny a resolution of need appear to be an administrative act."[11]  The court held that "legislative immunity should not apply to the Council's **failure to adopt a resolution of need**" because the court was "convinced that the decision to adopt a resolution of need, the sole purpose of which is to **allow a single developer to seek state-guaranteed financing for a single project**, does not implicate the allocation of city resources or affect broad questions of public policy."[12]  The failure to approve a resolution of need by Franklin for its project was administrative in nature because it does not imply that the "City will not approve a resolution of need for the next developer who seeks one."[13]

Like Franklin Building, Defendants failed to submit a resolution authorizing the PILOT Agreement and the lot transfer -- the last step to render the Project shovel-ready.  After years of support, this step was halted because NRP did not yield to the Mayor's demands. While qualified immunity was granted in Franklin Building, that ruling is distinguished by the fact that here, Mayor Brown's approval required the hiring of his political supporter.  As discussed below, no reasonable elected official could believe that extortion was legal or even arguably reasonable.

In Scott v. Greenville County, the Fourth Circuit held that legislative immunity did not apply where the legislature halted the issuance of a permit to a developer who had obtained HUD earmarked funds for a low-income housing project because "dealing with [developer's] permit application" was not entitled to immunity.[14]  Legislators were not entitled to legislative

---

[11] Id. at 1171.

[12] Id. (emphasis added).

[13] Id.  ("Thus, the issue presented to a municipality in deciding whether to approve a resolution of need is analogous to the selection of one bidder over another, as in Three Rivers Cablevision, [502 F. Supp. 1111 (W.D. Pa. 1980)], rather than to the adoption of a zoning ordinance of general application.  Therefore, the members of the City Council . . . do not enjoy absolute legislative immunity from civil liability for their actions surrounding the failure to approve the resolution of need for the Flanders Hotel project.").

[14] 716 F.2d 1409, 1423 (4th Cir. 1983).

immunity with respect to "attempts to hinder construction of plaintiff's housing project" and "executive review of a specific building permit application."[15]   Likewise, Defendants halted NRP's application because NRP did not "make Stenhouse happy" and "hired the wrong company."[16]

In Bryan v. City of Madison, the Fifth Circuit held that a mayor was not entitled to legislative immunity where he "delayed decisions on approval of [developer's] plans at various board meetings" because any "decision to delay a vote" was based on a "specific and particular" project.[17]   Nor was the mayor entitled to legislative immunity for "vetoing a determination that [the developer's] plan satisfied city zoning ordinances or building requirements."[18]   In Guindon v. Township of Dundee, the court held that "delay in processing Plaintiffs' land transfer request" was administrative in nature and that town board members were not entitled to legislative immunity for "refusing to act on Plaintiffs' land transfer request."[19]   And in Williamson v. Scioto Tp. Trustees, the court denied legislative immunity for the "decision not to second a motion thereby preventing a vote from coming to the floor."[20]   Under these cases, Defendants are not entitled to legislative immunity for refusing to present already prepared resolutions.

In Anderson Group, LLC v. City of Saratoga Springs, Judge Sharpe held that the zoning of a parcel was legislative in nature (and thus immune), but that action on the developer's

---

[15] Id. at 1422-23.

[16] Dkt. 44, ¶ 74; (Lane Decl. Exh. B, pp. 267-268.)

[17] 213 F.3d 267, 274 (5th Cir. 2000).

[18] Id. at 273.  The Fifth Circuit Court of Appeals recently followed Bryan and denied legislative immunity where the "denial of a development plan affected a specific individual and a specific situation and was not a general and prospective action that affected the entire community."  Da Vinci, Inv. v. Parker, 622 Fed. Appx. 367, 372 (5th Cir. 2015).

[19] 2010 WL 5394992, at *8 (E.D. Mich. 2010) (emphasis added).

[20] 2014 WL 4388266, at *16 (S.D. Ohio. 2014).

"special use permit by the Board was administrative in nature."[21]   Legislative immunity was not extended to the Board's tabling and rejection of the developer's application.   In other words, board members were not entitled to legislative immunity where they "arbitrarily threw hurdles into the permit process to delay the plaintiffs until the Council's subsequent rezoning of the [property] made the Anderson's proposal noncompliant."[22]   The Second Circuit affirmed because the "court below correctly concluded that the action taken by Defendants with regard to [the developer's] special use permit application was administrative in nature, and thus not of the sort legislative immunity was intended to cover."[23]   Although Defendants cite Anderson Grp., they failed to address this holding, which suggests an inability to do so.

In Norflo Holding Corp., Inc. v. City of Chicago, the court held that a legislator was not legislatively immune for blocking a developer's project from coming to the city council for a vote (a project earmarked for HUD funds under EZ/EC programs).[24]   And in Brockton Power LLC v. City of Brockton, city councilors were not entitled to legislative immunity where they "refus[ed] to consider or vote on the [developer's] proposal."[25]   Likewise, Defendants' actions in preventing the submission of certain aspects of NRP's project were administrative in nature.

In Lacorte v. Hudacs, Judge McAvoy held that two legislators were not entitled to legislative immunity for "authorizing the award of the Albany airport contract" because adoption

---

[21] Anderson Group, LLC, 557 F. Supp. 2d at 345.

[22] Id.

[23] 336 Fed. Appx. 21, 23 (2d Cir. 2009).

[24] 2002 WL 453605, at *10-11 (N.D. Ill. 2002); see also Arabbo v. City of Burton, 2016 WL 4073541, at *4 (E.D. Mich. 2016) (noting that Norflo held "that preventing a vote on a single business's application was not entitled to absolute immunity").   In Norflo, the legislator attempted to have plaintiff's funds allocated to another developer, who had partnered with a political supporter of defendant.   Norflo, 2002 WL 453605, at *2-3.

[25] 948 F. Supp. 2d at 65.   The court also stated that immunity would not be extended to legislators who "concoct[ed] pretextual reasons to summarily reject a filing (i.e., plaintiffs' preliminary subdivision plan) that other local officials previously had deemed acceptable."   Id.

of a resolution denying the contract to the low bidders "is more properly characterized as an administrative act" because the resolution "merely applied to a specific instance the broad policies promulgated by [] earlier legislative inquiries."[26] If a resolution awarding a contract is not legislative activity, than neither is declining to adopt a resolution granting a developer's application, which is akin to a contract to provide services to a municipality.

In Schubert v. City of Rye, Judge Karas denied legislative immunity based on a vote to retain an expert to study complaints by a citizen who claimed that city improperly authorized work without a permit.[27] Legislators' efforts to investigate whether it improperly authorized the work were administrative in nature, despite the fact that a vote was taken.[28] The action was not legislative because the city council "did not engage in some broad policy debate about . . . land use regulations or laws," but rather "involved existing land-use policies as applied to a single resident."[29] Likewise, Defendants' conduct was "administrative in nature" because it was "directed at a particular [developer], and [was] not part of a broader legislative policy."[30]

Defendants argue that "introducing legislation" is legislative in nature, but a resolution approving a single project is not legislation as discussed above. And Defendants failed to discuss the vast majority of the above authorities, i.e., cases that are factually on-point. The mere act of submitting an item for approval (or not doing so) does not render an act to be legislative in nature.[31]

---

[26] 884 F. Supp. 64, 70-71 (N.D.N.Y. 1995).
[27] 775 F. Supp. 2d 689, 701-02 (S.D.N.Y. 2011).
[28] Id. at 701.
[29] Id.
[30] Rowland, 494 F.3d at 91.
[31] Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003) (finding "unpersuasive the argument advanced by defendants that the fact that the employment decision here was made by a 'vote' of the Board to 'table' [a teacher's] resignation somehow alters the administrative nature of their actions."); Bloomingburg Jewish Educ. Ctr. v. Vill. of

Defendants' failure to submit the PILOT agreement and lot transfer resolution does not alter the nature of their actions involving a single party and the administration of city-owned lots. Thus, they "are not entitled to absolute legislative immunity because their acts were not quintessentially legislative, but rather were part of a process by which [a development project] regarding a single [developer] was resolved."[32]   The record also shows that no other low-income project that proceeded to a similar stage was ever denied.[33]   In other words, the act of voting on the lot transfer and PILOT Agreement was administrative in nature.[34]

B.      **Bribery/Extortion is Not "Legislative" in Nature**

As discussed above, in Rowland, the Second Circuit held that, for conduct to be legislatively immune, it must fall within the "sphere of **legitimate** legislative activity."[35]   Other courts have also found that, notwithstanding the irrelevance of motive, "illegitimate" conduct is not immune.   In Romero-Barcelo v. Hernandez-Agosto, the First Circuit Court of Appeals held that legislative immunity "protects only conduct within the 'sphere of legitimate legislative

---

Bloomingburg, 111 F. Supp. 3d 459, 492 (S.D.N.Y. 2015) (following Harhay and recognizing that "municipal action may be administrative in nature even if it is subject to a vote by public officials."); Schubert, 775 F. Supp. 2d at 701; Sunland Pub'g v. City of Jackson, 234 F. Supp. 2d 626, 631 (S.D. Miss. 1999) ("process of voting to determine a 'winner' of the contract after all bids had been received was merely a formality or an administrative function of the councilpersons"); Roberson v. Mullins, 29 F.3d 132, 134 n.3 (4th Cir. 1994).

[32] Schubert, 775 F. Supp. 2d at 701.

[33] (Lane Decl. Exh. B, Brown Deposition, pp. 128-31; 198-199; 309); Scott, 716 F.2d at 1413 ("According to Carter's later testimony, this was the only occasion on which he had ever been instructed not to process a designated building permit" and noting that the judge "found that a permit normally would have been processed and issued in ten days").

[34] Harhay, 323 F.3d at 211; Schubert, 775 F. Supp. 2d at 701; Roberson, 29 F.3d at 134 n.3.

[35] Rowland, 494 F.3d at 82 (emphasis added) (quoting Bogan, 523 U.S. at 54).   Judge Foschio stated that legislative immunity is limited to local officials sued in their official capacities." (Docket No. 174 n.1) It appears, however, that he made a scrivener's error inasmuch as Rowland indicates that legislative immunity is limited to defendants' personal capacity claims.

activity.'"[36]  In <u>Youngblood v. DeWeese</u>, the court held that a legislator's "extracurricular" activities such as the "acceptance of bribes" falls "outside the scope of legislative immunity."[37]

This rule has been applied after <u>Bogan</u>.  In <u>Favors v. Cuomo</u>, the court noted that, while <u>Bogan</u> holds that motive or intent is not considered when ascertaining whether an act is legislative, <u>Brewster</u> holds that "taking a bribe is, obviously, no part of the legislative process or function."[38]  Likewise, in <u>United States v. Menendez</u>, the Third Circuit stated that "some acts are so clearly non-legislative that no inquiry into their content or underlying motivation or purpose is needed to classify them," including "of course, illegitimate activities such as accepting bribes in exchange for taking official action."[39]  Defendants' extortionate conduct is thus not immune.

C.    **The Cases Cited By Brown and Smith Are Inapposite**

Cursory perusal of Defendants' cited authorities shows that they miss the mark – especially when compared to the factually analogous cases discussed above.  <u>Yeldell</u> involved personnel decisions, and the *dicta* quoted by Defendants (p. 9) involves the introduction of

---

[36] 75 F.3d 23, 28 (1st Cir. 1996).

[37] 352 F.3d 836, 841 (3d Cir. 2003); *see also* <u>Scott</u>, 716 F.2d at 1422 (council members act in a legislative capacity when their acts were "not 'illegal acts such as bribery [which] are obviously not in aid of legislative activity and [for which] legislators can claim no immunity.'"); <u>Fowler-Nash v. Dem. Caucus of the Penn. House of Reps.</u>, 2006 WL 406611, at *3 (W.D. Pa. 2006) ("[i]mmunity also does not extend to:  accepting bribes"), *aff'd*, 469 F.3d 328 (3d Cir. 2006); <u>S. Middlesex Opportunity Council, Inc. v. Town of Framingham</u>, 752 F. Supp. 2d 85, 111 (D. Mass. 2010) ("extortionate activity was not legitimate legislative activity"); <u>Collier v. Town of Harvard</u>, 1997 WL 33781338, at *7 (D. Mass. 1997) (legislative immunity "would not protect the alleged conduct of defendants because that conduct, i.e., attempted extortion, cannot be considered legitimate legislative activity").

[38] 2013 WL 11319831, at *6 (E.D.N.Y. 2013) (construing <u>Bogan</u>, *infra* and <u>United States v. Brewster</u>, 408 U.S. 501, 525 (1972)).  In any event, motive and intent are shown by the Casey affidavit which establishes as fact the pay to play scheme.

[39] 831 F.3d 155, 166 (3d Cir. 2016); *see also* <u>Muni. Rev. Servs, Inc. v. Xspand, Inc.</u>, 2007 WL 1074140, at *5 (M.D. Pa. 2007) (scope of legislative immunity "is 'coterminous' with the absolute immunity afforded to members of Congress under the Speech or Debate Clause").

legislation governing future conduct, not a resolution approving a single development project. Bogan involved the elimination of positions from a budget, not termination of specific people.

Defendants argue that failing to place an item on a legislative agenda is a legislative act. They cite two cases that granted legislative immunity for declining to vote on a proposed settlement (Dorsett) and the refusal to bring a bill up for a vote (Sons of Confederate Veterans). Unlike the cases discussed above, however, both of these cases involved discretionary legislative items such as passing laws.  As discussed above, the refusal to submit the approvals for a low-income housing project that is earmarked with federal funds, is administrative in nature – and the decision to not place that item on "the agenda" does not transform it into a legislative act.

Defendants also cite two cases for the proposition that "development projects" are legislative in nature (p. 10-11).  They ignore, however, that Anderson Grp. only applied immunity to enactment of a zoning ordinance, but that immunity did not apply to throwing "hurdles" in the special use permit process.  And Bloomingburg involved the vote on a building moratorium, which is generally applicable prospective legislation, not an approval for a single project (as is the case here).  The fact that Defendants hang their hat on these two easily distinguished cases is telling of the weakness of their position.

Defendants cite cases such as Blagojevich, which are distinguished by the fact that Defendants here enacted no laws.  As discussed above, resolutions approving specific development projects are administrative, whereas laws prospective in nature and governing the community generally, are legislative.  The only similarity between Blagojevic and this case is the pay-to-play scheme employed by an elected official.  Reliance on Chappell and Thillens is equally infirm since those cases also involved enactment of laws, which is not the case here.

### D.   NRP Asserts No RICO Claims Against the City

Plaintiffs do not assert RICO claims against the City or against the individuals in their official capacities (which are essentially claims against the City).  As a result, the arguments in Point III(A) are irrelevant.

## II.    Defendants Brown and Smith Are Not Entitled to Qualified Immunity

Defendants argue that they are entitled to qualified immunity because there is no clearly established right to be free from extortionate demands by elected officials dealing with contractors seeking to develop affordable housing with earmarked state and federal funding. They also argue that the alleged conduct, extortion, is "objectively reasonable."  Qualified immunity should be denied for several reasons.

First, the right against being extorted in exchange for land use approvals is "clearly established."  In DeFalco v. Bernas, the Second Circuit Court of Appeals affirmed that a developer had a viable RICO claim against town officials who extorted the developer into hiring the Town Supervisor's friends and supporters.[40]  When the developer resisted the extortion demands, various project approvals were tabled or suspended by the Town Board.[41]  In DeFalco (as here), the predicate act was a Hobbs Act violation for extortion based on fear of economic loss.[42]  Under DeFalco, it was clearly established in 2001 that an elected official could not condition development approvals on "suggestions" to hire the right people.  It is unreasonable for Mayor Brown to suggest that he could tell NRP, "around here, you got to deal with Rev.

---

[40] 244 F.3d 286, 313-15 (2d Cir. 2001).
[41] Id. at 296-97.
[42] Id. at 313.  Here, NRP also relies on state bribery laws.

Stenhouse."[43]  Defendants' failure to address <u>DeFalco</u>, despite this Court's previous analysis of that decision (Docket No. 43, at 24), is tantamount to conceding the point.

Nor can Defendants suggest that extortion by an elected official is "objectively reasonable," even if that's business as usual in City Hall.  In <u>Walz v. Town of Smithtown</u>, the Second Circuit Court of Appeals held that a highway superintendent "could not have believed . . . that he had discretion to deny an excavation permit to the [plaintiffs] as a means of extorting land from them."[44]  Defendant in <u>Walz</u> "offer[ed] no authority whatsoever that might have led [the elected official] to believe otherwise [and] [he] is, therefore, as a matter of law not entitled to qualified immunity."  Brown and Smith cite no authority to suggest that a reasonable elected official could believe it legal to extort a developer into hiring the Mayor's political supporter.

Defendants argue that "[t]here simply is no Supreme Court or Second Circuit precedent holding that analogous facts violate a clearly established right or that the defendants' actions were objectively unreasonable."[45]  They overlook, however, the admonition by the Supreme Court that "[t]here has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery; [but that] it does not follow that if such a case arose, the officials would be immune from damages [or criminal] liability."[46]  It is also clearly established that they cannot extort developers for personal political advantage – especially in light of <u>DeFalco</u>.

Second, Defendants argue that no federal right exists, overlooking NRP's RICO claim, which this Court has already upheld.[47]  Defendants cannot establish that such a right was not clearly established, especially where they ignore RICO (and <u>DeFalco</u>) in their qualified

---

[43] <u>Id.</u> at 295, 314-15.
[44] 46 F.3d 162, 169 (2d Cir. 1995).
[45] Docket No. 152-1, at 15.
[46] <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (citation omitted).
[47] Docket No. 43, at 28.

immunity analysis.  Defendants' request for qualified immunity should be denied on this basis alone.[48]  Defendants have not even attempted to demonstrate that the right against municipal extortion in the land use development process was not clearly established.  Nor could they in light of DeFalco.  RICO is a right for purposes of qualified immunity analysis.  In BEG Investments LLC v. Alberti, a RICO claim was a predicate right for qualified immunity analysis, but immunity was granted because the RICO claim was not viable.[49]  Here, on the other hand, this Court has already held that the RICO claim is viable (Docket No. 43, at 28).

Defendants' authorities are all generic qualified immunity cases that are not factually similar.  Notably, once they start analyzing the facts of this case, they do not cite any cases in support of their position with facts that are even remotely similar.  Rather, they cite cases involving criminal prosecutions, retaliation by an employer, and a Secret Service detail that allegedly retaliated against a protester for political speech.  Docket No. 152-1, at 13-15.

Third, as a matter of law, there can be no qualified immunity for illegal behavior.  For example, in Rahman v. Schriro, the court stated that, "an officer is not entitled to qualified immunity where he or she follows an order to carry out blatantly illegal actions."[50]

Finally, Defendants raise spurious arguments, including that Belmont (not NRP), purportedly hired Jeremiah Partnership previously (so what?  That is a predicate act that actually supports NRP's claim.)  Incredibly, counsel appears to suggest that this somehow gives Mayor Brown the right to extort NRP.  Defendants also argue that NRP offered Stenhouse "a role in the Project" (even if true, which NRP disputes, this is no different than DeFalco, where the developer went along with extortionate demands for a period of time before eventually refusing).

---

[48] Cf. Curto v. Bender, 2005 WL 724156, at *16 (W.D.N.Y. 2005) (party conceded point by failing to address it).  Compare with Docket No. 152-1, at 14-15.
[49] 34 F. Supp. 3d 68, 81-82 (D.D.C. 2014).
[50] 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014).

Defendants also argue that Jeremiah Partnership was "invited" to respond to the RFP (so what? NRP was apparently seeking to placate the Mayor while maintaining ethics, but refused to agree to the improper quid-pro-quo, i.e., a substantial payment to Rev. Stenhouse for little or nothing of value, like a "no-show" job on an episode of the *Sopranos*).  Defendants are not entitled to qualified immunity, as demonstrated by Defendants' need to resort to such weak arguments.

### III.   Questions of Fact Bar Summary Judgment on NRP's Promissory Estoppel Claim

#### A.  The Promises Were Made Multiple Times in an Unambiguous Fashion and Defendants Expected NRP to Rely Upon the Promises

Defendants have moved against NRP's promissory estoppel claim on at least four prior occasions.  In each instance, this Court has sustained the claim and held that issues of reliance and damages cannot be determined as a matter of law.  (Dkt 132 at p. 13).  These observations are not surprising especially in light of the subsequent testimony by defendants' highest ranking official, Mayor Brown.  In discussing the promises made by the City in the Wannamaker letter, Mayor Brown admitted the Development Team could rely on them:

> "[The Development Team could] feel that they were receiving support from the City, that it made sense for them to continue to move toward a project, **that it made sense for them to do everything that they were supposed to do to try to complete a project.**"

Mayor Brown also admitted the promises were unambiguous.  Defendants overlook these significant admissions in their motion – admissions that on their own raise issues of fact concerning all aspects of the promissory estoppel claim.  They also overlook Mr. Pechota's declaration, filed with this Court in 2012,[51] where he stated that the Wannamaker letter was not the only source of the promises made by the City and BURA.  In his declaration on this motion,

---

[51] *See* Dkt. 60-3.

Mr. Pechota expands and states the promises were made at numerous times by defendants' representatives and, when they were made, they were made <u>without</u> any contingencies. This too is not surprising, as all of the purported contingencies defendants rely on were *pro forma*.

Defendants contend that the need for Common Council and other approvals invalidates the promissory estoppel claim. But at the same time, they concede, as they must, the Court has already considered (and rejected) that contention. NRP disputes that Common Council approval was a contingency for the promissory estoppel claim because the promises were made at various times and in forms that included no such contingencies. Nevertheless, to the extent the need for approvals was an expressed contingency, this Court has held that the need for approvals is relevant to the issues of reasonable reliance and damages, not to the issue of whether the promises were unambiguous.[52] The Court already determined that contingencies are not a bar to the promissory estoppel claim,[53] holding that: "Any uncertainty created by the need for approval [by the Common Council] may therefore be more relevant to the issue of appropriate damages than to the dismissal of this claim as a matter of law on the present motion."[54]

The Court's prior ruling makes perfect sense, especially in the context of Mayor Brown's deposition testimony (in light of the promises, the Development Team should "do everything they were supposed to do . . .to complete a project") and Mr. Pechota's declarations stating that the promises were made at various times without contingencies.[55]

---

[52] Dkt. 132 at p. 12-13.

[53] Dkt. 132 at p. 11 noting that NRP "sufficiently alleged" that the Development Team secured the 2008 Low Income Tax Credits; *Id.* at p. 13 noting "it would certainly be foreseeable to Defendants that members of the Development Team, including NRP, would take action to move on the project as a result of this commitment letter. . . .".

[54] Dkt. 132 at p. 13.

[55] Thus, when defendants on this motion claim the transfer of lots required Council approval, their argument should be rejected for the same reasons discussed in the Court's prior decisions. Likewise with their argument that the PILOT agreement required certain <u>other</u> approvals.

16

**B.  Defendants Do Not Address Plaintiffs' Claims That They Acted Wrongfully**

Promissory estoppel is available against a municipality "where a governmental subdivision **acts or comports itself wrongly** or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice."[56]   The City Defendants do not contend - much less carry their burden to establish - that there exists no triable issue of fact concerning whether they acted wrongfully.  This omission warrants denial of the City Defendants' motion, and distinguishes their cases.   Also, courts have found estoppel available against municipalities where warranted by the municipalities' conduct.[57]

That NRP's express contract claims have been dismissed, and that a final agreement with the City Defendants was not reached, does not bar NRP's promissory estoppel claims.  It is the very reason NRP's promissory estoppel claim is valid.  As the Appellate Division held in Eden v. Bd. of Trustees of State Univ., "estoppel sometimes involves a flaw in the steps leading to the finality of a contract."[58]   Eden held that estoppel was available against a municipal entity "when justified by the facts" or where "necessary to prevent ... manifest injustice."[59]

The facts here are even more compelling than in Eden and other cases cited herein.  The promises included a commitment to extend a PILOT agreement and transfer land and were

---

[56] Dkt. Notaro v. Power Auth. Of State of New York, 41 A.D3d 1318, 1319 (4th Dept. 2007) (emphasis added), app. dism'd, 9 N.Y.3d 935 (2007); Agress v. Clarkstown CSD, 69 A.D.3d 769, 771 (2d Dept. 2010).

[57] Bender v. N.Y. City Health & Hosps. Corp., 38 N.Y.2d 662, 668 (1976); Robinson v. City of N.Y., 24 A.D.2d 260, 263 (1st Dept. 1965) ("It is the principle of estoppel that brings flexibility and justice to the law of municipal corporations."); Vermeule v. City of Corning, 186 A.D. 206, 209 (4th Dept. 1919), aff'd, 230 N.Y. 585 (1920) ("An estoppel may arise against a municipality the same as against any other party."); 1555 Boston Rd. Corp. v. Fin. Adm'r of the City of N.Y., 61 A.D.2d 187, 192 (2d Dept. 1978) ("municipality may be estopped by its misleading nonfeasance if there would otherwise be a manifest injustice"); Fleming v. Long Island R.R., 88 A.D.2d 328, 343, (2d Dept. 1982), aff'd, 59 N.Y.2d 895 (1983); Allen v. Bd. of Educ. of Union Free Sch. Dist. No. 20, 168 A.D.2d 403, 404 (2d Dept. 1990); Landmark Colony at Oyster Bay v. Bd. of Sup'rs, 113 A.D.2d 741, 744 (2d Dept. 1985).

[58] 49 A.D.2d 277, 283 (2d Dept. 1975).

[59] Id. at 284.

repeated and reaffirmed by the defendants on numerous occasions.  To the extent there were any contingencies, the promises implicitly included a promise to introduce the PILOT agreement and land transfer resolution to the Common Council – promises that were broken <u>only</u> for the improper purpose of punishing NRP for not agreeing to the Mayor's extortionate demands.  It is difficult to conceive of a case in which a government entity comports itself more wrongfully, or where the result would be more unjust. Accordingly, promissory estoppel is appropriate.

### C.  Plaintiffs Can Establish and/or Raise Issues of Fact on Each Element of the Promissory Estoppel Claim

"[A] claim for promissory estoppel requires 'a clear and unambiguous promise, reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained in reliance on that promise.'"[60]

As discussed above, the promises were clear and unambiguous, despite any purported contingencies.  Mayor Brown admitted that the promise in the Wanamaker Letter to extend to the development the PILOT agreement was not vague: "I don't believe that there is a lack of clarity in that sentence...  I think the sentence is clear."[61]  He likewise admitted that the promise in the Wanamaker letter to provide 51 buildable lots is clear and unambiguous.[62]  Mr. Wanamaker himself agreed that there was nothing ambiguous in the Wanamaker letter concerning the City Defendants' commitments to extend the PILOT agreement and provide lots.[63]

City Defendants argue that the Wanamaker February 21, 2008 and February 26, 2008 letters imposed contingencies on the transfer of land and PILOT agreement.[64]  However, by the

---

[60] <u>Kaye v. Grossman</u>, 202 F.3d 611, 615 (2d Cir. 2000); <u>Ripple's of Clearview, Inc. v. Le Havre Assocs.</u>, 88 A.D.2d 120, 122 (2d Dept. 1982).
[61] Lane Decl. Exh X, pp. 123-125.
[62] <i>Id.</i> at pg. 126.
[63] Lane Decl. Exh. B, pp. 98-100.
[64] Dkt. 152-8, pg. 39, Exh. 11; Dkt. 152-9, pg. 5, Exh. 13.  The February 21, 2008 letter concerning transfer of land contained only one condition: confirmation that an allocation of tax

time of these letters, the City and BURA had already made <u>unconditioned promises</u> to support the project by extending a PILOT agreement and to transfer land.[65]   The City Defendants do not contend that there is no triable issue of fact concerning whether the PILOT agreement or land transfer would be approved.   Indeed, all the evidence is to the contrary.[66]   The transfer of land and PILOT agreements were drafted and ready to be submitted to the Common Council for their approval (which had never been denied for any other project) and were withheld from the Common Council simply because the Mayor's political ally had not been paid off.   And City Defendants' promises to support the project in good faith were, of course, unconditional.

Reasonable and foreseeable reliance can be easily established by, among other things, Mayor Brown's testimony, quoted above, and the Court's prior recognition that "it would certainly be foreseeable to Defendants that members of the Development Team, including NRP, would take action to move on the project as a result of this commitment letter. . . ."[67]   Both the City and NRP took substantial steps to advance the project.[68]   By way of example only, Mayor Brown sent letters to various state government officials stating his "strong support for the proposed housing tax credit development [the Project]," Planning Board approval was provided, Permit ready letters were issued, BFSA approved the project (with Mayor Brown's implicit approval), and Mayor Brown signed and submitted the HUD Request for Release of Funds to the

---

credits has been made through the New York State Division of Housing and Community Renewal ("DHCR").   That condition was satisfied well before the City Defendants broke their promises: it was satisfied on August 20, 2008, when the Development Team received a commitment from the DHCR for the necessary LIHTC.   Lane Decl., Exh. X.   Notably, defendants never raised either letter on any of their prior motions.

[65] Dkt. 60-3, Pechota Declaration, ¶ 5.

[66] Lane Decl. Exh. B, Brown Deposition, pp. 128-31; 198-199; 309.

[67] Id.

[68] See Statement of Facts and Exhibits referenced therein, including Exhibits E, F, I, J, N and O.

Federal Government.[69]   The City's significant work on the project, including multiple endorsements and requests to outside entities, provided NRP with further evidence that it was reasonable to rely on the promises made by the City (i.e., why would the City devote hundreds if not thousands of hours of resources to the project and publically endorse the project unless it intended to follow through on its promises and see the project through to completion?).   The record evidence shows Common Council approval was also never in doubt, another reason why it was reasonable for NRP to rely on the City's promises.

NRP can easily show that it sustained injury or damages through the evidence submitted in this case, including Mayor Brown's testimony where he admitted the Development Team should "take steps," presumably including expending money and resources, necessary "to try to complete the project." (See Lane Dec. at Ex. B; Pechota Dec.).

Finally, defendants claim that because Mayor Brown, Mr. Smith, and BURA would not be parties to the ultimate contracts, they cannot be liable under promissory estoppel improperly conflates the separate issue of the ultimate contract and promises made leading to that contract.

As a contract implied in law to avoid injustice, promissory estoppel does not require consideration, nor that a detriment was incurred.  Each defendant made promises concerning the City's support of the project and/or reaffirmed the promises previously made.  Each made representations, that the PILOT agreement and transfer of lands would be submitted to the Common Council if NRP paid off the Mayor's political ally.

It is immaterial whether any of the defendants were to be parties to any express contract concerning the project.  In Vassenelli v. City of Syracuse, the court permitted plaintiff to assert promissory estoppel claims against the defendant city as well as individual city employees

---

[69] Id..

concerning the defendants' conduct in administering and paying for medical services and medications.[70]   Clearly it was never contemplated that the city employees would be personally responsible by express contract for paying for the plaintiff's medications, yet the court held that plaintiff stated a cause of action for promissory estoppel against them.[71]

### D.  Defendants' Cases are Distinguishable or Not Applicable

City Defendants' reliance on <u>N.Y. Tel. Co. v. Town of N. Hempstead</u>,[72] is misplaced. That case did not involve any allegation of promissory estoppel, rather the plaintiff sought to impose an implied rental agreement where the defendant town refused to remove its wires from the plaintiff's telephone poles.   Plaintiff sought to impose through implication the ultimate obligations in an unexecuted rental agreement it had provided to the town.   Similarly, in <u>Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch</u>, plaintiff sought to impose the ultimate contractual obligations, arguing that the municipal defendants must be estopped based on alleged representations that "a duly executed and approved written contract was forthcoming."[73]   In <u>Gill, Korff & Assoc., Architects & Eng'r, P.C. v. Cty. of Onondaga</u>, the court found there was no valid express contract and declined to impose the ultimate obligation upon the municipality (the court in *Gill* did not address, nor does it appear the plaintiff argued, that the City comported itself wrongly or negligently).[74]   Likewise, in <u>Henry Modell & Co. v. City of N.Y.</u>, the plaintiff sought

---

[70] 138 A.D.3d 1471, 1475 (4th Dept. 2016).

[71] City Defendants mischaracterize the holding in <u>Sibley v. Lutheran Hosp. of Maryland, Inc.</u>, 871 F.2d 479, 487 (4th Cir. 1989).  They cite to the concurring opinion without noting this fact. They further paraphrase the concurrence to suggest that the allegations concerned the actions of an "agent of the [promisor]."[71]   <u>Sibley</u>, however, did not concern a claim of promissory estoppel, but rather an alleged breach of an implied contract embodied in a hospital's bylaws.  Plaintiff alleged that his termination violated that implied contract.  Both the majority and concurring opinion agreed that there was no such violation; therefore the concurring opinion is inapplicable.

[72] 41 N.Y.2d 691, 695–96 (1977)

[73] 593 F. Supp. 743, 753 (S.D.N.Y. 1984).

[74] 152 A.D.2d 912, 913-14 (4th Dept. 1989).

to impose an unexecuted lease by estoppel.[75]   The court rejected this attempt to circumvent the formal approval process, and it does not appear from the court's decision that plaintiff alleged any detrimental reliance on the promises made by city officials.   In <u>Seif v. City of Long Beach</u>, the court declined to find an implied contract where the retention of a special counsel was not approved by the common council, but there appears to have been no allegation that the City conducted itself wrongfully, as is the case here.[76]

City Defendants' reliance on <u>Town of Oneonta v. City of Oneonta</u>,[77] misses the mark. The court rejected plaintiff's attempt to impose by implication a contract upon the City under the terms of the prior expired contract.   The court declined to find estoppel based on its finding that the plaintiff had not demonstrated "the manifest injustice necessary to permit the estoppel doctrine to be invoked in this case."   *Id.*   Here, however, the injustice is manifest, and NRP is not seeking to impose by implication the terms of any contract but instead the promises that were made on numerous occasions.

City Defendants grossly mischaracterize the holding in <u>Shelley v. Trafalgar House Pub. Co</u>.[78] That case does not support their assertion that there can be no promissory estoppel claim in the context of preliminary negotiations.   They omit the underlined text from the court's decision: "In New York, preliminary agreements which recognize the existence of open terms that remain to be negotiated while agreeing on certain terms do not bind the parties to those terms <u>but rather bind parties to continue negotiations in good faith.   A breach of this good faith obligation satisfies the promissory estoppel requirement of a clear and unambiguous promise.</u>"   (citations

---

[75] 159 A.D.2d 354, 355 (1st Dept. 1990).
[76] 286 N.Y. 382, 389 (1941).   Defendants previously cited <u>Seif</u> in support of their initial and unsuccessful motion to dismiss NRP's promissory estoppel claim.   (Dkt. 26-6, pg. 11.)
[77] 191 A.D.2d 891, 892 (3d Dept. 1993).
[78] 918 F. Supp. 515, 523 (D.P.R. 1996)

omitted).  <u>Shelly</u> **denied** the motion for summary judgment concerning promissory estoppel, despite the fact that the alleged promises were made in during preliminary negotiations.  *Id.*

City Defendants' reliance on <u>Meadow Ridge Capital, LLC v. Levi</u>,[79] is misplaced. Plaintiff sought to base a promissory estoppel claim on a letter of intent which expressly was conditional and provided that it "shall not impose any obligations on any of the parties to this letter."  Likewise in <u>Fortress Sys., L.L.C. v. Bank of W.</u>,[80] the court rejected statements in a commitment letter as the basis for promissory estoppel, holding that the letter "was clearly not intended to bind the parties and was merely a statement of intent.  It stated that it was a commitment only and that a formal loan document would have to be executed and all of its conditions met before a formal obligation would arise."

Finally, City Defendants rely on a single case in support of their reasonable reliance argument: <u>H & R Project Associates, Inc. v. City of Syracuse</u>. [81]  The court's conclusion concerning the developer's reasonable reliance did not concern the developer's promissory estoppel claim, but rather the developer's negligent misrepresentation claim, which the court also rejected on other grounds.  *Id.*  The court dismissed the promissory estoppel claim without discussion, and it does not appear the developer alleged that the City comported itself wrongly.[82]

## IV.    **Alternatively, Further Discovery Is Warranted**

### A.    **The City Defendants Have Waived Immunity Arguments At This Stage**

City Defendants waived any argument concerning immunity until the conclusion of fact discovery; therefore the Court should permit all discovery to be completed.  To avoid duplicative

---

[79] 29 Misc. 3d 1224(A) (Sup. Ct. 2010)
[80] 559 F.3d 848, 853 (8th Cir. 2009)
[81] 289 A.D.2d 967, 968 (4th Dept. 2001)
[82] It is unclear from the decision whether the developer sought to impose ultimate contract obligations through promissory estoppel.

briefing, NRP incorporates the arguments set forth previously.[83]  NRP respectfully directs the

Court to the First Circuit Court of Appeal's decision in Lugo v. Alvarado, which affirmed an

order denying a stay of discovery during the pendency of an official's motion for summary

judgment on immunity grounds.[84]  Lugo emphasized the official's conduct in participating in

litigation and making discovery demands prior to invoking immunity as a shield from discovery:

> Considering appellant's conduct prior to filing its motion to stay discovery, as well as thereafter, the mere filing of the motion to stay, to say nothing of the taking of this appeal, demonstrates considerable *chutzpa,* bordering on bad faith abuse of the processes of both the district court and this court.  In fact it could very well be argued that appellant's use of discovery against appellee estops him from raising any limited right that he may have had under *Mitchell* and *Harlow* to restrict the scope of appellee's discovery against him.  Such estoppel arises not only from appellant's engaging in active discovery against appellee but also in his acquiescence to the discovery schedule established by the district court after consultation with the parties.  *Id.* at 6-7.

**B.**      **Further Discovery Is Warranted To Oppose The City Defendants' Motion**

Should the Court determine that the facts discussed above are insufficient at this stage to

deny the motions, further discovery is warranted under Fed. R. Civ. P. 56(d).[85]  "[A] party

against which summary judgment is sought must be afforded a reasonable opportunity to elicit

information within the control of his adversaries."[86]  The Second Circuit, holding that summary

---

[83] Dkt. 171, pp. 5-9.  This Court noted NRP may address the waiver argument again / further in this opposition.  Dkt. 175, pp. 3-4.

[84] 819 F.2d 5, 6–7 (1st Cir. 1987).

[85] Under Rule 56(d), NRP must establish: "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."  Morrison v. Stroman, 2014 WL 6685510, at *3 (W.D.N.Y. 2014) ("Rule 56(d) is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality.")

[86] In re Dana Corp., 574 F.3d 129, 149 (2d Cir. 2009).

judgment was premature, cautioned that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."[87]

In holding that the opponent of a summary judgment motion should be permitted additional discovery, notwithstanding extensive discovery conducted, the Second Circuit noted that "the various discovery methods are more complementary than fungible."[88]

As in Rowland, disputed fact questions exist and "further discovery is necessary to determine whether defendants' acts were indeed procedurally [and substantively] legislative under Bogan."[89] Although the City Defendants attempt to frame this case as purely concerning legislative activities (it is not), they have failed to produce the PILOT agreement and land transfer materials that were ready for submission to the Council if Mayor Brown received Rev. Stenhouse's approval. The City claims it no longer has this material.[90] These significant documents were prepared in early to mid 2009; NRP's notice of claim was served in November 2010. The City nonetheless failed to preserve these documents. Further discovery is necessary to establish the circumstances surrounding the City's failure to preserve these documents. As a result of this spoliation, this Court should deny City Defendants' summary judgment motion.[91]

As set forth in the accompanying Declaration of Thomas S. Lane, NRP will develop additional evidence, on all points of defendants' motions, through discovery that is necessary to

---

[87] Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303–04 (2d Cir. 2003).
[88] In re Dana Corp., 574 F.3d at 150.
[89] Rowland, 494 F.3d at 90-91.
[90] (Lane Decl. Exh. T, City of Buffalo Responses to Pls.' Fourth Req. For Production, Nos. 2-3)
[91] Buskey v. Boston Mkt. Corp., 2006 WL 2527826, at *9 (E.D.N.Y. 2006) ("the Court agrees with Plaintiff that, due to Defendant's spoliation of evidence, denial of summary judgment is a warranted sanction").

more completely oppose the City Defendants' and BURA's motions for summary judgment, and incorporates the arguments set forth therein by reference.[92]

## <u>CONCLUSION</u>

NRP respectfully requests this Court to deny the City Defendants' summary judgment motion in its entirety.

DATED:     December 15, 2016     **WEBSTER SZANYI LLP**
Attorneys for Plaintiffs
By: _s/Thomas S. Lane_

          Thomas S. Lane
          Nelson Perel
1400 Liberty Building
Buffalo, New York 14202
(716) 842-2800
tlane@websterszanyi.com
nperel@websterszanyi.com

---

[92] Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."